Brian Chancey
Plaintiff in *Propria Persona*
3117 Encino Avenue
Bay City, Texas 77414
phone: 832-863-4519
email: gnman4@yahoo.com

United States Courts
Southern District of Texas
F I L E D

MAR 0 3 2022

Nathan Ochsner, Clerk of Court

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF TEXAS

United States Post Office and Courthouse; 601 Rosenberg, Room 411; Galveston, TX 77550

BRIAN CHANCEY

PLAINTIFF

v.                                    CASE NO.   3:22-cv-00034

BASF CORPORATION

DEFENDANT

_____/

## AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE AMERICANS WITH DISABILITIES ACT

### COUNT I

#### Discrimination on the basis of disability

Plaintiff, Brian Chancey, sues the defendant, BASF CORPORATION, for discrimination on the basis of disability, and for prohibited actions taken on the basis of this disability under the "regarded as" prong; and for declaratory and injunctive relief under Title I of the Americans with Disabilities Act as implemented under 29 CFR Part 1630, *et sequitur*, and alleges the following:

### JURISDICTION AND VENUE

- 1 -

*Amended Complaint-- Brian Chancey*

1.      This court has original and exclusive jurisdiction under Title I of the Americans with Disabilities Act of 1990 and the Americans with Disabilities Act Amendments Act of 2008; 42 U.S.C. §12101 and 42 U.S.C. §12112(a), (b) and (d)(4) as it pertains to "Discrimination"; as implemented by 29 CFR § 1630.2; §1630.4; §1630.5; §1630.13 and 1630.14(b)(3), (c) & (d) as it pertains to adverse employment actions, employers and medical examinations and interventions.

2.      Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. §1391(b)(2) because Plaintiff resides in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

3.      The incidents and facts giving rise to this complaint have occurred within the last one hundred eighty days.  The plaintiff has commenced a complaint against the defendant with the Equal Opportunity Employment Commission (EEOC) on or about the date of October 16, 2021. The plaintiff has exhausted all administrative remedies and received a Right to Sue letter on November 5, 2021, a true and correct copy is attached in Exhibit A.

## PARTIES

4.      Plaintiff, Brian Chancey, resides in Matagorda County, Texas at the address of 3117 Encino Avenue; Bay City, Texas and is a qualified individual with a disability within the meaning of the ADA.  The plaintiff is an employee of the defendant, which is a "covered entity" within the meaning of the Act.

5.  The defendant's principal place of business is located at 602 Copper Road; Freeport, Texas.

## PLAIN STATEMENT

6.      Defendant discriminated against the plaintiff based upon perceived disability.  When the plaintiff objected, the defendant sought to impose accommodations; including but not limited to: medical examinations, medical interventions including mask-wearing; without first conducting an individualized assessment to determine if he was a direct threat.  Defendant has used policies and procedures that harass, isolate, segregate, limit, classify, deny equal access and impose non-job-related medical exams and inquiries upon the plaintiff and this is prohibited under the ADA.

- 2 -

*Amended Complaint-- Brian Chancey*

# STATEMENTS OF FACT

7.   The plaintiff is regarded as having a disability.

8.   The plaintiff is a qualified individual with a disability.

9.   The plaintiff is regarded as having a disability by the defendant and the defendant's policies are specifically implemented for the purpose of mitigating the disability which it regards the plaintiff as having.

10.   The plaintiff therefore has a disability under the protection of the ADA.

11.   The plaintiff is an employee of the defendant and has been continuously employed by the defendant since the date of June 13, 2020 until the present which includes a date of threatened termination on February 1, 2022.

12.   On August 10, 2021, the defendant began demonstrating by its policies and practices that it regards the plaintiff as having a disability of an impaired immune system and an impaired respiratory system; and began responding to the plaintiff as if he had a contagious disease.

13.   Defendant has never conducted the required individualized assessment to determine whether or not the plaintiff is a direct threat.

14.   The plaintiff duly noticed the defendant that he was claiming protection under the ADA because of being regarded as disabled.

15.   The plaintiff may proceed under the "regarded as" prong and this court has jurisdiction under the "regarded as" prong of the ADA.

16.   The complaint thereby satisfies the criteria for stating a *prima facie* cause of action for these reasons, along with the fact that the defendant has made a record of such disability as further alleged herein.

17.   The ADA also protects individuals such as the plaintiff for whom submitting to certain accommodations would create impairments.  The accommodations include, but are not limited to: submitting to repetitive, non-job-related medical examinations (nasal tissue testing, antigen testing; daily health inquiries); collection of vital statistics (body temperature); being segregated and isolated (including quarantine without due process);

- 3 -

*Amended Complaint-- Brian Chancey*

using medical devices for mitigation measures (masks); disclosing plaintiff's medical records and history for non-job-related matters ("vaccine" status reports); taking multiple injections of experimental gene therapy solutions under "emergency use authorization" without informed consent; and participating in clinical trials and epidemiological experiments as a condition of employment.

18.  Plaintiff re-alleges each statement from the Affidavit herein.

**COUNT I ALLEGATIONS OF DEFENDANT'S VIOLATIONS**

**OF TITLE I OF THE ADA, 42 U.S.C. §12101 *et sequitur.***

19.     Plaintiff incorporates each of the above statements of fact herein; the allegations contained in the following paragraphs and the plaintiff's supporting affidavit which is also re-alleged and incorporated herein by reference.

20.     Title I of the ADA prohibits employment discrimination on the basis of disability in all aspects of employment, in 29 CFR § 1630 *et sequitur;* and particularly §1630.4; § 1630.5.

21.     On August 10, 2021, the defendant began regarding the plaintiff as having a disability of an impaired immune system and an impaired respiratory system; and began responding to the plaintiff as if he had a contagious disease.   (See Affidavit (hereafter "AFF") ¶ 11)

22.     The defendant expresses the attitude toward the plaintiff as if the plaintiff is a direct threat to others, yet has never conducted an individualized assessment or complied with any of the statutory individual assessment criteria[1].(See AFF ¶ 3-7,10,11,14,18,20, 21, 28, 30, 34, 38)

> 29 CFR § 1630.2(r):
>
> "Direct Threat means a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation. The determination that an individual poses a '<u>direct threat</u>' shall be

---

1 EEOC Technical Manual 2.2 (c)   "...the Supreme Court has stated and the Congress has reiterated, "society's myths and fears about disability and disease are as handicapping as are the physical limitations that flow from actual impairments."  The legislative history of the ADA indicates that Congress intended this part of the definition to protect people from a range of discriminatory actions based on "myths, fears and stereotypes" about disability, which occur even when a person does not have a substantially limiting impairment."

- 4 -

*Amended Complaint-- Brian Chancey*

based on an <u>individualized assessment</u> of the individual's present ability to safely perform the essential functions of the job. This assessment shall be <u>based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence</u>. In determining whether an individual would pose a direct threat, the factors to be considered include:

(1) The duration of the risk;

(2) The nature and severity of the potential harm;

(3) The likelihood that the potential harm will occur; and

(4) The imminence of the potential harm."

23.    The defendant has made no meaningful efforts to remediate itself on the law, and has only referred to statements made on the CDC's website, but this clearly does not qualify as an individualized assessment. (See AFF ¶ 14, 18-26, 28-30, 32-34, 36,38,39)

24.    Plaintiff has given defendant conspicuous notice that plaintiff objects to discrimination and declines any of the accommodations (mitigation measures) on the basis of rights protected by the ADA because defendant's policies and practices demonstrate that the defendant regards him as having a disability, and that the defendant has made a record of such disability by mis-classifying the plaintiff as having an impairment. (See AFF ¶ 8,13-15, 17, 22, 23, 25, 28, 30, 32, 34, 38)

**Harassment, Isolation, Segregation and Denial of Equal Access**

25.    The defendant's responses to the requests made by the plaintiff to cease the discrimination and harassment were in fact non-responsive, dismissive or harassing; a true and correct copy of each is included with Exhibit A. (See AFF ¶ 14,17-21, 23-29, 33,38)

26.   Despite plaintiff's written notices, the defendant continued without cessation to harass the plaintiff based upon disability by sending him numerous communications coercing him to accept various accommodations or suffer adverse employment actions.   All written communications are attached as Exhibit A. (See AFF ¶ 10, 11 13-15, 18-21, 23, 24, 27, 29-31, 33-37, 39)

*Amended Complaint-- Brian Chancey*

27.    Defendant imposed accommodations upon the plaintiff which included isolation and segregation such as demanding plaintiff remain 6 feet away from co-workers; refusing him access to the work space, his office, the staff room, and rest rooms; making him work remotely; limiting room occupancy; segregating plaintiff to a part of the work space; implementing "first contact protocols" and "quarantine" without due process. (See AFF ¶ 10, 15, 16, 26, 37)

28.    The defendant has failed to ensure the equal access or accessibility of the premises where the plaintiff is assigned to work.   The plaintiff has thereby been prevented from enjoying equal access and the benefits of employment enjoyed by other employees.

### Limiting, Segregating and Classifying [2]

29.    Defendant's so-called "COVID-19" policies impose a disability upon the plaintiff by limiting and impeding him from performing his employment duties to such a degree that this adversely affects his employment opportunities or status on the basis of disability because the defendant will not permit plaintiff to do his job without first submitting to the defendant's accommodations ("mitigation measures"). (See AFF ¶ 10, 13, 15, 16, 24, 27, 30, 34-36, 39, 40)

30.    Defendant classified the plaintiff as "unvaccinated"[3]; is widely sharing this classification of the plaintiff with other employees without any regard to confidentiality[4]; and encourages employees to harass the plaintiff with repetitive emails, intimidating interactions and threats of termination.  See AFF ¶ (31, 34-36, 38, 39)

31.    Defendant's policy states that those employees classified as "unvaccinated", such as the plaintiff, are required to submit to weekly accommodations such as medical tests at their own expense, enhanced quarantine measures based upon "close contact" and continued masking. (See AFF ¶ 36, 37)

32.  Defendant repetitively asked the plaintiff to disclose his medical history on an online portal without any notice given regarding the data retention policy or who receives the data and for what purpose; however, defendant is clearly classifying employees by medical

2 prohibited by 29 CFR § 1630.5

3 discrimination based upon physical condition

4 prohibited by 29 CFR § 1630.13.

- 6 -

*Amended Complaint-- Brian Chancey*

history; limiting or impeding the plaintiff's ability to perform his employment duties based upon his medical history; and threatening adverse employment actions against the plaintiff for refusing to disclose his medical history when the defendant has failed to give any conspicuous notice as to the manner in which such disclosures are necessary to the plaintiff's essential job function.  (See AFF ¶ 31, 33-36, 38, 39)

33.    Defendant also falsely classified plaintiff as "a safety hazard" without assessment in a written safety violation warning and threatened to accuse him of "abandoning his job" while preventing him access to the job site despite plaintiff sending timely notices to the defendant that he is both fit for service and has complied with all requests for response. (See AFF ¶ 14, 18, 21, 27, 38)

### Non-job-related medical exams and inquiries

34.    Title I prohibits the defendant from requiring medical examinations or making disability-related inquiries of employees unless such examination or inquiry is shown to be job-related and consistent with business necessity; at 42 U.S.C. §12112(d)(4); 29 CFR §1630.13 (b)(c).

35.    An employer is entitled only to the information necessary to determine whether the employee can perform the essential functions of the job with or without reasonable accommodations and the defendant has failed to identify any set of facts that would qualify under this limitation.

> § 1630.13(b) Prohibited medical examinations and inquiries.
>
> (b) Examination or inquiry of employees. Except as permitted by § 1630.14, it is unlawful for a covered entity to require a medical examination of an employee or to make inquiries as to whether an employee is an individual with a disability or as to the nature or severity of such disability.
>
> (c) Examination of employees. A covered entity may require a medical examination (and/or inquiry) of an employee that is job-related and consistent with business necessity. A covered entity may make inquiries into the ability of an employee to perform job-related functions.

36.    Certain examinations are allowed as part of an employee health program available to employees at the work site under CFR § 1630.14; however defendant is not running a

*Amended Complaint-- Brian Chancey*

voluntary health program as the policy is not presented as voluntary and defendant imposes adverse employment actions or retaliates against, interferes with, coerces, intimidates, and threatens employees within the meaning of Section 503 of the ADA, codified at 42 U.S.C. 12203 and 29 CFR Part 1630.14(c) for not complying with the policy.

37.     Defendant has never conspicuously disclosed or gave legally adequate notice that complying with the COVID-19 mitigation measures ("accommodations") are an **essential function** of the job of Engineer; and the measures have never previously been an essential function of plaintiff's job. [5] (See Exhibit C "Job Description")

38.     The plaintiff has already satisfied and met the criteria for his essential job function based upon the usual factors such as education, experience and work ethic.  Defendant has failed to give conspicuous notice as to the manner in which these so-called "Covid-19" policies are related to the plaintiff's ability to perform his essential employment duties.[6]

39.     Plaintiff claimed his right not to provide any medical information that is not related to the performance of his job duties. (See AFF ¶ 14, 15, 23-25, 31-34)

**Plaintiff under no obligation to accept accommodations to perceived disability**

40.     Defendant limited the accommodation measures[7], such as examinations; disclosures of medical records that were not job-related; experimental injections; medical interventions; equipment or products; to only those chosen by the defendant. Additionally, the employer failed to prove that there are no other accommodations available which do not require injections, medical devices and medical examinations.

41.     In fact, the defendant is not required to provide any accommodation under the "regarded as" prong.

> 29 CFR Part § 1630.9
>
> (e) A covered entity... is not required to provide a reasonable accommodation to an individual who meets the definition of disability solely under the "regarded as" prong (§ 1630.2(g)(1) (iii)).

---

5  29 CFR 1630.2 definition "Essential Function": "(i) ….the reason the position exists is to perform that function."

  6  https://www.eeoc.gov/publications/ada-your-responsibilities-employer

7  29 CFR Part 1630.2(j)(5)(i)

- 8 -

*Amended Complaint-- Brian Chancey*

42.     The defendant has failed or refused to comply with this law, even making the outrageous claim that the plaintiff can either submit to complying with the accommodations or have his employment terminated, regardless of the defendant's legal duties or the law. (See AFF ¶ 23, 24, 29, 33, 39, 40)

43.     Defendant's policy of imposing accommodations also violates the plaintiff rights to medical privacy and informed consent.[8]  (See AFF ¶ 14,19, 38)

44.     If the plaintiff had previously made at least one request for reasonable modifications, plaintiff has since withdrawn such request.

45.     Additionally, the so-called "vaccines" that are being promoted as vaccines do not actually prevent transmission or infection of any contagious disease, specifically regarding the so-called "COVID-19" or "SarsCOV2" purported "diseases".

46.     Plaintiff requests that this court take judicial notice of Section 201(h) of the Food, Drug and Cosmetic Act and its Final Guidance titled, "Classification of Products as Drugs and Devices & Additional Product Classification Issues: Guidance for Industry and FDA Staff", published in September of 2017, in which the Food & Drug Administration **defines** wearing a mask for mitigation purposes as a medical device and the application of a medical device or contrivance.  A true and correct copy of this is included as Exhibit B.

47.     Plaintiff further requests judicial notice of the fact that the Food & Drug administration has never **approved** wearing such face masks, but only "authorized" them without any supporting medical or clinical data establishing any medical necessity or efficacy for wearing such contrivances.

48.     The plaintiff requests that the court take judicial notice of the official mortality rates of the State of Texas and the United States for the years from 2017, 2018, 2019 and 2020 in which the standard deviation is zero, the very definition of no verifiable "pandemic".

49.     No laws have changed that would create either a new duty of care or a new insurable risk for the defendant; and no new laws have created any new legal duty or obligation for the defendant to violate the medical privacy rights of anyone.

---

8 Defendant and its policies failed to advise the plaintiff of the absolute risks and absolute benefits for accepting accommodations of taking experimental injections, masking and tissue- testing under "emergency use authorization" guidelines, for a "contagious disease" that the defendant regards the plaintiff as having as set forth in 21 USC §360bbb-3 *et seq.*

*Amended Complaint-- Brian Chancey*

50. Plaintiff demands a jury trial.

51. **WHEREFORE**, Plaintiff demands judgment against the defendant for compensatory damages and that the court declare that Defendant's discriminatory actions and/or violations as set forth in this Complaint violate Title I of the Americans with Disabilities Act under 42 U.S.C. §12101 and implemented under 29 CFR Part 1630 *et sequitur*;

52. And an order enjoining the defendant, along with its officers, agents, and employees, and all others in active concert or participation with them, from:

53. Engaging in discriminatory acts and/or omissions against the plaintiff because of (perceived) disability; and an order enjoining the defendant from implementing practices and policies in a manner that is inaccessible to individuals with disabilities, specifically the plaintiff, within the meaning of Title I of the ADA;

54. And ordering defendant to comply with the requirements of Title I of the Americans with Disabilities Act, 42 U.S.C. §12101; and,

55. Take such affirmative steps as may be necessary to restore, as nearly as practicable, each identifiable victim of the defendant's discriminatory conduct to the position that plaintiff would have been in, but for the Defendant's conduct, beginning with the plaintiff; and,

56. Take such affirmative steps as may be necessary to prevent the recurrence of any discriminatory conduct and to eliminate, to the extent practicable, the effects of such conduct.

57. Award monetary damages to the plaintiff, in an appropriate amount for injuries suffered as the result of Defendant's failure to comply with the requirements of Title I of the ADA, 42 U.S.C. §12101; and,

58. Assess a civil penalty against the Defendant in an amount authorized by 42 U.S.C. §12101 to vindicate the public interest and make the plaintiff whole; and,

59. Order such other relief as the interests of justice may require.

1.

**AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF UNDER THE AMERICANS WITH DISABILITIES ACT**

**COUNT II**

- 10 -

*Amended Complaint-- Brian Chancey*

**Retaliation, Coercion, Interference and Intimidation**

Plaintiff, Brian Chancey, sues the defendant, BASF CORPORATION, for Retaliation, Coercion, Interference and Intimidation and for declaratory and injunctive relief under Title I of the Americans with Disabilities Act as implemented under 29 CFR Part 1630, *et sequitur*, and alleges the following:

**JURISDICTION AND VENUE**

1.    This court has original and exclusive jurisdiction under Title I of the Americans with Disabilities Act of 1990 and the Americans with Disabilities Act Amendments Act of 2008; 42 U.S.C. §12101 and 42 U.S.C. §12112(a), (b) and (d)(4) as it pertains to "Retaliation, Coercion, Threats and Interference"; as implemented by 29 CFR Part 1630.12, 14(b)(3), (c) & (d) as it pertains to adverse employment actions.

2.    Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. §1391(b)(2) because Plaintiff resides in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

3.    The incidents and facts giving rise to this complaint have occurred within the last one hundred eighty days.  The plaintiff commenced a complaint against the defendant with the Equal Opportunity Employment Commission (EEOC) on or about the date of October 16, 2021. The plaintiff has exhausted all administrative relief and received a Right to Sue letter on November 5, 2021, a true and correct copy is attached in Exhibit A.

**PARTIES**

4.    Plaintiff, Brian Chancey, resides in Matagorda County, Texas at the address of 3117 Encino Avenue; Bay City, Texas and is a qualified individual with a disability within the meaning of the ADA.  The plaintiff is an employee of the defendant, which is a "covered entity" within the meaning of the Act.

5.    The defendant's principal place of business is located at 602 Copper Road; Freeport, Texas.

**PLAIN STATEMENT**

- 11 -

*Amended Complaint-- Brian Chancey*

6.      Defendant discriminated against the plaintiff based upon perceived disability under the "regarded as" prong and the "record of" prong of the ADA.  When the plaintiff objected and conspicuously requested the discrimination to end, the defendant unceasingly retaliated against the plaintiff by intimidating and coercing the plaintiff to accept accommodations and discrimination; interfering with his rights; and threatening adverse employment actions. Defendant created a "severe and pervasive" hostile work environment and repetitively threatened termination of plaintiff's employment.

## STATEMENTS OF FACT

7.      The plaintiff conspicuously gave notice to the defendant of the reasonable, good faith belief that he was being discriminated against and was claiming protection under the ADA because of being regarded as disabled.

8.      On August 13, 202, the defendant began unceasingly retaliating against the plaintiff despite plaintiff's reasonable good faith belief that he was exercising protected opposition to discrimination and claiming rights protected under the ADA.

9.      The plaintiff advised each of the managers and supervisors and personnel in the human resources office that the plaintiff was a qualified individual with a disability and was regarded as having a disability.   The plaintiff also advised each of these employees on numerous occasions that the defendant's policies pertaining to the mask-wearing and vaccines and disclosing medical history and submitting to medical examinations and the collection of vital statistics demonstrated very abundantly that the defendant also regarded the plaintiff as having a disability.

10.     The plaintiff demanded that the defendant provide a copy of the individualized assessment that it conducted in order to determine that he was a direct threat however, defendant ignored these requests and continued to demand that the plaintiff participate in its "health control measures" or accommodations such as mask-wearing and medical examinations.

11.     Every time plaintiff objected to discriminatory communications, actions and imposed accommodations from the defendant; defendant ignored the plaintiff and continued the same conduct by retaliating against the plaintiff.

- 12 -

*Amended Complaint-- Brian Chancey*

12. Defendant took materially adverse actions[9] to deter plaintiff from engaging in protected opposition whenever plaintiff claimed the protection of the ADA for being regarded as disabled. Plaintiff exercised his right to refuse the defendant's offered accommodations and again asked to review the individualized assessment determining plaintiff was a "direct threat". The defendant ignored the plaintiff and refused to communicate or answer any questions.

13.     The defendant also failed or refused to cite any legal authority for imposing these accommodations or health control measures, including but not limited to, identifying or describing any new legal duty of care as a result of these policies or any law, and refused or failed to describe or identify any insurable risk the defendant may have had to protect employees from any contagious disease that the plaintiff was regarded as having.

14.     Defendant's adverse actions were causally connected to plaintiff's good faith opposition to the discriminatory policy; and to the defendant regarding the plaintiff as disabled with having a contagious disease that impaired his ability to engage in one or more major life activities.

15.     Defendant's adverse actions were causally connected to plaintiff's good faith opposition to the discriminatory policy; to the plaintiff claiming the protection of the ADA without any need to request a medical or religious exemption; and to plaintiff's demand to review the individualized assessment upon which classifying plaintiff as a "direct threat" was based.

16.     The plaintiff may proceed under the "regarded as" prong and this court has jurisdiction under the "regarded as" prong of the ADA.

17.     The complaint thereby satisfies the criteria for stating a *prima facie* cause of action for these reasons, along with the fact that the defendant has made a record of such disability as further alleged herein.and the plaintiff's supporting affidavit is also re-alleged and incorporated herein by reference and by paragraph number.

---

9     OLC Control Number: EEOC-CVG-2016-1 "EEOC Enforcement Guidance on Retaliation" p. 27. Materially Adverse Action: "any action that might well deter a reasonable person from engaging in protected activity."

*Amended Complaint-- Brian Chancey*

18.    The list of adverse employment actions taken by the defendant in retaliation against the plaintiff for not accepting its accommodations is extensive: defendant created false employment records stating that plaintiff was "a safety hazard" without assessment via a written safety violation warning; defendant threatened to accuse plaintiff of "abandoning his job" while preventing him access to the job site; plaintiff was threatened with termination on several occasions and given deadlines for termination such as January 4, 2022 and February 1, 2022; plaintiff was refused access to job site, his office, the break room and rest rooms; plaintiff was repeatedly coerced by management to undertake accommodations for a perceived, yet undiagnosed disability; defendant continued to harass plaintiff despite plaintiff claiming protected opposition status by filing an EEOC Charge; defendant threatened plaintiff with incurring extra costs for weekly "antigen testing" at his own expense that other employees did not incur; and defendant's ADA compliance officer refused to mitigate the retaliation or aid and encourage the plaintiff in enjoying rights protected under the ADA.

20.    Defendant took adverse employment actions against the plaintiff based upon perceiving the plaintiff as a direct threat and as having an impaired immune system, impaired respiratory system; which corroborates that defendant, in fact, regards the plaintiff as disabled.

21.    Plaintiff re-alleges each statement from the Affidavit herein.

### COUNT II ALLEGATIONS OF DEFENDANT'S VIOLATIONS

### OF TITLE I OF THE ADA, 42 U.S.C. §12101 *et sequitur.*

22.    Plaintiff incorporates each of the above statements of fact herein; the allegations contained in the following paragraphs and the plaintiff's supporting affidavit which is also re-alleged and incorporated herein by reference.

23.    The ADA also prohibits employers from retaliating against individuals who oppose discriminatory activities or who make charges, testify, assist, or participate in any manner in an investigation, proceeding or hearing under the ADA, Title 42 U.S.C. § 12203 and 29 CFR Parts 1630.12(a) and (b) and Parts 1630.13(b), (c), (d) and Part 1630.14(c), to wit:

### Retaliation

29 CFR § 1630.12 Retaliation and coercion.

- 14 -

*Amended Complaint-- Brian Chancey*

> (a) Retaliation. It is unlawful to discriminate against any individual because that individual has opposed any act or practice made unlawful by this part or because that individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing to enforce any provision contained in this part.

24.     The plaintiff was threatened to be terminated because of his unmasked and unvaccinated condition and has successfully stated a violation of the act simply because he has been subjected to an action prohibited under the law because of perceived physical impairment. See Affidavit (hereafter "AFF") ¶ 14,24,27,35,36,39,40.

25.     The impairment **experienced** by the plaintiff in connection with his respiratory and immune systems is neither transitory nor minor from the defendant's point of view because the defendant has no end date when it will not regard this status as warranting termination.

26.     On August 13, 2021, Defendant filed a retaliatory false employment record against the plaintiff in the form of a written notice of "safety violation" without any evidence of individualized assessment; and on September 23, 2021, plaintiff was threatened with a false employment record accusing him of "job abandonment" while defendant was actively preventing his access to buildings.  (See AFF ¶ 14,18,20,21,27)

27.     Defendant threatened the plaintiff with retaliation by termination; even though it was aware of a pending EEOC investigation and plaintiff's protected opposition.  (See AFF ¶ 22,30,32, 35, 36, 39,40)

28.     Nor can the defendant claim it was unaware that its own perception was the very basis for threatening termination; which was the unvaccinated condition of the plaintiff and the attendant deficiencies associated with the plaintiff's respiratory and immune systems.

29.     Defendant adopted a new discriminatory policy and discriminated against the plaintiff based on perceived disability. Plaintiff opposed the unlawful policy, and defendant retaliated against the plaintiff by threatening to terminate his employment through the ruse of classifying plaintiff as a "safety violation" by making false employment records; by threatening to accuse him of "job abandonment"; and also by falsely classifying plaintiff based on non-job-related medical inquiries and exams; however, the evidence shows that plaintiff was threatened with termination because plaintiff was deemed a "direct threat"

- 15 -

*Amended Complaint-- Brian Chancey*

without an individualized assessment and because plaintiff was classified as "unvaccinated" and declined accommodations.  (See AFF ¶ 14,20,27,35,36,38,39)

### Coercion, Interference or Intimidation

29 CFR § 1630.12

> (b) Coercion, interference or intimidation. It is unlawful to coerce, intimidate, threaten, harass or interfere with any individual in the exercise or enjoyment of, or because that individual aided or encouraged any other individual in the exercise of, any right granted or protected by this part.

30.    Defendant effectively coerced the plaintiff by refusing to provide requested proof of an individualized assessment; refusing to provide a risk/benefit analysis as required for true informed consent; and refused to recognize the plaintiff's right to refuse medical treatment or participate in a clinical study; and refusing to provide requested proof of liability insurance, thus interfering with plaintiff's enjoyment of protected rights. (See AFF ¶ 3-7, 10, 13-15, 18-22, 28, 30, 34, 38)

31.    Defendant coerced the plaintiff to submit to the accommodation measures, medical interventions and examinations and other health control measures, even though the defendant was duly advised by the plaintiff that the plaintiff was not subject to any health control measures by any court orders, and that the defendant was not empowered by any court order or other legal duty to impose such interventions, examinations or control measures upon the plaintiff[10]; (See AFF ¶ 10, 11, 14, 24, 27, 29, 30, 35, 36, 39, 40)

32.    Defendant allowed other employees to coerce, intimidate or verbally ridicule and abuse the plaintiff in violation of the defendant's duty of care. (See AFF ¶ 10, 11, 14, 24, 27, 29, 30, 35, 36, 39, 40)

33.    Defendant threatened the plaintiff with the termination of employment because of a perceived disability and as a result of classifying plaintiff as "unvaccinated". (See AFF ¶ 31,34-36, 39)

34.    Defendant threatened the plaintiff with exclusion because of disability. (See AFF ¶ 13,16)

---

10  See Texas Health and Safety Code 81.083 and Texas Public Health Emergencies Bench Book.

- 16 -

*Amended Complaint-- Brian Chancey*

35.    Defendant's designated compliance agents interfered with plaintiff's rights under the ADA by refusing to aid and encourage plaintiff in the enjoyment of his rights under the ADA which is a duty of the defendant.  (See AFF ¶ 19-21, 24-26, 28, 33, 34)

36.    Defendant's policies interfered with plaintiff's rights by failing to advise the plaintiff that no "vaccine" accommodations, which have been approved by the Food & Drug Administration, are commercially available to the plaintiff, or are yet in production.[11]

37.    Additionally, the so-called "vaccines" that are being promoted as vaccines do not actually prevent transmission or infection of any contagious disease, specifically regarding the so-called "COVID-19" or "SarsCOV2" purported "diseases".

38.    Defendant is interfering with the plaintiff's rights by obfuscation and by refusing to acknowledge rights protected under the ADA. [12]

The EEOC has offered guidance on interference and states:

"Examples of interference include: issuing a policy or requirement that purports to limit an employee's rights to invoke ADA protections (e.g., a fixed leave policy that states 'no exceptions will be made for any reason');"[13]

39.    Defendant's notices to the plaintiff failed to include conspicuous notice as to the manner in which its accommodations ("Covid policies") are related to his essential job function, and do not mention plaintiff's right of refusal under EUA guidelines[14].  (See AFF ¶ 15)

40.    Defendant also failed to give notice of plaintiff's right to refuse the defendant's accommodations under the ADA[15],  and failed to advise the plaintiff of his right to informed consent.   (See AFF ¶ 19, 34, 38)

41.    Defendant's policy and written notices interfered with plaintiff's ADA rights because they limited plaintiff's right to invoke ADA protections under the 'regarded as" prong,

11  Comirnaty is not available in the US.

12 42 USC 12203(b) and 29 CFR 1630.12(b).

13   https://www.eeoc.gov/laws/guidance/questions-and-answers-enforcement-guidance-retaliation-and-related-issues

14 Title 21, Chapter 9 V, Part E §360bbb–3a. Emergency use of medical products.

15 29 CFR Part 1630.9 (d) & (e)

- 17 -

*Amended Complaint-- Brian Chancey*

including without limitation, the right to be free of discrimination and retaliation based upon disability, such as being terminated or segregated because of one's physical condition.

42.    Defendant engaged in adverse actions when plaintiff notified the defendant that the plaintiff was not waiving the right of refusal, the right of informed consent, and the right to an individualized assessment before being labeled a direct threat based upon his rights under the ADA. (See AFF ¶ 2,14,16, 23, 24, 26, 27, 35-37)

43.    Defendant deceptively tried to persuade plaintiff that his only remedy to the illegal policy demands would be to ask for an accommodation based on "actual" disability and defendant refused to recognize disability based upon the other two prongs of the ADA; thereby creating a false record that is without legal merit and creates a substantial prejudice against the plaintiff to seek a remedy in court.

### Harm and Injury

44.    The injury suffered by the plaintiff is thereby concrete and particularized and it is actual and imminent.   The injury alleged in the complaint, including the pleading and exhibits, clearly sets forth a set of facts that actually occurred and are not conjectural or hypothetical.   The injury described therein is at least fairly traceable to the challenged action, conduct and policies of the defendant.

45.    The harm (injury) already suffered by the plaintiff includes, but is not limited to, having to choose between waving medical privacy rights, and submitting to medical interventions and examinations without the benefits of informed consent, and being regarded as if he has a contagious disease without any individualized assessment according to any medical or scientific standards or having his employment terminated.

46.    Once violated, these rights cannot be recovered.  The medical privacy rights are the plaintiff's intangible property rights which are not required to be waived as a condition of employment and include the right to refuse to participate in any epidemiological experiments or clinical trials.

47.    Defendant's policies demonstrate soundly and convincingly, that its policies inflict future harm against the plaintiff who is regarded as having a disability or invisible disability

- 18 -

*Amended Complaint-- Brian Chancey*

and that the defendant fully intends to continue these policies and that the defendant fully intends to retaliate and continue retaliating against the plaintiff as alleged herein.

48.    It is important to note that none of the personnel in human resources that were involved in this matter ever once cited any legal authority that countermands the ADA.

49.    Furthermore, defendant never cited any legal authority or obligation that has created any new duty of care or insurable risk to impose the discriminatory policies.

50.    Furthermore, the defendant failed to identify any insurable risk for engaging in the administration of medical examinations, interventions or protecting anyone from what is being claimed as a "pandemic" or "public health danger".

51.    Additionally, defendant fails to cite any insurable risk for the same or for those suffering any adverse health consequences as a result of complying with the accommodations administered by unlicensed, untrained, uninsured and un-equipped employees of the defendant.

52.    Even one's own licensed and insured physician requires informed consent as a condition of administering any medical examination or intervention upon the patient.   No laws have changed and the defendant is without any legal authority or obligation to engage in these practices, and especially engage in harassment, discrimination and retaliation in violation of federal law.

53.    As a result of Defendant's actions the plaintiff has experienced discrimination, segregation, isolation, retaliation, coercion, interference, threats of termination and disruption in his career.

54.    Plaintiff demands a jury trial.

55.    **WHEREFORE**, Plaintiff demands judgment against the defendant for compensatory damages and that the court declare that Defendant's retaliatory, coercive, interfering and intimidating actions and/or violations as set forth in this Complaint violate Title I of the Americans with Disabilities Act under 42 U.S.C. §12101 and implemented under 29 CFR Part 1630 *et sequitur*;

- 19 -

*Amended Complaint-- Brian Chancey*

56.    And an order enjoining the defendant, along with its officers, agents, and employees, and all others in active concert or participation with them, from:

57.    Engaging in retaliation, coercion, interference and intimidation and/or omissions against the plaintiff because of his disability; and an order enjoining the defendant from implementing practices and policies in a manner that is inaccessible to individuals with disabilities, specifically the plaintiff, within the meaning of Title I of the Americans with Disabilities Act (ADA);

58.    And ordering defendant to:

59.    Comply with the requirements of Title I of the Americans with Disabilities Act, 42 U.S.C. §12101; and,

60.    Take such affirmative steps as may be necessary to restore, as nearly as practicable, each identifiable victim of the defendant's discriminatory conduct to the position that he would have been in, but for the Defendant's conduct, beginning with the plaintiff; and,

61.    Take such affirmative steps as may be necessary to prevent the recurrence of any retaliation, coercion, interference and intimidation and to eliminate, to the extent practicable, the effects of such conduct.

62.    Award monetary damages to the plaintiff, in an appropriate amount for injuries suffered as the result of Defendant's failure to comply with the requirements of Title I of the ADA, 42 U.S.C. §12101; and,

63.    Assess a civil penalty against the Defendant in an amount authorized by 42 U.S.C. §12101 to vindicate the public interest and make the plaintiff whole; and,

64.    Order such other relief as the interests of justice may require.

DATED this 21 day of February 2022.

*Brian Chancey*

Brian Chancey, Plaintiff

- 20 -

*Amended Complaint-- Brian Chancey*

Brian Chancey
Plaintiff in *Propria Persona*
3117 Encino Avenue
Bay City, Texas  77414
phone: 832-863-4519
email: gnman4@yahoo.com

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF TEXAS

United States Post Office and Courthouse; 601 Rosenberg, Room 411; Galveston, TX 77550

BRIAN CHANCEY

PLAINTIFF

v.                                                        CASE NO.  3:22-cv-00034

BASF CORPORATION

DEFENDANT

_____/

## AFFIDAVIT IN SUPPORT OF AMENDED COMPLAINT

STATE OF TEXAS                )
                              )        Ss
COUNTY OF MATAGORDA           )

1.     I, Brian Chancey, do hereby solemnly affirm that the statements herein are true and correct in substance and in fact and that I have personal knowledge of each.

2.     I have been harassed at my job, was discriminated and retaliated against based on disability for refusing to accept my employer's accommodations for regarding me as impaired in my immune system and impaired in my respiratory system.

3.     I am absent and without evidence of any information from any health officer identifying myself as having any communicable disease or having been exposed to any toxic substance.

4.     I am absent and without knowledge of any evidence or court order, obtained by any petition of the Department of Health or a public health officer, that was based upon any

- 1 -

physician's affidavit in which I have been identified as having any communicable disease or having been exposed to any toxic substance.

5.    I am absent and without knowledge of any evidence of any court order determining that I am or have been a direct threat to anyone.

6.    I am absent and without knowledge of any evidence of any individualized assessment required by law that has determined that I am or have been a direct threat to anyone.

7.    I am absent and without knowledge of any evidence of any court order imposing any terms of isolation or quarantine or other measures upon myself.

8.    I have previously and timely disclosed and duly noticed the defendant of a disability, and that the assertions made in the complaint are true and correct to the best of my knowledge, information and belief.

9.    I work for BASF in Freeport, Texas as an I/E engineer in the ammonia unit and ammonia terminal and I address electrical and instrument issues for the company.  I work in an office building inside the BASF property but my office is not located in the ammonia control room building.

10.    On July 30, 2021, Cindy S. Suggs sent a company communication titled "BASF Freeport Update #62 Coronavirus19" (Exhibit A-1) stating that I am required to submit to the collection of my vital statistics (temperature check) to get past the guard gate or I will not be admitted and also stated that I am required to wear a face mask.  It additionally imposed segregation on me as I was told to maintain a 6-foot distance from others.   I have complied under duress with the temperature check accommodation because I was afraid of losing my job if I did not comply.

11.    On August 10, 2021, I attended a virtual morning meeting of the Ammonia unit. Skye Picchiottino, Ammonia Unit Production Manager, stated in the meeting that management would be writing people up for "safety violations" which could lead to termination for not complying with the new policy as discussed in "Update #62".   I understood from that morning meeting presentation that the BASF policy discriminated against me by regarding me as potentially or actually infected with a contagious disease. It is around this time that I realized that BASF is assuming that I have an impaired immune system and an impaired respiratory system because they were imposing mitigation measures on me as

accommodations for the disability they regard me as having.  They were doing this without having any diagnosis from my doctor upon which to base this erroneous presumption. The company management employees respond to me as if I am infected with a contagious disease. (Exhibit A-2).

12.      I promptly sent an email (Exhibit A-3) to Skye Picchiottino, in which I asked her what safety hazards the mask was intended to protect me from and what evidence they had of its effectiveness.

13.      On August 12, 2021 I attended a meeting with supervisors Jay Garner and Jason Metts. Jay Garner was the person driving the meeting. I expressed my concerns about the policy being discriminatory and therefore unlawful; and I also discussed my right to informed consent.  Jay dismissed my informed consent concern and he claimed ignorance of my legal concerns. I informed him that I needed more detailed answers to my questions.  I said I would email my questions and concerns to the Corona Virus Help email address and to the legal compliance department.  At the end of the meeting Jay informed me that my office building, which is outside of the ammonia plant, is now also subject to masking mandates. I thanked him for notifying me and I promptly left site after the meeting. Approximately three hours afterwards my supervisor, Jason Metts, informed me Jay Garner wanted me to report onsite on Monday, August 16.

14.      On August 13, 2021, I was sent a written notice of warning (Exhibit A-4) and requested to attend a meeting scheduled with Human Resources for Monday August 16, 2021.  I emailed back and declined this meeting (Exhibit A-5).  I felt threatened and coerced by Jay Garner who apparently retaliated against me because I claimed my rights and questioned the policy. I believe Jay was setting things in motion with the "written warning" that would lead to firing me.  I sent Legal Compliance an email which included a Notice of claiming my rights under the ADA and a Notice that I do not waive my right to informed consent (Exhibit A-6 a, b).  Additionally, I sent the Corona Virus Help line an email (Exhibit A-7) asking for information on the efficacy of the measures, their risks and benefits, and information on the alternatives with their risks and benefits.  In these correspondences I specifically asked how BASF could impose a medical intervention on me; and I referred to the FDA classification of masks as medical devices when used for mitigation purposes.  I

asked the responder to provide evidence of me being a direct threat; and stated that I claimed my right to informed consent and my right to refuse the interventions.

15.     Around August 23, 2021, I began a dialogue with Stephen Cafiero, Human Resources regarding the discrimination and harassment I was enduring and I made him aware that I was claiming my rights under the ADA because my employer was regarding me as disabled. I sent him a "Notice of Discrimination and Harassment Based Upon Disability" (Exhibit A-8) and started a confidential email communication with him about my concerns. About two days later, we had a phone discussion regarding my concerns.  I gave Stephen examples of how the discrimination and harassment was affecting my life activities both at home and at work, and Stephen attempted to answer some of the questions I wrote him in my email. Stephen took notes and he said the notes were part of the investigation file.  Stephen told me to stay away from the plant while he conducted an investigation so that I would not incur any more violations of the policy.

16.     Consequently I worked from home, and when I went to the plant I was required to remain outside. For the duration of the "investigation" BASF kept me segregated from other employees.  I was not allowed to go to the bathroom while onsite, enter my office, heat up my lunch, get water, or any other activity that would require I enter an occupied building.

17.     On August 29, 2021 I filed an ADA discrimination complaint with the Texas Workforce Commission-- Civil Rights Division (Exhibit A-9). I followed up with them on September 29, 2021 and they informed me my file was in a queue and they investigate complaints in chronological order. I have yet to hear from them as of November 1, 2021.

18.     On August 31, 2021 I finally received a response (Exhibit A-10) from Skye Picchiottino to my two questions. She stated that the safety hazard BASF was trying to protect me from was COVID-19, and she told me to look on the CDC website for information about the benefits of masks. She failed to provide a copy of the individualized assessment BASF is relying upon to determine that my immune system and respiratory system are impaired or that I am a direct threat.  From my years in the industry, I understand safety hazards to be chemical fumes or equipment issues, I have never heard of a company having a duty of care to protect me from a seasonal flu.

19.    On September 1, 2021 Laura Enderle from Corona Virus Help emailed me (Exhibit A-11). Laura Enderle merely asserted that the mitigation measures do not constitute medical interventions and sent me to CDC websites as evidence of effectiveness. She did not support her assertion with any evidence that refuted the FDA Guidance definition I sent her. She did not respond to the question I posed regarding my right to informed consent by providing me with an absolute risk/absolute benefit analysis.  She did not respond to my claim that I have the right of refusal for any experimental drug and to take part in experiments.

20.    On September 3, 2021 I received an email from Elizabeth Rodriguez of the BASF Compliance Team regarding my legal questions (Exhibit A-12). Elizabeth Rodriguez denied masks are a medical device when used for mitigation purposes but provided no evidence to support this claim.  Elizabeth Rodriguez cited OSHA Act of 1970 as the justification for discriminating against me. This response shows that BASF is regarding me as a direct threat.  However, BASF has never performed an individualized assessment of me to arrive at this conclusion.  Elizabeth Rodriguez failed to provide me with the safety assessment they were relying upon to determine that I was an OSHA safety threat.   Elizabeth Rodriguez told me to file for an accommodation if I did not want to follow their policies.

21.    On the same day, I received a second email (Exhibit A-13) from Elizabeth Rodriguez regarding my "Notice of Discrimination and Harassment Based Upon Disability". She stated that BASF is following a "guideline" and it appears that BASF's position is that discrimination is acceptable if it results from following a guideline. She again cited the OSHA Act of 1970 as the law they are following but she did not provide me with any diagnosis, court order, or OSHA safety assessment they are relying upon to regard me as a direct threat.

22.    On September 7, 2021 I sent an email to Stephen Cafiero (Exhibit A-14). I gave him the FDA Guideline evidence that classifies masks as medical devices when used for mitigation purposes; and I asked Stephen to consider this evidence for correcting the BASF interpretation of the mask. I also questioned the duty of care for BASF to impose medical interventions on me and asked for proof of insurance.  I again stated that I was seeking no accommodations, and I advised BASF that I had filed an EEOC complaint.

23.     On September 8, 2021 I received an email from Stephen Cafiero regarding my "Notice of Discrimination and Harassment Based Upon Disability" (Exhibit A-15). Stephen denied I was harassed by the numerous COVID emails, he denied the policy is discriminatory, denied that BASF is regarding me as disabled with a potential or actual contagious disease, and he denied a mask for mitigation purposes is a medical device. However, he did not provide any evidence to support his denials.

24.     He then threatened my employment if I did not follow BASFs interventions.  BASF regards me as disabled by classifying me as a potential or actual source of COVID-19. The affirming action of regarding me as a potential or actual source is that I have been given the coercive, threatening, and intimidating choice to mask or be terminated.  He also cited a guideline as justification for imposing the interventions.

25.     On September 11, 2021, after getting absolutely no assistance from the designated employee assigned to handle discrimination and retaliation, and who was threatening me with termination; I sent a copy of a draft of an ADA Complaint to Stephen.  I intended for the company to see that I was serious about calling out their policy as prohibited by the ADA.

26.     On September 22, 2021 Stephen's investigation was concluded and he found that I was not discriminated against.  During the investigation period Stephen told me to work from home.

27.     The next day, on September 23, 2021 Nancy Grancell, local HR representative, called me and threatened to falsely accuse me of job abandonment and told me to report in person to work on September 27, 2021 and comply (Exhibit A-16).  I had been working from home as instructed and this "job abandonment" accusation seemed like a ruse to fire me for not masking without writing that on paper.

28.     On September 27, 2021 I returned to the job site and ignored all COVID policies. I also emailed Nancy Grancell asking her to provide the evidence BASF is relying upon to regard me as a direct threat (Exhibit A-17).  I asked her to do her actual job and stop the harassment.  I asked her to stop threatening me with disciplinary action, and address the policy issues. I informed her that I have no obligation to accept any mitigation measures. I never received an email back from her.

29.    On October 5, 2021 I received an email from Stephen Cafiero (Exhibit A-18). He states BASF's policies are lawful and blames me for anything that happens as a result. He confusingly states that I am not disabled.  He seems to not understand that I am saying that BASF is the one regarding me as disabled and making a record of that disability.

30.    On October 12, 2021, I sent two emails to Stephen Cafiero (Exhibit A-19 a & b) to place in my discrimination file. I again pointed out BASF is regarding me as contagious without an individual assessment. I informed him that BASF was coercing and harassing me by forcing me to choose between their policy or termination. I reiterated that I did not seek an accommodation but wanted to be left alone to perform my job duties. I corrected his false statements regarding the effect of the intervention on my life activities, and I sent him copies of two discriminatory communications I had received that were coercive about medical interventions (Exhibit A-20 a & b). I asked him to stop the harassing emails and sign postings and notified him that this documentation would be added to my EEOC complaint.

31.    On October 14, 2021 I received a company email stating that I must enter my vaccination status online or I will be classified as unvaccinated (Exhibit A-21).

32.    On October 16, I filed a Charge of Discrimination with the EEOC and sent a copy of it to Stephen Cafiero and Nancy Grancell on October 19, 2021 to place in my discrimination file. I received a Right to Sue letter on November 5.  (Exhibit A-22 a,b)

33.    On October 18, 2021 I received an email from Stephen Cafiero (Exhibit A-23). He denied all these communications are harassment and calls them a "reminder". He claimed that collecting vital medical statistics that are not work-related is allowed. He misrepresented my previous statements regarding accommodations and disability and claimed no wrongdoing. He attempted to coerce me to follow BASF's COVID policies and claimed everything is lawful.

34.    On October 22, 2021 in the virtual ammonia morning meeting, I was again informed of the COVID masking requirements for the site.  I then sent an email to Stephen Cafiero to place in my discrimination file (Exhibit A-24) requesting the individualized assessment or a court order BASF is relying upon to determine that I am a contagious threat. I claimed my right to not disclose medical information that is not relevant to my job duties. I informed him that BASF classifying me as "unvaccinated" is discrimination based on physical condition. I requested proof of insurance from BASF for the actions they were taking and provided

- 7 -
Brian Chancey---Affidavit in Support of Amended Complaint

evidence of BASF's misapplication of the OSHA 1970 Act. I again reminded him of the disabilities we discussed on August 25th and informed him that all additional retaliation by BASF would be reported to the EEOC. Additionally, I provided him with the two discriminatory plant communications to place in my file and asked that he stop the harassing emails.

35. On November 22, 2021, I received an email threatening a January 4, 2022 deadline to comply with mitigation measures or face adverse actions.(Exhibit A-25)

36. BASF sent me several harassing emails December 6 through 17, 2021, announcing its intention to apply the OSHA ETS to workers even while the ETS was being stayed by the courts. BASF made clear that it would classify me as either "vaccinated" or "unvaccinated". The "unvaccinated" would be required to to take a weekly antigen test at their own expense and submit the test results to the employer.  My employment was threatened if I did not comply. (Exhibit A-26  a, b, c)

37.   On December 31, 2021, BASF increased isolation and segregation measures by announcing the implementation of alternate work schedules, the introduction of "quarantine" measures and imposing limits on the number of people who can work in a room; additionally it announced masking requirements for all workers. (Exhibit A-27 a,b)

38.  On January 3, 2022, I responded to all these announcements of increased measures and claims that I would be considered a "Safety risk" under the OSHA ETS.  I wrote ADA and Legal departments and asked BASF to provide evidence of any safety assessment it had performed which deemed me a safety risk.  I also asked BASF to provide evidence of any FDA approvals for any of the mitigation measures.  I also asked to be given a written risk/benefit analysis of the measures.  To date, neither the ADA representative nor the Legal representative have responded to my requests for evidence.  (Exhibit A-28)

39.  On January 4, 2022, I received an email threatening a February 1, 2022 deadline to comply with mitigation measures or face discipline and termination. (Exhibit A-29).

40.  On January 5, 2022, my supervisor threatened me with being terminated if I did not put on mask.  (Exhibit A-30)

41.    The documents included with Exhibit A are true and correct copies of the originals.

*Brian Chancey*
                                                          Brian Chancey, Affiant


STATE OF TEXAS            )
                          )        Ss
COUNTY OF MATAGORDA       )

Subscribed and sworn to before me a notary public this _21_ day of February, 2022.

*[signature]*

Signature of Notary                              [ls]

REBECCA RODRIGUEZ
Notary Public, State of Texas
Comm. Expires 12-12-2023
Notary ID 124769866

- 9 -
Brian Chancey---Affidavit in Support of Amended Complaint

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A

written communications

Brian Chancey---Affidavit in Support of Amended Complaint

**Brian Dale Chancey**

| | |
|---|---|
| **From:** | Cindy S Suggs |
| **Sent:** | Friday, July 30, 2021 11:42 AM |
| **To:** | BC-FREEPORT-EVERYONE |
| **Cc:** | Freeport-Leadership-Team; Roberto Nelson; Shelly Schluter Vitanza; Carlie Barbier; Leslie Ann Thomson; Ashley Rena Joseph; Mark J Patterson; Laura A Austin |
| **Subject:** | BASF Freeport Update #62:  Coronavirus 19 |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |



## COVID-19 Update #62 – July 30, 2021

### Safety Moment:

Summer travel season is here. In addition to taking the normal safety precautions (e.g., defensive driving, checking the tires, etc.), remember COVID-19 is everywhere – protect yourself and your loved ones outside the gates just as you do inside the gates.

## Summary:

With the recent increase in the Brazoria County infection rate (~14%) and a recent increase in cases at the Freeport site (12 positive; 17 self-quarantined), the Site Leadership Team/EOC/Pandemic Management Team is implementing the following **updated Freeport Site Pandemic Management Requirements effective 8/2/2021.**

## Details

- Previous COVID status color codes used prior to the availability of a vaccine are no longer in effect.
- Our work schedules will continue to follow the Future of Work Guidelines that went into effect 7/6/2021.
- The BASF Crisis Management Team and Freeport Site Leadership Team will continue to monitor the local community transmission trends, developments, CDC Guidelines and local regulations.  In turn, we will continue to communicate changes as they are made.
- **All** employees will adhere to temperature and COVID survey screening upon entry to the site *regardless of vaccination status.*
- DO NOT COME TO WORK OR ANY BASF SPONSORED EVENT IF YOU ARE SICK even if you are vaccinated.
- Report to your Supervisor if you are ill and unable to come to work. Your Supervisor will contact dispatch, and Medical will contact you.  Link to CDC symptoms list: https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html
- Visitors to the site (BASF, specialty contractors, customers, etc.) require approval by directors or SLT members.
- We will follow the new CDC guidance (issued July 28) with regard to mask requirements, which is the following:
    - For counties designated as HIGH risk, which Brazoria County currently is, masks will be required indoors when social distancing cannot be maintained regardless of vaccination status.
    - Outside, we will continue to follow previous protocols:  unvaccinated workers wear masks when social distancing cannot be maintained, and vaccinated workers are not required to wear a mask. **NOTE:**  Vehicles are considered inside or indoors.
- **It is a requirement to call dispatch at ext. 6210 to report employee symptoms or COVID exposures. Dispatch informs medical who manages the process from there.**
    - ▶ Note: If you are vaccinated and are exposed to someone who is COVID-positive BUT have no symptoms, you will be asked to track your temperature but will be permitted to report to work.
- Due to the close quarters and limited air circulation in vehicles, we require everyone wear masks when riding in vehicles together regardless of vaccination status.
- BASF-sponsored off-site social events should be approved by a Director or SLT member and approval will be limited to those who choose to disclose their vaccination status as "fully vaccinated" in order to reduce exposure risk.
- The site will continue with the cleaning protocols, and all employees are asked to continue to routinely wash their hands and use sanitizers provided in work areas.
- Business travel requires Director or SLT approval and should include a discussion of exposure risk and travel location/community spread in that area.  While it is ultimately a Director or SLT decision, it is strongly recommended we limit travel to those who choose to disclose they are "fully vaccinated."
- If individual work areas or control rooms see a rapid increase in COVID cases, mask wearing will be required, until numbers reduce to 1 to 2 cases in that area.

## What Else:

- BASF as a company continues to encourage all employees to get vaccinated.
- There are some "break-through" cases where a person contracts COVID after being vaccinated; however, the medical community has stated – and our own experience at the site demonstrates – that it is rare and the severity of the illness is far less.
- The Delta Variant is in Brazoria and surrounding counties and is far more contagious than the previous COVID-19 strain; again, we encourage all employees to get vaccinated.

2

■ BASF wants our workers and their families to be safe and healthy, and the measures we have put in place are geared toward ensuring that.

**On behalf of the Site Leadership Team/Crisis Management Team,**
Cindy Suggs Massoletti, APR

**See Updated Mask Guidance Chart Below for Easy Reference**

# Updated Guidance for Masks per CDC (07/28/2021)



| | **Fully vaccinated**<br>(must <u>volunteer</u> proof) | **Unvaccinated** |
|---|---|---|
| **Indoors** *without* **at least 6' distance**<br>Office meetings*, control rooms, conf. rooms, common areas, etc. | 😷 | 😷 |
| **Indoors** *w/6'* **distance** | 🙂 | 🙂 |
| **Outdoors** *w/6'* **distance**<br>*incl. outdoor dining areas* | 🙂 | 🙂 |
| **Outdoors** *without* **at least 6' distance** | 🙂 | 😷 |
| **Temperature screening at entry** | ✔ Required | ✔ Required |

🙂 = Mask not required
😷 = Mask required
* = Mask *not* required when alone in an office

Regards,
**CINDY SUGGS MASSOLETTI, APR**
Manager, Community & Gov't Affairs

Phone: +1 979 415-6273, Mobile: +1 979 230-8609, Email: cindy.suggs@basf.com
Postal Address: BASF Corporation, 602 Bldg; Rm 36, 602 Copper Road, TX 77541 Freeport, TX, USA



We create chemistry

BASF Corporation

Snippet from OneNote from Tier 2 on 8/10/2021.

## Tuesday

**What we require of you to control the spread of the delta variant which is much more contagious than previous variants will now include an upgrade to mask as PPE requirements** (see red text):

- Get vaccinated as soon as possible unless there is a medical reason that prevents you from being vaccinated. This will slow the spread and impact of the delta variant.
- If indoors, masks will be worn indoors in all common areas & when working with others including control rooms, conference rooms & breakrooms (except when actively eating). This is regardless of socially distancing and this is regardless of your vaccination status. This will be a requirement for August.
- Note: if you are working alone in an office, you do not have to wear a mask.
- If outside and not socially distanced (<6 ft), then masks are required for unvaccinated individuals.
- If outside and socially distanced (>6 ft), then no masks are required for either vaccinated or unvaccinated individuals.
- **REMINDER:** Self quarantines are unpaid for exempt (salaried) and non-exempt (hourly) employees. Managers should contact myHR to report the hours / days of unpaid self-quarantine before the current pay period cut off date.

Our masking requirements will be enforced by all supervisors and managers and will be subject to progressive discipline for all team members.

While we understand that none of this is comfortable or convenient for any of us, we ask for your understand and compliance to these requirements in August as we monitor the developments in our area.

**Brian Dale Chancey**

| | |
|---|---|
| **From:** | Brian Dale Chancey |
| **Sent:** | Tuesday, August 10, 2021 5:54 PM |
| **To:** | Skye Picchiottino |
| **Cc:** | Brian Dale Chancey; Jason D Metts |
| **Subject:** | Questions about policy announced in Tier 2 this morning |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Skye:

I have some questions related to the policy about masking announced in the Tier 2 this morning:

1. What hazard(s) is the mask intended to protect me from?

2. Please provide the scientific evidence that show that the mask protects me from these hazards.

Thanks,
**Brian Chancey**

Mobile: +1 979 2368645, Email: brian.chancey@basf.com
Postal Address: BASF Corporation, , 602 Copper Road, 77541 Freeport, USA



We create chemistry

BASF Corporation

# CONFIDENTIAL COMMUNICATION

Date:          **Thursday August 12, 2021**
To:            **Brian Chancey**
Subject:       **WRITTEN WARNING**
Copies:        Employee's Personnel File

This is a Written Warning because of your **refusal to adhere to BASF Freeport site safety / PPE protocols.** Per BASF Freeport Update #62: Coronavirus 19 dated 7/30/2021 and effective Monday, 8/2/2021, all employees (regardless of vaccination status) are required to wear a mask/face covering indoors without at least a 6' distance from others (including but not limited to control rooms, conference rooms and all common areas).  You are expected to **return to work Monday, 8/16/2021 and adhere to all BASF Freeport safety protocols while resuming normal work duties.**

**Any additional violation of Company policy/procedure or continued unsatisfactory performance may result in further disciplinary action, up to and including termination of employment.**  A copy of this Written Warning will be placed in your personnel file.

*I have read and understand the contents of this Written Warning.*

_____
**[Employee's Name]**

Dated:

Witnessed:

_____        _____
**[Manager's\Supervisor's Name]**          **[Witness Name]**

Dated:                                     Dated:

**[If employee refuses to sign, please make notation reflecting that fact.]**

**Brian Dale Chancey**

| | |
|---|---|
| **From:** | Nancy Grancell |
| **Sent:** | Sunday, August 15, 2021 9:14 PM |
| **To:** | Brian Dale Chancey |
| **Cc:** | Jason D Metts |
| **Subject:** | Re: Declined: Follow-Up Discussion - Policy & Performance Expectations |
| **Signed By:** | nancy.grancell@basf.com |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Hi Brian,

Please contact the leave team via the myhr hotline at 1 800 432 9191. They will assist you in starting an accommodation request.

Nancy

Sent from my iPhone

> On Aug 15, 2021, at 9:06 PM, Brian Dale Chancey <brian.chancey@basf.com> wrote:
>
> Jason/Nancy:
>
> I have sent my urgent request for the information via the Covid website as we discussed. I have also submitted my legal concerns to the compliance and ethics website as we discussed. I will not be attending this meeting. So as to not waste more time on this matter please put me in contact with the designated ADA representative.
>
>
> Thanks,
>
> Brian Chancey
>
>
>

1

**Brian Dale Chancey**

| | |
|---|---|
| **To:** | BASFNAComplianceTeam; Stefan John |
| **Cc:** | Brian Dale Chancey |
| **Subject:** | Legal Concerns/Questions & Retaliation |
| **Attachments:** | 8.2.2021 Freeport Pandemic Requirements Rev 4 (1).pptx |

Legal:

This email is divided into two parts. The first part is about my legal concerns/questions and the second part is about retaliation.

**Background for Legal Concerns:**
This last Tuesday 8/10 there was an announcement in the plant in the morning meeting that face masks will be required PPE in the buildings. I promptly sent an email to the unit supervisor requesting information on 1) what hazard(s) the face masks were intended to protect me from and 2) scientific evidence demonstrating the mask protects me from these hazards. Two days later in the morning unit meeting (called Tier 2 meeting) a link to the Corona virus website was provided to the group and a PowerPoint (attached) on Freeport site requirements. My email was never answered. I looked through the Corona virus website and was unable to locate any information on efficacy of masks/distancing, risks and benefits of masks/distancing, or alternative measures with risks and benefits. I also have not been able to locate the scientific evidence for medical necessity. I have submitted an urgent request to the contact email on the Corona virus site for this information.
BASF NA Coronavirus

**Legal Concerns/Questions:**

1. Per the FDA the mask is a medical device. Masks are only authorized under emergency use authorization (EUA). Per Title 21 US Code 360bbb-3 I shall be informed of the benefits and risks of the intervention, given alternatives with their benefits and risks, and have the option to refuse. Please cite the code that removes these rights.

    a. Note: At this point I have not been given informed consent. Informed consent must be given by someone who is qualified and insured for that purpose.

2. Since masks are not FDA approved for SARS COV-2 treatment and we are under EUA, then we are in a study. 21 CFR 50.20 states I cannot be a part of a research study without my consent. It further states I cannot be coerced into participating. Please cite the code that removes these rights.

3. What is BASFs duty of care for a pathogen that is known to everyone in the community? Please cite the specific code that requires BASF to act.
    a. Please cite the legal duty and authority under which BASF seeks to administer medical interventions upon myself.
    b. Please identify any insurable risk for which BASF is authorized and obligated to act.

4. I have not been given a medical exam to assess my ability to withstand impaired breathing or any other adverse health effects from the medical intervention. While I had an initial health screening at hiring, I am not aware of any medical assessment for medical interventions such as masks. Additionally, my medical history was not discussed with me regarding these interventions (to my recollection).

5. Employers are liable for countermeasures they mandate onto their employees. Does BASF have insurance to cover me (all personal, medical, and legal expenses) if I suffer an adverse health consequence as a result of following the mandated medical countermeasure?

6. If I follow BASF's mandatory medical interventions and catch SARS COV-2 anyway here at site, are you insured to cover all of my medical, personal, and legal expenses?

1

7. The CDC issues guidance/recommendations not law. Regardless, if BASF is going to issue policies that reflect CDC guidance then it is BASFs responsibility to ensure efficacy, legality, and necessity for any interventions. Has this been done?

8. Is BASF receiving any funds from government or private organizations, disaster relief funds, or the cares act funds which have requirements or suggestions for imposing medical interventions on BASF's employees?

9. If BASF has any duty of care then the simplest solution would seem to be to provide the authorized masks for those who wish to wear them, make remote working available as feasible, and reduce capacity of meeting places. This provides the protection for the workers OSHA wants and does not infringe on the rights of informed consent for medical countermeasures. Additionally, the requirement from 29 USC 654 should be satisfied. Why does BASF not follow this approach?

   a. BASF code of conduct says "We treat people with fairness, consideration and respect. Our aim is to ensure that each individual feels valued, and fully supported in achieving their personal best." Respecting employee rights is part of supporting and respecting people.

BASF policy cannot override existing law, and regardless of whether the laws are being properly enforced, BASF should strive to act ethically and lawfully. Please help to me to resolve my concerns with the BASF policies discussed above.

**Retaliation:**
I had a meeting with my supervisor Jason Metts and his supervisor Jay Garner on 8/12/2021 about the email I had sent to the Ammonia unit supervisor (see background above). I expressed my concerns, both legal and regarding informed consent with Jay. He dismissed my informed consent concern and claimed ignorance of the legal concerns. I also informed him I would be sending my questions urgently both through the Corona virus help email and through the legal compliance email. At the end of the meeting he informed me my building (which is outside of the plants) is also subject to masking mandates. I thanked him for telling me and I promptly left site after the meeting. Approximately three hours afterwards my supervisor, Jason Metts, informed me Jay wanted me onsite on Monday 8/16. Within 24 hours I was sent a written warning and a meeting was scheduled with HR for Monday 8/16.
As per the BASF compliance & ethics center website "*BASF strictly prohibits retaliation against any person who uses the Hotline in good faith.*". It is clear Jay is –
- Forcing me into a situation where my concerns have not had sufficient time to be resolved & I would be in violation of policy to be present, and
- issuing me a warning for an issue I just informed him I had problems with and was trying to resolve.

This is retaliation, bullying, and poor ethical behavior for a supervisor. Rather than letting me try to resolve the issues using the company supplied resources, force was the method chosen by this supervisor. Please advise Jay to cease and desist with this behavior immediately.
My plan is to support my plant remotely and, if needed onsite, look at issues outdoors only and away from others until these questions are resolved.  This complies with the current policy at the plant. I plan to decline the meeting for Monday (unless WebEx), work remotely, and notify the persons in the meeting of the status of my inquiries and my plan to support the plant. I also plan to notify them that I cannot consent to the policy until I have been adequately informed.


Thanks,
**Brian Chancey**


Mobile: +1 979 2368645, Email: brian.chancey@basf.com
Postal Address: BASF Corporation, , 602 Copper Road, 77541 Freeport, USA



We create chemistry

BASF Corporation

**Brian Dale Chancey**

| | |
|---|---|
| **From:** | Brian Dale Chancey |
| **Sent:** | Monday, August 16, 2021 10:20 AM |
| **To:** | BASFNAComplianceTeam |
| **Cc:** | Brian Dale Chancey |
| **Subject:** | ADA complaint |

Legal:

Greetings,

Please be advised that BASF and my supervisors and other personnel employed by BASF have been making false business and employment records. Making a false record that I have a contagious disease and then discriminating against me based upon this disability. I am a qualified individual with a disability and my employer has been making a record of such disability, and I have and continue to invoke my rights under Title I of the Americans with Disabilities Act. BASF is discriminating against me based upon disability and continues to ignore the law and my rights.

I am in receipt of the "Covid Update #62" from Cindy S. Suggs that was sent to me via email on July 30th 2021. This communication constitutes retaliation in violation of Title I of the Americans with Disabilities Act. See 42 U.S.C. §12203(b).

BASF and my supervisors have failed or refused to conduct any individualized assessment to determine whether or not I am a direct threat to anyone, yet regard me as having a disability or contagious disease without any evidence and in violation of Title I of the Americans with Disabilities Act (ADA). Under the supervision and responsibility of Jason Metts and Jay Garner, each of you along with other employees have been permitted to deliberately single me out and treat me differently than other employees for the purpose of retaliating against me for attempting to exercise my rights under the Americans with Disabilities Act. As a covered entity, you are required to aid and encourage me in the enjoyment and exercise of my rights under the ADA. Applying your policy equally to everyone, and then regarding me as having a disability, making a record of it, and then seeking to penalize me for exercising my rights to refuse your mitigation measures is the same discrimination as "separate but equal" from the sixties.

BASF claims that it has the duty to protect employees and invitees upon its premises from myself, yet has never identified its legal duty of care (a law) that created such obligation.

BASF claims that it has the duty to protect employees and invitees from myself yet has failed to identify any insurable risk, such as any certification from its insurance carrier that it has insurance to engage in such practices, or can accept financial responsibility for any adverse consequences of such practices.

Now, my supervisor and manager, Jason Metts and Jay Garner have created and continue to create false employment records for the purpose of wrongfully terminating my employment as one more act of retaliation against me in violation of Title I of the Americans with Disabilities Act.

It is now clear to me now that each of you are creating false personnel records for the purpose of attempting to justify the wrongful termination of my employment. It appears that this is the sole purpose of the scheduled August 16th meeting with HR.

The BASF policy (which is not written by BASF but by some third party) creates a disability for me or exacerbates my disability. I have been intimidated and coerced with the threat of the termination of my employment, segregation, isolation, incarceration, arrest, public humiliation and other acts of intimidation and coercion in violation of Title I of the ADA and its implementing regulation, 29 CFR §1630.12.

Be further advised that Title I of the ADA prohibits employment discrimination on the basis of disability. Among other things, Title I prohibits employers from requiring medical examinations or making disability-related inquiries of employees unless such examination or inquiry is shown to be job-related and consistent with business necessity; see, 42 U.S.C. §12112(d)(4); 29 CFR §1630.14(c).

Regarding the mitigation measures including but not limited to mask-wearing, vaccines, social distancing, hand-washing and giving vital statistics (body temperature) or tissue samples (diagnostic testing), I am not required to access these or any mitigation measures under Title I of the ADA, 29

1

CFR Part 1630.9(d). If you have some legal authority that overrides this, please provide me with a legal citation.

Regarding each intervention or mitigation measure, a) why does your communication fail to include notice that this is under an emergency use authorization, and disclose the risks and benefits of the product, and also advise me of my right to either accept or refuse the product, and b) which product has the proven efficacy to prevent transmission or infection of the contagious disease for which you regard me as having? You are required by law, specifically 21 U.S.C. §360bbb-3 of the Food, Drug and Cosmetic Act, to provide me with these disclosures.


Thanks,
**Brian Chancey**


Mobile: +1 979 2368645, Email: brian.chancey@basf.com
Postal Address: BASF Corporation, , 602 Copper Road, 77541 Freeport, USA



We create chemistry

BASF Corporation

**Brian Dale Chancey**

| | |
|---|---|
| **From:** | Brian Dale Chancey |
| **Sent:** | Friday, August 13, 2021 9:37 AM |
| **To:** | US Coronavirus Info |
| **Cc:** | Brian Dale Chancey |
| **Subject:** | Urgent - Questions |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Medical:

This email is <u>not</u> intended to be anonymous.

I have recently seen a requirement in plant units for masks to be required as PPE. I have asked my unit supervisor to provide me with information on what hazard we are trying to mitigate and the efficacy of the intervention. The unit supervisor has sent a link to your website. Based on the reply I concluded –

1.  Hazard to mitigate: SARS COV-2
2.  Intervention : face mask & physical distancing
3.  Efficacy: I could find no efficacy information on the website for face masks or distancing. Further, under informed consent I need to be provided the risks and benefits and the list of alternatives with their risks and benefits.

Since the site is forcing these policies I need this information <u>immediately</u>. Please send me the scientific evidence about the efficacy of these measures, the risks and benefits, and the alternatives with risks and benefits.

Thanks,
**Brian Chancey**

Mobile: +1 979 2368645, Email: brian.chancey@basf.com
Postal Address: BASF Corporation, , 602 Copper Road, 77541 Freeport, USA



We create chemistry

BASF Corporation

Brian Chancey
gnman4@yahoo.com

---

Stephen Cafiero, Human Resources
BASF Corporation

CONFIDENTIAL COMMUNICATION
29 CFR §1630.14(c)(1)

August 23rd 2021.

RE employment discrimination and retaliation

Hello Stephen,

This is a confidential communication that I am requesting be included into my personnel file and I want this and subsequent communications to be kept confidential within human resources. I am documenting acts of retaliation and harassment of which I have been subjected to on the job. I also want to speak confidentially to the BASF Corporation (BASF) designated employee or representative for matters involving Title I of the Americans with Disabilities Act (ADA) and grievances.

I am in receipt of the "Covid Update #62" from Cindy S. Suggs that was sent to me via email on July 30th 2021 as well as the notice on OneNote for the ammonia unit from August 10th 2021, and the PowOnerPoint sent on the "Freeport Pandemic Requirements". This communication constitutes harassment in violation of Title I of the Americans with Disabilities Act. See 42 U.S.C. §12203(b).

Please explain why BASF and its employees are discriminating against me based upon a disability you are regarding me as having? I am invoking my rights under the Americans with Disabilities Act as a qualified individual with a disability.

I am being regarded as having a contagious disease by my supervisor Jason Metts, manager Jay Garner, and the Ammonia unit management without any individualized assessment. They have **created and continue to create false employment records for the purpose of wrongfully terminating my employment** as one more act of retaliation against him in violation of Title I of the Americans with Disabilities Act. These individuals are continually harassing me for my medical records and to submit to medical examinations and interventions (mitigation measures) without any informed consent. It has been extremely difficult to perform my employment duties because of these interruptions and harassment.

Regarding the mitigation measures including but not limited to mask-wearing, vaccines, social distancing, hand-washing and submitting to medical examinations such as the collection of vital statistics (body temperature) or tissue samples (diagnostic testing), I am not required to accept these or any mitigation measures under Title I of the ADA, 29 CFR Part 1630.9(d). If you have some legal authority that overrides this, please provide me with a legal citation.

Title I of the ADA prohibits employers from requiring medical examinations or making disability-related inquiries of employees unless such examination or inquiry is shown to be job-related and consistent with business necessity; see, 42 U.S.C. §12112(d)(4); 29 CFR §1630.14(c)

**My questions are:**
1. Why do you regard me as having a disability and what records have you made of this?
2. What physician, what medical records, and what complaint made by a physician to a health officer, and "orders of isolation and quarantine" do you rely upon for diagnosing me as having a contagious disease? Please include all, evidence, court records and records from the individualized assessment used in making this determination or diagnosis as required under the Texas public health policy[1] and Title I of

---

1   Control Measures and Public Health Emergencies, A Texas Bench Book

the Americans with Disabilities Act.[2]

3. Please identify the statute and regulation imposing your legal duty of care to protect me and others from any contagious disease and the commissioner's pertinent "hazard assessments".

4. Please provide a copy of documentary evidence from the departments of health or labor establishing the existence of a disease that has been isolated by modern scientific standards and documentary evidence proving that such disease is airborne and contagious.

5. Please identify your insurable risk with a copy of your insurance binder showing that you are insured for protecting employees from a contagious disease, and any adverse health consequences they may suffer as a result of your mitigation measures.

6. Regarding the mitigation measures, a) why have you refused to include notice that this is under an emergency use authorization, and disclose the risks and benefits of the product, and also advise me of my right to either accept or refuse the product,[3] and b) which of these mitigation measures has the proven efficacy to prevent transmission or infection of the contagious disease for which you regard me as having?

7. How are your requests for my medical information and submitting to medical examinations and interventions necessary for the performance of my employment duties?

8. Why are you able to diagnose me with a deadly disease and impose restrictions and medical interventions without my informed consent, without any physician's oversight or judicial approval, yet I am required to obtain written permission from my physician to exercise my rights to informed consent and medical privacy? We can stipulate that I have never waived any of my rights to medical privacy which includes the right of informed consent as a condition for employment.

If you refuse to answer these questions, I will consider the matter closed and we can set it aside and continue with our business without further interruption.

Be advised that if my employment is conditioned upon submitting to your mitigation measures, this constitutes discrimination based upon disability, a violation of state and federal law, and retaliation under the ADA, for which I would have a claim for employment discrimination based upon disability.

Sincerely,

Brian Chancey

Please be advised that this communication and all related communications are confidential and must not be disclosed as per the Americans with Disabilities Act explained below

2   29 CFR 1630.2 et seq.
3   21 USC 360bbb-3

**Post Script Memorandum of Law**

Title I of the ADA, 42 U.S.C. § 12111, et seq., and its implementing regulation, 29 C.F.R. Part 1630, permits covered employers, such as BASF, to make inquiries into the ability of an employee to perform job-related functions and make inquiries into the nature and severity of the employee's disability, so long as the examination is job-related and consistent with business necessity. 42 U.S.C. §§ 12112(d) (4)(A)–(B); 29 C.F.R. § 1630.14(c). See also Darby v. Childvine, Inc. 964 F.3d 440 (2020)

Information obtained as a result of such an examination or inquiry regarding the medical condition or history of any employee must be treated as a confidential medical record. 42 U.S.C. §§ 12112(d)(4) (C), (d)(3)(B); 29 C.F.R. § 1630.14(c)(1).

Confidential medical information may be disclosed in three instances: (1) to inform supervisors or managers regarding necessary restrictions on the work of the employee and necessary accommodations, (2) to medical personnel when emergency treatment is required, and (3) to government officials investigating compliance with this regulation. 42 U.S.C. §§ 12112(d)(4)(C), (d)(3) (B); 29 C.F.R. § 1630.14(c)(1). None of these exceptions apply with regard to my employment with BASF.

Texas Workforce Commission Civil Rights Division
101 East 15th Street, Guadalupe CRD,
Austin, TX 78778-0001
(888) 452-4778

TWC:

This letter is an explanation for the two questions asked on the Employment Discrimintation Complaint Form.

**Explain why you believe the employment harm(s) and/or action(s) were discriminatory:**
    I am being regarded as having a contagious disease by my supervisor Jason Metts, manager Jay Garner, and the Ammonia unit management without any individualized assessment. They have **created and continue to create false employment records for the purpose of wrongfully terminating my employment** as one more act of retaliation against me in violation of Title I of the Americans with Disabilities Act. These individuals are continually harassing me for my medical records and to submit to medical examinations and interventions (mitigation measures) without any informed consent. It has been extremely difficult to perform my employment duties because of these interruptions and harassment. I have attached some of the comminications received regarding mandatory medical interventions. Additionally, I have been written up for not following the imposed medical interventions and a meeting was scheduled onsite to guarantee I would be in violation of their policies by attending the meeting. I did not attend the meeting.

I have filed an ADA complaint with my employer. After filing the complaint I told my employer I intended to return to site and continue my duties as normal. However, they are continuing to discriminate against me by telling me to adhere to their policy. As a result I am not able to perform all of my normal job duties and they have told me they will instruct my supervisor to cover for me for onsite activities.

**Employer's reason for its action:**
Employer regards employee as having a disability, has made a record of such disability and now discriminates against me. Employer is now retaliating against me for not adhering to forced policy.

Sincerely,

Brian Chancey
gnman4@yahoo.com

# EMPLOYMENT DISCRIMINATION COMPLAINT FORM
## Texas Workforce Commission Civil Rights Division
Please return this form by:
Mail: 101 East 15th Street, Guadalupe CRD, Austin, TX 78778-0001
Email: EEOIntake@twc.state.tx.us
Telephone: (888) 452-4778 *or*
Fax: (512) 463-2643 or (512) 463-2755

TWCCRD#_____

EEOC#_____

---

*Please indicate if you have previously filed this complaint with any of the agencies below:*
☐ Texas Workforce Commission Civil Rights Division (TWCCRD)
☐ Equal Employment Opportunity Commission (EEOC)
☐ City of Austin Equal Employment and Fair Housing Office
☐ Corpus Christi Human Relations Division
☐ Fort Worth Human Relations Department

**DATE RECEIVED** (For Office Use Only):

---

**Please be sure you provide all the information requested.  For Assistance, send an E-mail to EEOIntake@twc.state.tx.us or call us at (888) 452-4778. (Ofrecemos asistencia en Español)**

---

**Complainant Full Name:**
Brian Dale Chancey

**Address Line 1:** 3117 Encino Avenue
**Address Line 2:**
**City/State/Zip:** Bay City/Texas/77414
**Home Phone #:** 832-863-4519
**Other Phone #:**
**Email:** gnman4@yahoo.com
**Preferred Form of Contact: (Please check)**
☑ E-mail  ☐ Telephone

**Complainant Representative (Optional):** *(If you are represented by an attorney, please have them submit a letter of representation):*

**Address Line 1:**
**Address Line 2:**
**City/State/Zip:**
**Phone #:**
**Fax #:**

---

**Date Hired:** 07/20/, **Position held:** I/E engineer
**Still employed?** ☑ Yes ☐ No

**HR Personnel Officer/EEO Officer/or Highest Ranking Officer on work site:**
Nancy Grancell (nancy.grancell@basf.com)

**Name of Employer**  *(Please be sure to give the complete Company name and address where you physically worked)*
BASF Corporation

**15 or more employees:**
☑ Yes  ☐ No

---

**Company Address**
**Address Line 1:** 602 Copper Road
**Address Line 2:**
**City/State/Zip:** Freeport/Texas/77541
**Phone #:** 979-238-6100

**Company Officer Address**
**Address Line 1:** 602 Copper Road
**Address Line 2:**
**City/State/Zip:** Freeport/Texas/77541
**Phone #:** 248-979-7436

---

| | | |
|---|---|---|
| *BASIS: I believe I have been discriminated against in violation of state law (Texas Labor Code, Chapter 21) and federal law (ADEA, GINA, Title VII, ADAAA), as follows:* | ☐ Age *(You must be 40 years of age or older to qualify)*:<br>Date of Birth:<br>___/___/___<br>Month/day/year<br>Age at time of incident:<br>____ | ☐ Color (Based on skin color):<br>☐ Black<br>☐ Brown<br>☐ White<br>☐ Other: | ☑ Disability:<br>☐ Disabled<br>☐ History of disability<br>☑ Regarded as disabled<br>*(Pregnancy is NOT a disability unless you are regarded as disabled.)* |
| ***Please mark only the basis you believe were the reasons you were discriminated.*** | ☐ GINA<br>(Genetic Information Non-discrimination Act) | ☐ National Origin:<br>☐ African-American<br>☐ Anglo/Caucasian<br>☐ East Indian<br>☐ Hispanic<br>☐ Mexican<br>☐ Other: | ☐ Race:<br>☐ American Indian/Alaskan Native<br>☐ Asian/Pacific Islander<br>☐ Black<br>☐ White<br>☐ Other: |
| **EXAMPLE:  If your treatment was because of your race, then check only the box by your race.** | ☐ Religion:<br>☐ Baptist<br>☐ Catholic<br>☐ Jewish<br>☐ Muslim<br>☐ Other: | ☑ Retaliation:<br>☐ Assisted another filing discrimination<br>☑ Filed a complaint of discrimination<br>☐ Participated in discrimination investigation.<br>*ON THIS DATE:*<br>___/___/___<br>Month/day/year | ☐ Sex:<br>☐ Female<br>☐ Female/Pregnancy<br>☐ Male |

---

## Employment Harms or Actions *(Mark all that apply)*

- ☐ Demotion (D1)
- ☐ Discharge (D2)
- ■ Discipline (D3)
- ■ Harassment (H1)
- ☐ Hiring (H2)

- ☐ Layoff (L1)
- ☐ Promotion (P3)
- ☐ Reasonable Accommodation (R6)
- ☐ Severance Pay (B5)
- ☐ Sexual Harassment (S4)

- ☐ Suspension (S5)
- ☐ Terms & Conditions (T2)
- ☐ Training (T4)
- ☐ Wages (W1)
- ☐ Other:

**The following questions are regarding the employment harms or actions taken against you.**
**(Each incident must be within 180 days of the date you submit your complaint to the TWCCRD.)**

**DATE(S) DISCRIMINATION TOOK PLACE (Month/Day/Year)**

Earliest (Month/Day/Year)
08 /10 /21

Latest (Month/Day/Year)
___/___/___

■ CONTINUING ACTION

| Name and Position Title of person(s) who did the harm: | (If filing under race, color, national origin, religion, sex, age, please provide the race, color, national origin, religion, sex, or age of the person(s) discriminating against you:) |
|---|---|
| BASF Freeport, Jay Hunt, Jason Metts | |

**Did you complain of discrimination to your employer?** ■ Yes ☐ No
If Yes, date of complaint: 8 /16 /21 (Month/Day/Year)
Name and Position Title of person(s) you complained to:

Compliance Hotline. Later spoke with Stephen Cafiero in HR: Manager, Corporate EEO.

**Explain why you believe the employment harm(s) and/or action(s) were discriminatory:**

See attached.

**Employer's reason for its action:**

See attached.

**Are there other employees treated more fairly than you?** ☐ Yes ☑ No
If Yes, please provide the information below:

| Full Name and Position Title | (If filing under race, color, national origin, religion, sex, and/or age,  please provide the race, color, national origin, religion, sex, or age of the person(s) treated more fairly than you.) |
|---|---|
| | |
| | |
| | |

**What are you seeking as a resolution to your case?**
I am seeking no accomodations or modifications. I am asking my employer to leave me alone to perform my job duties.

**What is the most convenient method to contact you:**

☑ Email: anman4@yahoo.com          ☐ Telephone: (   )

**Submitting this Complaint Form DOES NOT represent filing a formal Charge of Discrimination**

**Brian Dale Chancey**

| | |
|---|---|
| **From:** | Skye Picchiottino |
| **Sent:** | Tuesday, August 31, 2021 7:56 AM |
| **To:** | Brian Dale Chancey |
| **Cc:** | Jason D Metts |
| **Subject:** | RE: Questions about policy announced in Tier 2 this morning |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Dear Brian:

In follow-up to the Freeport site's policy about masking, here are the answers to your questions.

1. SARS-Co-V-2 (Covid-19)

2. For a sampling of outside scientific evidence related to the community use of masking to prevent the transmission of Covid-19, please visit the Covid-19 Frequently Asked Questions (FAQ) section of the BASF US Coronavirus Info website:

## Q: Are masks effective in the fight against COVID-19?

A: Masks are very effective and an important part of our safety mandate. There are numerous scientific studies that have proven mask wearing to be an effective nonpharmacologic intervention to reduce the spread of infection, both as source control to prevent spread from infected persons, and also as protection to reduce wearers' exposure to infection. If you appreciate data and want learn more, here are a few reports: Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2 | CDC; Effectiveness of Mask Wearing to Control Community Spread of SARS-CoV-2; An evidence review of face masks against COVID-19 | PNAS.

Please let me know if you have further questions.

Regards,
**Skye Picchiottino**
Production Execution Manager – Ammonia Plant and Terminal

Phone: +1 979 415-6774 Mobile: +1-979-292-4981 E-Mail: skye.picchiottino@basf.com
Postal Address: BASF Corporation, Freeport, 77541 Freeport, USA


We create chemistry

**From:** Brian Dale Chancey <brian.chancey@basf.com>
**Sent:** Tuesday, August 10, 2021 5:54 PM
**To:** Skye Picchiottino <skye.picchiottino@basf.com>
**Cc:** Brian Dale Chancey <brian.chancey@basf.com>; Jason D Metts <jason.metts@basf.com>
**Subject:** Questions about policy announced in Tier 2 this morning

Skye:

I have some questions related to the policy about masking announced in the Tier 2 this morning:
1.  What hazard(s) is the mask intended to protect me from?

2.  Please provide the scientific evidence that show that the mask protects me from these hazards.


Thanks,
**Brian Chancey**


Mobile: +1 979 2368645, Email: brian.chancey@basf.com
Postal Address: BASF Corporation, , 602 Copper Road, 77541 Freeport, USA


We create chemistry

BASF Corporation

**Brian Dale Chancey**

| | |
|---|---|
| **From:** | Laura Elizabeth Enderle on behalf of US Coronavirus Info |
| **Sent:** | Wednesday, September 1, 2021 10:54 AM |
| **To:** | Brian Dale Chancey; US Coronavirus Info |
| **Subject:** | RE: Urgent - Questions |

Dear Brian:

Thank you for reaching out to the US Coronavirus Info website.  Please find responses to your questions below.

1.  You are correct that the hazard BASF is trying to mitigate with the indoor mask requirement is SARS-CoV-2 (Covid-19).

2.  In addition to face masks and physical distancing that you mentioned, BASF is also: (1) performing temperature checks and asking all employees Covid-19 screening questions at the entrance gates; (2) using enhanced cleaning protocols, with a focus on high touch surfaces and the increased availability of hand sanitizers and cleaning wipes; (3) limiting the occupancy numbers for community use rooms; (4) limiting the number of visitors to the site; (5) limiting BASF sponsored off site social events; (6) requiring Director or Senior Leadership Team approval for business travel; (7) allowing nonessential employees to continue to work remotely; and (7) repeatedly encouraging employees to practice good personal hygiene and hand washing protocols.

3.  The FAQ Section of the US Coronavirus Info website does contain efficacy information with respect to masks preventing the transmission of Covid-19:

> ### Q: Are masks effective in the fight against COVID-19?
>
> A: Masks are very effective and an important part of our safety mandate. There are numerous scientific studies that have proven mask wearing to be a effective nonpharmacologic intervention to reduce the spread of infection, both as source control to prevent spread from infected persons, and also as protection to reduce wearers' exposure to infection. If you appreciate data and want learn more, here are a few reports: Science Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2 | CDC; Effectiveness of Mask Wearing to Control Community Spread of SARS-CoV-2; An evidence review of face masks against COVID-19 | PNAS.

For efficacy information with respect to physical distancing preventing the transmission of Covid-19, please see the attached article from the CDC's Emerging Infectious Diseases Journal: Evaluating the Effectiveness of Social Distancing Interventions to Delay or Flatten the Epidemic Curve of Coronavirus Disease - Volume 26, Number 8—August 2020 - Emerging Infectious Diseases journal - CDC.

Please note that the above mitigation measures instituted by BASF are not medical procedures that would require an employee's informed consent in order to institute.

We trust that the above information answers your concerns.  BASF will continue to follow the recommendations of the US Department of Labor's Occupational Safety and Health Administration (OSHA) and the Centers for Disease Control and Prevention (CDC) to reduce the risk of our employees becoming infected with Covid-19 in the workplace.

If you have any additional questions in response to the above information, feel free to reach out to Stephen Cafiero, Corporate EEOC Manager.

**From:** Brian Dale Chancey <brian.chancey@basf.com>
**Sent:** Friday, August 13, 2021 10:37 AM

**To:** US Coronavirus Info <US-coronavirus-info@basf.com>
**Cc:** Brian Dale Chancey <brian.chancey@basf.com>
**Subject:** Urgent - Questions

Medical:

This email is <u>not</u> intended to be anonymous.

I have recently seen a requirement in plant units for masks to be required as PPE. I have asked my unit supervisor to provide me with information on what hazard we are trying to mitigate and the efficacy of the intervention. The unit supervisor has sent a link to your website. Based on the reply I concluded –

1. Hazard to mitigate: SARS COV-2
2. Intervention : face mask & physical distancing
3. Efficacy: I could find no efficacy information on the website for face masks or distancing. Further, under informed consent I need to be provided the risks and benefits and the list of alternatives with their risks and benefits.

Since the site is forcing these policies I need this information <u>immediately.</u> Please send me the scientific evidence about the efficacy of these measures, the risks and benefits, and the alternatives with risks and benefits.

Thanks,
**Brian Chancey**

Mobile: +1 979 2368645, Email: brian.chancey@basf.com
Postal Address: BASF Corporation, , 602 Copper Road, 77541 Freeport, USA



We create chemistry

BASF Corporation

**Brian Dale Chancey**

| | |
|---|---|
| **From:** | Elizabeth A Rodriguez on behalf of BASFNAComplianceTeam |
| **Sent:** | Friday, September 3, 2021 1:26 PM |
| **To:** | Brian Dale Chancey |
| **Subject:** | RE: Legal Concerns/Questions & Retaliation |

| | |
|---|---|
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

| | |
|---|---|
| **Categories:** | Red Category |

Dear Mr. Chancey:

Thank you for submitting your email to the BASF North America Compliance Team mailbox concerning the recent change in masking practices at the Freeport TX site.  Responses to your concerns are outlined below.

**Background for Legal Concerns:**

It is our understanding that you have received a response to the email you recently sent to your Freeport unit supervisor.  It is also our understanding that you have received a response to the email you recently sent to the US Coronavirus Info website.

**Legal Concerns/Questions:**

1. Per the FDA the mask is a medical device. Masks are only authorized under emergency use authorization (EUA). Per Title 21 US Code 360bbb-3 I shall be informed of the benefits and risks of the intervention, given alternatives with their benefits and risks, and have the option to refuse. Please cite the code that removes these rights.

    a. Note: At this point I have not been given informed consent. Informed consent must be given by someone who is qualified and insured for that purpose.

The FDA regulation that you are referring to addresses the manufacture and sale of medical products and does not apply to BASF.  BASF is not manufacturing or selling a medical product.  It is instead asking you to wear a cloth face covering or a disposable face mask while indoors, neither of which is a medical device, nor a medical product covered by the FDA.

2. Since masks are not FDA approved for SARS COV-2 treatment and we are under EUA, then we are in a study. 21 CFR 50.20 states I cannot be a part of a research study without my consent. It further states I cannot be coerced into participating. Please cite the code that removes these rights.

Please see the response to Question #1.  The regulations that you cite do not apply to BASF.

3. What is BASFs duty of care for a pathogen that is known to everyone in the community? Please cite the specific code that requires BASF to act.
    a. Please cite the legal duty and authority under which BASF seeks to administer medical interventions upon myself.
    b. Please identify any insurable risk for which BASF is authorized and obligated to act.

As your employer, BASF is required under the Occupational Health and Safety Act of 1970 to "furnish to each of his employees' employment and a place of employment which are free from recognized hazards that are causing or likely to cause death or serious physical harm to his employees." 29 USC §654(a)(1).  BASF is also required to "comply with occupational safety and health standards promulgated under this Act." 29 USC §654(a)(2).

1

In tandem with BASF's obligation to provide you with a safe working environment under OSHA, you as an employee of BASF are also obligated to "comply with occupational safety and health standards and all rules, regulations, and orders issued pursuant to this Act which are applicable to his own actions and conduct." 29 USC §654(b).

BASF is not seeking to administer any type of "medical intervention" upon you. Instead, it is following the recent recommendation by OSHA and the CDC that vaccinated individuals wear a cloth face overing or a disposable face mask indoors along with unvaccinated individuals.

4.  I have not been given a medical exam to assess my ability to withstand impaired breathing or any other adverse health effects from the medical intervention. While I had an initial health screening at hiring, I am not aware of any medical assessment for medical interventions such as masks. Additionally, my medical history was not discussed with me regarding these interventions (to my recollection).

As answered above in Question #3, BASF is not administering any type of "medical intervention" upon you. If you feel that you may suffer adverse health effects from being asked to wear a cloth face covering or a disposable face mask while indoors, please contact the BASF Leave Team to initiate the interactive accommodation process under the Americans with Disabilities Act.

5.  Employers are liable for countermeasures they mandate onto their employees. Does BASF have insurance to cover me (all personal, medical, and legal expenses) if I suffer an adverse health consequence as a result of following the mandated medical countermeasure?

As answered above in Question #4, if you feel that you may suffer adverse health effects from being asked to wear a cloth face covering or a disposable face mask while indoors, please contact the BASF Leave Team to initiate the interactive accommodation process under the Americans with Disabilities Act.

6.  If I follow BASF's mandatory medical interventions and catch SARS COV-2 anyway here at site, are you insured to cover all of my medical, personal, and legal expenses?

As answered above, BASF is not administering any type of "medical intervention" upon you. To the extent you may become ill with SARS-Co-V-2 (Covid-19) while working at BASF, you would have paid leave available to you under BASF's Short Term Disability Policy.

7.  The CDC issues guidance/recommendations not law. Regardless, if BASF is going to issue policies that reflect CDC guidance then it is BASFs responsibility to ensure efficacy, legality, and necessity for any interventions. Has this been done?

BASF has the performed the appropriate due diligence to ensure that its policies are consistent with current law.

8.  Is BASF receiving any funds from government or private organizations, disaster relief funds, or the cares act funds which have requirements or suggestions for imposing medical interventions on BASF's employees?

As answered above, BASF is not "imposing medical interventions" upon you or any other BASF employee. Instead, it is following the recent recommendation by OSHA and the CDC that vaccinated individuals wear a cloth face covering or a disposable face mask indoors along with unvaccinated individuals.

9.  If BASF has any duty of care then the simplest solution would seem to be to provide the authorized masks for those who wish to wear them, make remote working available as feasible, and reduce capacity of meeting places. This provides the protection for the workers OSHA wants and does not infringe on the rights of informed consent for medical countermeasures. Additionally, the requirement from 29 USC 654 should be satisfied. Why does BASF not follow this approach?

    a.  BASF code of conduct says "We treat people with fairness, consideration and respect. Our aim is to ensure that each individual feels valued, and fully supported in achieving their personal best." Respecting employee rights is part of supporting and respecting people.

BASF policy cannot override existing law, and regardless of whether the laws are being properly enforced, BASF should strive to act ethically and lawfully. Please help to me to resolve my concerns with the BASF policies discussed above.

As answered above, BASF is not imposing any type of medical countermeasures upon you. Instead, it is following the recent recommendation by OSHA and the CDC that vaccinated individuals wear a cloth face covering or a disposable

face mask indoors along with unvaccinated individuals.  Since this is not a medical countermeasure, it does not require informed consent.

BASF is satisfying its duty of care owed to employees under 29 USC §654 by engaging in a multitude of measures designed to protect employees from the spread of SARS-Co-V-2 (Covid-19) in the workplace, which include, but are not limited to:  (1) following the recommendation of OSHA to require employees to wear a cloth face covering or a disposable face mask consistent with the most current CDC guidelines; (2) requiring employees to social distance in the workplace; (3) performing temperature checks and asking all employees Covid-19 screening questions at the entrance gates; (4) using enhanced cleaning protocols, with a focus on high touch surfaces and the increased availability of hand sanitizers and cleaning wipes; (5) limiting the occupancy numbers for community use rooms; (6) limiting the number of visitors to the site; (7) limiting BASF sponsored off site social events; (8) requiring Director or Senior Leadership Team approval for business travel; (9) allowing nonessential employees to continue to work remotely; and (10) repeatedly encouraging employees to practice good personal hygiene and hand washing protocols.

Keeping our workplace safe is of primary concern to BASF.  Our practices throughout the Covid-19 pandemic have been guided by recommendations and requirements from federal, state and local governments and agencies.  BASF is not overriding any existing laws, and our practices have been implemented in an ethical and lawful manner. This is in line with the BASF Code of Conduct to ensure that our business continues to function and allows all of our employees to achieve their personal best.

**Retaliation:**

It is our understanding that you have spoken with Stephen Cafiero, Corporate EEO Manager, at length concerning your allegations of retaliation.  Mr. Cafiero will serve as your contact person to resolve any issues raised in this paragraph.

We trust that the above is responsive to your concerns.  If you have any additional concerns, please reach out to Mr. Cafiero to discuss further.

Thanks


**LYNETTE PAPUSHAK**
Assistant General Counsel, Compliance & Employment

Mobile: (216) 469-0332, Email: lynette.papushak@basf.com
Postal Address: BASF Corporation, A-0156, 2 TW Alexander Drive,  Research Triangle Park NC 27709, USA



We create chemistry


----

**From:** Brian Dale Chancey <brian.chancey@basf.com>
**Sent:** Sunday, August 15, 2021 3:47 PM
**To:** BASFNAComplianceTeam <BASFNAComplianceTeam@basf.com>; Stefan John <stefan.john@basf.com>
**Cc:** Brian Dale Chancey <brian.chancey@basf.com>
**Subject:** Legal Concerns/Questions & Retaliation

Legal:

This email is divided into two parts. The first part is about my legal concerns/questions and the second part is about retaliation.

**Background for Legal Concerns:**

This last Tuesday 8/10 there was an announcement in the plant in the morning meeting that face masks will be required PPE in the buildings. I promptly sent an email to the unit supervisor requesting information on 1) what hazard(s) the face masks were intended to protect me from and 2) scientific evidence demonstrating the mask protects me from these hazards. Two days later in the morning unit meeting (called Tier 2 meeting) a link to the Corona virus website was provided to the group and a PowerPoint (attached) on Freeport site requirements. My email was never answered. I looked through the Corona virus website and was unable to locate any information on efficacy of masks/distancing, risks and benefits of masks/distancing,  or alternative measures with risks and benefits. I also have not been able to locate the scientific evidence for medical necessity. I have submitted an urgent request to the contact email on the Corona virus site for this information.
BASF NA Coronavirus

**Legal Concerns/Questions:**

1. Per the FDA the mask is a medical device. Masks are only authorized under emergency use authorization (EUA). Per Title 21 US Code 360bbb-3 I shall be informed of the benefits and risks of the intervention, given alternatives with their benefits and risks, and have the option to refuse. Please cite the code that removes these rights.

    a. Note: At this point I have not been given informed consent. Informed consent must be given by someone who is qualified and insured for that purpose.

2. Since masks are not FDA approved for SARS COV-2 treatment and we are under EUA, then we are in a study. 21 CFR 50.20 states I cannot be a part of a research study without my consent. It further states I cannot be coerced into participating. Please cite the code that removes these rights.

3. What is BASFs duty of care for a pathogen that is known to everyone in the community? Please cite the specific code that requires BASF to act.
    a. Please cite the legal duty and authority under which BASF seeks to administer medical interventions upon myself.
    b. Please identify any insurable risk for which BASF is authorized and obligated to act.

4. I have not been given a medical exam to assess my ability to withstand impaired breathing or any other adverse health effects from the medical intervention. While I had an initial health screening at hiring, I am not aware of any medical assessment for medical interventions such as masks. Additionally, my medical history was not discussed with me regarding these interventions (to my recollection).

5. Employers are liable for countermeasures they mandate onto their employees. Does BASF have insurance to cover me (all personal, medical, and legal expenses) if I suffer an adverse health consequence as a result of following the mandated medical countermeasure?

6. If I follow BASF's mandatory medical interventions and catch SARS COV-2 anyway here at site, are you insured to cover all of my medical, personal, and legal expenses?

7. The CDC issues guidance/recommendations not law. Regardless, if BASF is going to issue policies that reflect CDC guidance then it is BASFs responsibility to ensure efficacy, legality, and necessity for any interventions. Has this been done?

8. Is BASF receiving any funds from government or private organizations, disaster relief funds, or the cares act funds which have requirements or suggestions for imposing medical interventions on BASF's employees?

9. If BASF has any duty of care then the simplest solution would seem to be to provide the authorized masks for those who wish to wear them, make remote working available as feasible, and reduce capacity of meeting places. This provides the protection for the workers OSHA wants and does not infringe on the rights of informed consent for medical countermeasures. Additionally, the requirement from 29 USC 654 should be satisfied. Why does BASF not follow this approach?

    a. BASF code of conduct says "We treat people with fairness, consideration and respect. Our aim is to ensure that each individual feels valued, and fully supported in achieving their personal best." Respecting employee rights is part of supporting and respecting people.

BASF policy cannot override existing law, and regardless of whether the laws are being properly enforced, BASF should strive to act ethically and lawfully. Please help to me to resolve my concerns with the BASF policies discussed above.

4

**Retaliation:**
I had a meeting with my supervisor Jason Metts and his supervisor Jay Garner on 8/12/2021 about the email I had sent to the Ammonia unit supervisor (see background above). I expressed my concerns, both legal and regarding informed consent with Jay. He dismissed my informed consent concern and claimed ignorance of the legal concerns. I also informed him I would be sending my questions urgently both through the Corona virus help email and through the legal compliance email. At the end of the meeting he informed me my building (which is outside of the plants) is also subject to masking mandates. I thanked him for telling me and I promptly left site after the meeting. Approximately three hours afterwards my supervisor, Jason Metts, informed me Jay wanted me onsite on Monday 8/16. Within 24 hours I was sent a written warning and a meeting was scheduled with HR for Monday 8/16.
As per the BASF compliance & ethics center website *"BASF strictly prohibits retaliation against any person who uses the Hotline in good faith."*. It is clear Jay is –

- Forcing me into a situation where my concerns have not had sufficient time to be resolved & I would be in violation of policy to be present, and
- issuing me a warning for an issue I just informed him I had problems with and was trying to resolve.

This is retaliation, bullying, and poor ethical behavior for a supervisor. Rather than letting me try to resolve the issues using the company supplied resources, force was the method chosen by this supervisor. Please advise Jay to cease and desist with this behavior immediately.
My plan is to support my plant remotely and, if needed onsite, look at issues outdoors only and away from others until these questions are resolved. This complies with the current policy at the plant. I plan to decline the meeting for Monday (unless WebEx), work remotely, and notify the persons in the meeting of the status of my inquiries and my plan to support the plant. I also plan to notify them that I cannot consent to the policy until I have been adequately informed.

Thanks,
**Brian Chancey**

Mobile: +1 979 2368645, Email: brian.chancey@basf.com
Postal Address: BASF Corporation, , 602 Copper Road, 77541 Freeport, USA



We create chemistry

BASF Corporation

## Brian Dale Chancey

| | |
|---|---|
| **From:** | Elizabeth A Rodriguez on behalf of BASFNAComplianceTeam |
| **Sent:** | Friday, September 3, 2021 1:33 PM |
| **To:** | Brian Dale Chancey |
| **Subject:** | RE: ADA complaint |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Dear Mr. Chancey:

Thank you for submitting your additional email to the BASF North America Compliance Team mailbox outlining your ADA complaint.  Responses to your concerns are outlined below.

Please be advised that BASF and my supervisors and other personnel employed by BASF have been making false business and employment records. Making a false record that I have a contagious disease and then discriminating against me based upon this disability. I am a qualified individual with a disability and my employer has been making a record of such disability, and I have and continue to invoke my rights under Title I of the Americans with Disabilities Act. BASF is discriminating against me based upon disability and continues to ignore the law and my rights.

To the extent you believe that anyone at BASF is making a false business or employment record that you have a contagious disease, these matters are currently being investigated by Steve Cafiero, Corporate EEO Manager. Please discuss these concerns with Mr. Cafiero.

To the extent you are claiming that you have a qualified disability or record of such disability under the Americans with Disabilities Act, please contact the BASF Leave Team to initiate the interactive accommodation process under the Americans with Disabilities Act.

As further outlined below, BASF denies that it is discriminating against you in any manner and denies that it is ignoring the law or your rights.

I am in receipt of the "Covid Update #62" from Cindy S. Suggs that was sent to me via email on July 30th 2021. This communication constitutes retaliation in violation of Title I of the Americans with Disabilities Act. See 42 U.S.C. §12203(b).

We have reviewed the July 30, 2021 "BASF Freeport Update #62: Cornoavirus 19" email that was sent from Cindy S. Suggs to all employees at the Freeport site.  In no way does this all-site communication constitute "Interference, Coercion, or Intimidation" under 42 USC §12203(b).  Furthermore, in no way does this all-site communication constitute "retaliation in violation of the Americans with Disabilities Act" which is covered by 42 USC §12203(a).

BASF and my supervisors have failed or refused to conduct any individualized assessment to determine whether or not I am a direct threat to anyone, yet regard me as having a disability or contagious disease without any evidence and in violation of Title I of the Americans with Disabilities Act (ADA). Under the supervision and responsibility of Jason Metts and Jay Garner, each of you along with other employees have been permitted to deliberately single me out and treat me differently than other employees for the purpose of retaliating against me for attempting to exercise my rights under the Americans with Disabilities Act. As a covered entity, you are required to aid and encourage me in the enjoyment and exercise of my rights under the ADA. Applying your policy equally to everyone, and then regarding me as having a disability, making a record of it, and then seeking to penalize me for exercising my rights to refuse your mitigation measures is the same discrimination as "separate but equal" from the sixties.

BASF is not required to conduct an individualized assessment to determine whether or not you are a direct threat under the ADA.  As outlined by the EEOC in its Pandemic Preparedness in the Workplace and the Americans with Disabilities

1

Act guidance, "the Covid-19 pandemic meets the direct threat standard." *See* "Pandemic Preparedness in the Workplace and the Americans with Disabilities Act, Section II (B)." BASF is not regarding you as having a disability or contagious disease in violation of the ADA. Instead, you are being asked to wear a cloth face covering or a disposable face mask while indoors consistent with the most current CDC guidelines. You are not being singled out or treated differently as the mask mandate applies to all employees. Please note that EEOC has specifically addressed mask wearing and has stated that "an employer may require employees to wear personal protective equipment during a pandemic." This includes "face masks, gloves, or gowns." *See* Pandemic Preparedness in the Workplace and the Americans with Disabilities Act, Section III(B), Question No. 12. Therefore, you do not have a right under the ADA to refuse to wear a mask in the workplace.

BASF claims that it has the duty to protect employees and invitees upon its premises from myself, yet has never identified its legal duty of care (a law) that created such obligation.

BASF has never claimed that is has a duty to protect employees and invitees upon our premises from you. Rather, BASF is required under the Occupational Health and Safety Act of 1970 to "furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or likely to cause death or serious physical harm to his employees." 29 USC §654(a)(1).

BASF claims that it has the duty to protect employees and invitees from myself yet has failed to identify any insurable risk, such as any certification from its insurance carrier that it has insurance to engage in such practices, or can accept financial responsibility for any adverse consequences of such practices.

As stated above, BASF has never claimed that is has a duty to protect employees and invitees from you. Rather, BASF is required under the Occupational Health and Safety Act of 1970 to "furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or likely to cause death or serious physical harm to his employees." 29 USC §654(a)(1). To the extent you are inquiring about BASF's various insurance coverages, this has no relevance to BASF's request that you wear a cloth face covering or a disposable face mask while indoors at the Freeport site.

Now, my supervisor and manager, Jason Metts and Jay Garner have created and continue to create false employment records for the purpose of wrongfully terminating my employment as one more act of retaliation against me in violation of Title I of the Americans with Disabilities Act.

It is now clear to me now that each of you are creating false personnel records for the purpose of attempting to justify the wrongful termination of my employment. It appears that this is the sole purpose of the scheduled August 16th meeting with HR.

Any concerns relating to your claims of retaliation are being handed by Steve Cafiero, Corporate EEO Manager.

The BASF policy (which is not written by BASF but by some third party) creates a disability for me or exacerbates my disability. I have been intimidated and coerced with the threat of the termination of my employment, segregation, isolation, incarceration, arrest, public humiliation and other acts of intimidation and coercion in violation of Title I of the ADA and its implementing regulation, 29 CFR §1630.12.

To the extent you are referring to the July 30, 2021 "BASF Freeport Update #62: Cornoavirus 19" email that was sent from Cindy S. Suggs to all employees at the Freeport site when you reference "The BASF policy", we have confirmed that this email was written by BASF and not "some third party." If you have evidence to prove otherwise, please provide it to us. In no way does this all-site communication constitute intimidation or coercion in violation of Americans with Disabilities Act. Instead, you are being asked to wear a cloth face covering or a disposable face mask while indoors consistent with the most current CDC guidelines. To the extent you are claiming that this email creates a disability for you or exacerbates your disability, please contact the BASF Leave Team to initiate the interactive accommodation process under the Americans with Disabilities Act. Finally, to the extent you have been "intimidated and coerced with the threat of the termination of my employment, segregation, isolation, incarceration, arrest, public humiliation and other acts of intimidation and coercion", please elaborate further.

Be further advised that Title I of the ADA prohibits employment discrimination on the basis of disability. Among other things, Title I prohibits employers from requiring medical examinations or making disability-related inquiries of employees unless such examination or inquiry is shown to be job-related and consistent with business necessity; see, 42 U.S.C. §12112(d)(4); 29 CFR

§1630.14(c).

While BASF does not disagree with your statements concerning medical examinations or disability-related inquiries of employees under the ADA, please be advised that the EEOC has specifically addressed screening questions and temperature checking during the Covid-19 pandemic as allowable activities under the ADA. *See* What You Should Know About Covid-19 and the ADA, the Rehabilitation Act, and Other EEO Laws, Technical Assistance Questions and Answers, Questions No. A.2, A.3 and G.1.

Regarding the mitigation measures including but not limited to mask-wearing, vaccines, social distancing, hand-washing and giving vital statistics (body temperature) or tissue samples (diagnostic testing), I am not required to access these or any mitigation measures under Title I of the ADA, 29 CFR Part 1630.9(d). If you have some legal authority that overrides this, please provide me with a legal citation.

BASF is not mandating that its employees receive the Covid-19 vaccine, nor is it requiring its employees to provide "tissue samples (diagnostic testing)." To the extent you have evidence which indicates something different, please provide this to us. To the extent you are objecting to mask wearing, social distancing, hand washing and giving vital statistics, all of these Covid-19 protocols are specifically allowed under the ADA. *See* What You Should Know About Covid-19 and the ADA, the Rehabilitation Act, and Other EEO Laws, Technical Assistance Questions and Answers, Questions No. A.2, A.3, G.1 and G.2 To the extent you refuse to follow the Covid-19 protocols that BASF has in place, the ADA allows BASF to bar you from the workplace and subject you to discipline. *See* What You Should Know About Covid-19 and the ADA, the Rehabilitation Act, and Other EEO Laws, Technical Assistance Questions and Answers, Question No. A.11.

Finally, the provision of the ADA that you cite above applies to accommodation requests for an individual with a disability. The Covid-19 protocols BASF is asking you to follow do not constitute an accommodation under the ADA, thereby making 29 CFR 1630.9(d) inapplicable to this situation. However, and as outlined above, if you believe that you are disabled under the ADA and in need of an accommodation, please contact the BASF Leave Team to initiate the interactive accommodation process.

Regarding each intervention or mitigation measure, a) why does your communication fail to include notice that this is under an emergency use authorization, and disclose the risks and benefits of the product, and also advise me of my right to either accept or refuse the product, and b) which product has the proven efficacy to prevent transmission or infection of the contagious disease for which you regard me as having? You are required by law, specifically 21 U.S.C. §360bbb-3 of the Food, Drug and Cosmetic Act, to provide me with these disclosures.

BASF is not regarding you as having a contagious disease. Instead, BASF is asking you to wear a cloth face covering or a disposable face mask while indoors consistent with the most current CDC guidelines and is asking you to adhere to other legally allowable Covid-19 protocols such as social distancing, hand washing and temperature checking. The FDA regulation that you are referring to addresses the manufacture and sale of medical products and does not apply to BASF. BASF is not manufacturing or selling a medical product, and the cloth face covering or disposable face mask BASF is asking you to wear is not a medical device or a medical product covered by the FDA.

Keeping our workplace safe is of primary concern to BASF. Our practices throughout the Covid-19 pandemic have been guided by recommendations and requirements from federal, state and local governments and agencies. We trust that the above is responsive to your concerns.

Thanks,

**LYNETTE PAPUSHAK**
Assistant General Counsel, Compliance & Employment

Mobile: (216) 469-0332, Email: lynette.papushak@basf.com
Postal Address: BASF Corporation, A-0156, 2 TW Alexander Drive,  Research Triangle Park NC 27709, USA



We create chemistry

---

**From:** Brian Dale Chancey <brian.chancey@basf.com>
**Sent:** Monday, August 16, 2021 11:20 AM
**To:** BASFNAComplianceTeam <BASFNAComplianceTeam@basf.com>
**Cc:** Brian Dale Chancey <brian.chancey@basf.com>
**Subject:** ADA complaint

Legal:

Greetings,

Please be advised that BASF and my supervisors and other personnel employed by BASF have been making false business and employment records. Making a false record that I have a contagious disease and then discriminating against me based upon this disability. I am a qualified individual with a disability and my employer has been making a record of such disability, and I have and continue to invoke my rights under Title I of the Americans with Disabilities Act. BASF is discriminating against me based upon disability and continues to ignore the law and my rights.

I am in receipt of the "Covid Update #62" from Cindy S. Suggs that was sent to me via email on July 30th 2021. This communication constitutes retaliation in violation of Title I of the Americans with Disabilities Act. See 42 U.S.C. §12203(b).

BASF and my supervisors have failed or refused to conduct any individualized assessment to determine whether or not I am a direct threat to anyone, yet regard me as having a disability or contagious disease without any evidence and in violation of Title I of the Americans with Disabilities Act (ADA). Under the supervision and responsibility of Jason Metts and Jay Garner, each of you along with other employees have been permitted to deliberately single me out and treat me differently than other employees for the purpose of retaliating against me for attempting to exercise my rights under the Americans with Disabilities Act. As a covered entity, you are required to aid and encourage me in the enjoyment and exercise of my rights under the ADA. Applying your policy equally to everyone, and then regarding me as having a disability, making a record of it, and then seeking to penalize me for exercising my rights to refuse your mitigation measures is the same discrimination as "separate but equal" from the sixties.

BASF claims that it has the duty to protect employees and invitees upon its premises from myself, yet has never identified its legal duty of care (a law) that created such obligation.

BASF claims that it has the duty to protect employees and invitees from myself yet has failed to identify any insurable risk, such as any certification from its insurance carrier that it has insurance to engage in such practices, or can accept financial responsibility for any adverse consequences of such practices.

Now, my supervisor and manager, Jason Metts and Jay Garner have created and continue to create false employment records for the purpose of wrongfully terminating my employment as one more act of retaliation against me in violation of Title I of the Americans with Disabilities Act.

It is now clear to me now that each of you are creating false personnel records for the purpose of attempting to justify the wrongful termination of my employment. It appears that this is the sole purpose of the scheduled August 16th meeting with HR.

The BASF policy (which is not written by BASF but by some third party) creates a disability for me or exacerbates my disability. I have been intimidated and coerced with the threat of the termination of my employment, segregation, isolation, incarceration, arrest, public humiliation and other acts of intimidation and coercion in violation of Title I of the ADA and its implementing regulation, 29 CFR §1630.12.

Be further advised that Title I of the ADA prohibits employment discrimination on the basis of disability. Among other things, Title I prohibits employers from requiring medical examinations or making disability-related inquiries of employees unless such examination or inquiry is shown to be

4

*job-related and consistent with business necessity; see,* 42 U.S.C. §12112(d)(4); 29 CFR §1630.14(c).

      Regarding the mitigation measures including but not limited to mask-wearing, vaccines, social distancing, hand-washing and giving vital statistics (body temperature) or tissue samples (diagnostic testing), I am not required to access these or any mitigation measures under Title I of the ADA, 29 CFR Part 1630.9(d). If you have some legal authority that overrides this, please provide me with a legal citation.

      Regarding each intervention or mitigation measure, a) why does your communication fail to include notice that this is under an emergency use authorization, and disclose the risks and benefits of the product, and also advise me of my right to either accept or refuse the product, and b) which product has the proven efficacy to prevent transmission or infection of the contagious disease for which you regard me as having? You are required by law, specifically 21 U.S.C. §360bbb-3 of the Food, Drug and Cosmetic Act, to provide me with these disclosures.

Thanks,
**Brian Chancey**

Mobile: +1 979 2368645, Email: brian.chancey@basf.com
Postal Address: BASF Corporation, , 602 Copper Road, 77541 Freeport, USA


We create chemistry

BASF Corporation

A-14

## Brian Dale Chancey

| | |
|---|---|
| **From:** | Brian Dale Chancey |
| **Sent:** | Tuesday, September 7, 2021 6:16 AM |
| **To:** | Stephen Cafiero |
| **Cc:** | Brian Dale Chancey |
| **Subject:** | **Confidential** My response to emails received as of 9/3/2021 |
| **Signed By:** | brian.chancey@basf.com |

Stephen:

This communication is confidential. I have read through the medical and legal responses sent to me last week. My comments are:

You are regarding me as having a disability (contagious disease). You have also made a record of such disability by mis-classifying me as having, a mental or physical impairment that substantially limits one or more major life activities (disability). I am not required to accept your accommodations, including but not limited to mask-wearing, social distancing, vaccinations or participating in any clinical trials or epidemiological experiments.

Your legal conclusion about wearing a mask is erroneous. A mask is a medical intervention as defined by the FDA Section 201(H) of the Food, Drug & Cosmetic Act, but it is also an accommodation and cannot be imposed upon any employee, 29 CFR 1630.9(d). This section applies to the use of a mask when it concerns one's health, please also see "Final Guidance", Classification of Products as Drugs and Devices & Additional Product Classification Issues: Guidance for Industry and FDA Staff. This product is subject to your legal duty to disclose the risks and benefits of using such a product, and also you are required by law to advise me that the use such a product may be refused or accepted. Please be advised of the law, 21 USC §360bbb-3 et seq. Additionally, this product along with your other accommodations are still under the "emergency use authorization" period and I am not required to participate because these constitute clinical studies.

You are required to know and comply with the law. Furthermore, you have failed to cite any legal duty or authority for imposing these accommodations upon me and you have failed to cite any legal authority for having any insurable risk or duty of care. There is no law imposing these measures and a "guideline" or "executive order" or "opinon" does not create any legal duty or authority or insurable risk or duty of care. BASF's company policy includes zero tolerance for discrimination and harassment. You are violating BASF's company policy by discriminating, harassing and retaliating against me for exercising and enjoying my rights under the Americans with Disabilities Act (ADA).

I have requested you to intervene and prevent continued harassment and discrimination based upon disability and retaliation. I have not requested any reasonable modifications. I only ask that you comply with the law, either prove that I am a direct threat to others, or stop harassing me about your accommodations.
Please be advised that I have filed a complaint against BASF with the state and federal Equal Opportunity Employment Commission and I am also writing a federal complaint for violations of Title I of the Americans with Disabilities Act. You will either comply with the law or I will have the United States District Court compel you to comply with an injunction.

Referring me to the CDC website, or denying my claim of discrimination based upon disability and denying or ignoring my complaint for on the job harassment is your refusal to comply with the law. I'm asking you once again, when has BASF diagnosed me with having a contagious disease? Who made the diagnosis? What

1

records were relied upon to make such diagnosis?  Why was I not informed that such medical diagnosis was being made about me?

Your citation of 29 USC §654 is not pertinent, not a legal defense and not a legal argument in support of your discriminatory policies.  I am a qualified individual with a disability that substantially limits my ability to engage in one or more major life activities and that does not impair my ability to perform my employment duties.  You have failed to provide evidence of any direct threat and you are prohibited by federal and state law from imposing any accommodations upon me. BASF is violating its own anti-discrimination policies, the law and my rights.

Sincerely,

**Brian Chancey**

Mobile: +1 979 2368645, Email: brian.chancey@basf.com
Postal Address: BASF Corporation, , 602 Copper Road, 77541 Freeport, USA



We create chemistry

BASF Corporation

**Brian Dale Chancey**

| | |
|---|---|
| **From:** | Stephen Cafiero |
| **Sent:** | Wednesday, September 8, 2021 12:49 PM |
| **To:** | Brian Dale Chancey |
| **Subject:** | Strictly Confidential |

Dear Brian:

This email serves as a formal response to your August 23, 2021 letter to me. I've included relevant excerpts from your letter (in blue) to ensure that all of your concerns are addressed.

This is a confidential communication that I am requesting be included into my personnel file and I want this and subsequent communications to be kept confidential within human resources. I am documenting acts of retaliation and harassment of which I have been subjected to on the job. I also want to speak confidentially to the BASF Corporation (BASF) designated employee or representative for matters involving Title I of the Americans with Disabilities Act (ADA) and grievances.

Your letter preceded our Tuesday, August 24, 2021 call where we discussed at length your various concerns. As I explained to you during our call, I serve as the Company's Corporate EEO Manager, and I am the company representative designated to discuss your concerns for matters involving the Americans with Disabilities Act (ADA) and any perceived acts of retaliation or harassment which you believe you have been subjected to at BASF. As I also explained to you during our call, your August 23, 2021 letter will not be included in your personnel file but will instead be maintained in a separate investigative file by Corporate EEO.

I am in receipt of the "Covid Update #62" from Cindy S. Suggs that was sent to me via email on July 30th 2021 as well as the notice on OneNote for the ammonia unit from August 10th 2021, and the PowOnerPoint sent on the "Freeport Pandemic Requirements". This communication constitutes harassment in violation of Title I of the Americans with Disabilities Act. See 42 U.S.C. §12203(b).

I have reviewed the documents, and none of them constitute harassment in violation of the ADA. Instead, these documents are site-wide communications reminding all employees of existing Covid-19 protocols and notifying all employees of the change in site protocol with respect to mask wearing. Additionally, I consulted with my BASF Legal counterparts and they too concur the communications do not rise to the level of harassment in violation of the Americans With Disabilities Act.

Please explain why BASF and its employees are discriminating against me based upon a disability you are regarding me as having? I am invoking my rights under the Americans with Disabilities Act as a qualified individual with a disability.

As I explained to you during our call and reiterate here, BASF is not regarding you as disabled under the ADA. To the extent you wish to invoke your rights under the ADA as an alleged qualified individual with a disability, please contact the BASF Leave Team to initiate the interactive accommodation process under the ADA. It is my understanding during our call that you do not wish to request an accommodation under the ADA. If my understanding is not correct, please let me know.

I am being regarded as having a contagious disease by my supervisor Jason Metts, manager Jay Garner, and the Ammonia unit management without any individualized assessment. They have **created and continue to create false employment records for the purpose of wrongfully terminating my employment** as one more act of retaliation against him in violation of Title I of the Americans with Disabilities Act. These individuals are continually harassing me for my medical records and to submit to medical examinations and interventions (mitigation measures) without any informed consent. It has been extremely difficult to perform my employment duties because of these interruptions and harassment.

1

BASF is not regarding you as having a contagious disease. To the extent that you believe an individualized assessment must be performed under the ADA, BASF is not required to conduct an individualized assessment to determine whether or not you are a direct threat under the ADA. As outlined by the EEOC in its Pandemic Preparedness in the Workplace and the Americans with Disabilities Act guidance, "the Covid-19 pandemic meets the direct threat standard." *See* "Pandemic Preparedness in the Workplace and the Americans with Disabilities Act, Section II (B).

Per our conversation on Friday August 27th, I instructed the business to remove the previously issued written warning to which they agreed. That document is no longer a part of your personnel file.

To the extent that anyone at the Freeport site is creating and continuing to create false employment records concerning you, please share such records with me. Furthermore, you did not raise or discuss with me your concern that managers at the Freeport site are harassing you for your medical records and/or asking you to submit to medical examinations or interventions. I ask you to elaborate further and provide proof of these requests to me.

Finally, to the extent you are claiming that your informed consent is needed in order for BASF to institute its Covid-19 protocols in the workplace, none of the measures that BASF is asking you to follow meet the definition of a medical procedure that would require informed consent in order to implement.

Regarding the mitigation measures including but not limited to mask-wearing, vaccines, social distancing, hand-washing and submitting to medical examinations such as the collection of vital statistics (body temperature) or tissue samples (diagnostic testing), I am not required to accept these or any mitigation measures under Title I of the ADA, 29 CFR Part 1630.9(d). If you have some legal authority that overrides this, please provide me with a legal citation.

BASF is not requiring you to get the Covid-19 vaccine as a mitigation measure, nor is it requiring you provide "tissue samples (diagnostic testing)" as a mitigation measure. If you have evidence to the contrary, please let me know.

The remaining mitigation measures (mask wearing, social distancing, hand washing and giving vital statistics) are all specifically authorized under the ADA. *See* What You Should Know About Covid-19 and the ADA, the Rehabilitation Act, and Other EEO Laws, Technical Assistance Questions and Answers, Questions No. A.2, A.3, G.1 and G.2. You are required to adhere to these mitigating measures, and your refusal to do so will subject you discipline. *See* What You Should Know About Covid-19 and the ADA, the Rehabilitation Act, and Other EEO Laws, Technical Assistance Questions and Answers, Question No. A.11.

Finally, please note that the ADA provision you are citing to justify your refusal to accept BASF's Covid-19 mitigation measures in the workplace addresses accommodation requests for an individual with a disability. The Covid-19 mitigation measures that BASF is asking you to follow do not constitute an accommodation under the ADA, thereby making 29 CFR 1630.9(d) inapplicable to this situation.

However, and as outlined above, if you still believe that you are disabled under the ADA and in need of an accommodation, please contact the BASF Leave Team to initiate the interactive accommodation process.

Title I of the ADA prohibits employers from requiring medical examinations or making disability-related inquiries of employees unless such examination or inquiry is shown to be job-related and consistent with business necessity; see, 42 U.S.C. §12112(d)(4); 29 CFR §1630.14(c)

BASF does not disagree with your statements concerning medical examinations or disability-related inquiries of employees under the ADA.

**My questions are:**

1. Why do you regard me as having a disability and what records have you made of this?

As I explained to you during our call and reiterate here in this written response, BASF is not regarding you as having a disability and has made no records regarding same.

2. What physician, what medical records, and what complaint made by a physician to a health officer, and

2

"orders of isolation and quarantine" do you rely upon for diagnosing me as having a contagious disease? Please include all, evidence, court records and records from the individualized assessment used in making this determination or diagnosis as required under the Texas public health policy₁ and Title I of the Americans with Disabilities Act. ₂

As I explained to you during our call, BASF has never diagnosed you as having a contagious disease.

Please note that 29 CFR 1630.2 et.seq. is the Definitions section of the ADA and provides no legal authority to support the claim that you are making in this paragraph.  Likewise, the publication "Control Measures and Public Health Emergencies, A Texas Bench Book" is a guide used by Texas judges to evaluate public health control measures and public health authorities during a public health emergency and provides no legal authority to support the claim you are making in this paragraph.

3. Please identify the statute and regulation imposing your legal duty of care to protect me and others from any contagious disease and the commissioner's pertinent "hazard assessments".

BASF is required under the Occupational Health and Safety Act of 1970 to "furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or likely to cause death or serious physical harm to his employees." 29 USC §654(a)(1).

4. Please provide a copy of documentary evidence from the departments of health or labor establishing the existence of a disease that has been isolated by modern scientific standards and documentary evidence proving that such disease is airborne and contagious.

This is an extremely vague question.  To what disease are you referring?

5. Please identify your insurable risk with a copy of your insurance binder showing that you are insured for protecting employees from a contagious disease, and any adverse health consequences they may suffer as a result of your mitigation measures.

BASF's various insurance coverages have no relevance to BASF's request that you follow the Covid-19 protocols in place at the Freeport site.

6. Regarding the mitigation measures, a) why have you refused to include notice that this is under an emergency use authorization, and disclose the risks and benefits of the product, and also advise me of my right to either accept or refuse the product,₃ and b) which of these mitigation measures has the proven efficacy to prevent transmission or infection of the contagious disease for which you regard me as having?

BASF is not regarding you as having a contagious disease.  Instead, BASF is asking you to wear a cloth face covering or a disposable face mask while indoors consistent with the most current CDC guidelines and is asking you to adhere to other legally allowable Covid-19 protocols such as social distancing, hand washing and temperature checking.  BASF is not manufacturing or selling a medical product, and the cloth face covering or disposable face mask BASF is asking you to wear is not a medical device or a medical product.  The FDA regulation that you site is not applicable to BASF.

With respect to efficacy information concerning BASF's Covid-19 protocols, please see the FAQ section of BASF's US Coronavirus website for studies relating to the success of masks preventing the transmission of Covid-19.  For efficacy information with respect to physical distancing preventing the transmission of Covid-19, please see the attached article from the CDC's Emerging Infectious Diseases Journal:  Evaluating the Effectiveness of Social Distancing Interventions to Delay or Flatten the Epidemic Curve of Coronavirus Disease - Volume 26, Number 8—August 2020 - Emerging Infectious Diseases Journal - CDC.

7. How are your requests for my medical information and submitting to medical examinations and interventions necessary for the performance of my employment duties?

BASF is not requesting any of your medical information or asking you to submit to a medical examination or any type of medical intervention with respect to its Covid-19 protocols. With respect to the necessity of BASF's Covid-19 protocols, BASF is required by the Occupational Health and Safety Act of 1970 to "furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or likely to cause death or serious physical harm to his employees." 29 USC §654(a)(1). To satisfy this obligation, OSHA has stated that employers should institute measures to prevent the transmission of Covid-19 in the workplace consistent with the CDC's guidelines.

8. Why are you able to diagnose me with a deadly disease and impose restrictions and medical interventions without my informed consent, without any physician's oversight or judicial approval, yet I am required to obtain written permission from my physician to exercise my rights to informed consent and medical privacy? We can stipulate that I have never waived any of my rights to medical privacy which includes the right of informed consent as a condition for employment.

BASF has not diagnosed you with a deadly disease. Please note that the Covid-19 mitigation measures instituted by BASF are not medical interventions which would require a physician's oversight, judicial approval or an employee's informed consent in order to institute.

If you refuse to answer these questions, I will consider the matter closed and we can set it aside and continue with our business without further interruption.

BASF has not refused to answer your questions, and I have separately confirmed that you have received responses to your 8/10/21 email to Skye Picchiottino; your 8/13/21 email to the US Coronavirus Info website; and your 8/15/21 and 8/16/21 emails to the BASF North America Compliance Team. I have also provided answers to all of the questions outlined in your letter to me.

Be advised that if my employment is conditioned upon submitting to your mitigation measures, this constitutes discrimination based upon disability, a violation of state and federal law, and retaliation under the ADA, for which I would have a claim for employment discrimination based upon disability.

The health and wellbeing of every BASF employee is of paramount importance. Therefore, your employment is conditioned upon your submitting to the Covid-19 mitigation measures instituted by BASF and the Freeport Site. This includes the wearing of a cloth face covering or a disposable face mask while indoors consistent with the most current CDC guidelines. These measures do not constitute disability discrimination; they do not violate state or federal law; nor do they constitute retaliation under the ADA.

**Stephen Cafiero**
Manager, Corporate EEO

Phone: +1 973 245-6270, Mobile: +1 973 862-0437, Email: stephen.cafiero@basf.com
Postal Address: BASF Corporation, , 100 Park Avenue, 07932 Florham Park, USA



BASF Corporation



**Brian Dale Chancey**

| | |
|---|---|
| **From:** | Nancy Grancell |
| **Sent:** | Friday, September 24, 2021 1:55 PM |
| **To:** | Brian Dale Chancey |
| **Subject:** | RE: Summary of you call on 9/23/2021 |
| **Signed By:** | nancy.grancell@basf.com |

Brian,

Your understanding is correct.

Thanks,
Nancy

Best Regards,
**Nancy Grancell**
Strategic Human Resources Business/Manufacturing Advisor CMN

Phone: Mobile: +1-248-979-7436 E-Mail: nancy.grancell@basf.com
Postal Address: BASF Corporation, 602 Copper Rd. Freeport, TX, 77541, USA

Create Chemistry with Us! Check Out Careers at: http://jobs.basf.us/

**From:** Brian Dale Chancey <brian.chancey@basf.com>
**Sent:** Friday, September 24, 2021 2:02 PM
**To:** Nancy Grancell <nancy.grancell@basf.com>
**Cc:** Brian Dale Chancey <brian.chancey@basf.com>
**Subject:** Summary of you call on 9/23/2021

Nancy:

As per our conversation on 9/23/2021 you communicated to me that I need to return to work on Monday 9/27/2021 on my normal work schedule. Additionally, you communicated that I would be disciplined with job abandonment if I did not show up. You also communicated that I would be required to follow the BASF COVID mitigation measures when onsite or I would be disciplined for safety violations. Is my understanding of our conversation correct?

Thanks,

Brian Chancey

**Brian Chancey**

Mobile: +1 979 2368645, Email: brian.chancey@basf.com
Postal Address: BASF Corporation, , 602 Copper Road, 77541 Freeport, USA

1

**Brian Dale Chancey**

| | |
|---|---|
| **From:** | Brian Dale Chancey |
| **Sent:** | Monday, September 27, 2021 6:04 AM |
| **To:** | Nancy Grancell |
| **Cc:** | Brian Dale Chancey |
| **Subject:** | **Confidential** RE: Summary of you call on 9/23/2021 |
| **Signed By:** | brian.chancey@basf.com |


Nancy:

This email is confidential.

Human Resources has received a bona fide complaint (from me) for on the job discrimination based upon disability, harassment and retaliation and your response is to do nothing. You (HR) told me to stay at home thereby isolating me while you chose to ignore the work schedule policy. You are now threatening me with the same work schedule policy using it as retaliation and coercion. Additionally, after previously receiving a disciplinary warning for not following unlawful mitigation measures (that was later withdrawn), you are now threatening me with the same mitigation measure policy. Further, you refused to send me written communication when I asked for your position to be put in writing citing "it is not policy". It is clear to me that you interpret policy to suit your needs and use it to segregate, coerce, harass, retaliate, and discriminate against those who speak out against discrimination based upon disability. I have requested to see the documentation which proves I am a direct threat to anyone and none has been provided yet, you continue to regard me as having an infectious disease. I am a qualified individual with a disability under the ADA and it is your duty as HR to stop the harassment and discrimination based on disability. Further, under the law I have no obligation to accept your countermeasures. As I have already stated I seek no accommodations, just leave me alone to perform my job duties. Cease and desist with the threats of disciplinary action immediately and address your policy issues. As I have already stated I have filed a complaint with the EEOC on this matter.

I am working on the safety systems checks for the Ammonia plant at this time. Please send all future communications via email as I am very busy with the upcoming testing.

Sincerely,

Brian Chancey


---

**From:** Nancy Grancell <nancy.grancell@basf.com>
**Sent:** Friday, September 24, 2021 1:55 PM
**To:** Brian Dale Chancey <brian.chancey@basf.com>
**Subject:** RE: Summary of you call on 9/23/2021

Brian,

Your understanding is correct.

Thanks,
Nancy

Best Regards,
**Nancy Grancell**
Strategic Human Resources Business/Manufacturing Advisor CMN

Phone: Mobile: +1-248-979-7436 E-Mail: nancy.grancell@basf.com
Postal Address: BASF Corporation, 602 Copper Rd. Freeport, TX, 77541, USA

Create Chemistry with Us! Check Out Careers at: http://jobs.basf.us/

---

**From:** Brian Dale Chancey <brian.chancey@basf.com>
**Sent:** Friday, September 24, 2021 2:02 PM
**To:** Nancy Grancell <nancy.grancell@basf.com>
**Cc:** Brian Dale Chancey <brian.chancey@basf.com>
**Subject:** Summary of you call on 9/23/2021

Nancy:

As per our conversation on 9/23/2021 you communicated to me that I need to return to work on Monday 9/27/2021 on my normal work schedule. Additionally, you communicated that I would be disciplined with job abandonment if I did not show up. You also communicated that I would be required to follow the BASF COVID mitigation measures when onsite or I would be disciplined for safety violations. Is my understanding of our conversation correct?


Thanks,

Brian Chancey


**Brian Chancey**


Mobile: +1 979 2368645, Email: brian.chancey@basf.com
Postal Address: BASF Corporation, , 602 Copper Road, 77541 Freeport, USA



We create chemistry

BASF Corporation

**Brian Dale Chancey**

| | |
|---|---|
| **From:** | Stephen Cafiero |
| **Sent:** | Tuesday, October 5, 2021 9:48 AM |
| **To:** | Brian Dale Chancey |
| **Subject:** | Strictly Confidential - Workplace Issue |

Brian,

BASF has implemented a policy that requires all employees wear cloth face covering or disposable facemask while indoors. Over the last several weeks, BASF has engaged in a good faith dialogue with you in an attempt to address your concerns about this policy. Unfortunately, based on your latest correspondence, it appears that you are persisting in your refusal to follow the policy, which uniformly applies to all BASF employees. We have asked on previous occasions whether you are seeking an accommodation related to this policy due to a disability. In response, you have said no and have denied having a disability that interferes with your ability to perform your essential job functions. I will again address your various claims and assertions below:

1.      You have claimed that BASF is retaliating against you for questioning whether its policies comply with the Americans with Disabilities Act or other federal laws. This is false. BASF has been more than willing to provide you an explanation for its policies as well as legal authority to support the policies. However, you continue to refuse to follow BASF's lawful policies. Any adverse consequences you have or will experience are solely the result of your continued refusal to comply with BASF's lawful policies.

2.      You have claimed that BASF is discriminating against you because of a perceived disability. This is false. BASF does not perceive or regard you as having a disability. Based on the information that you have provided, you have denied that you have a disability and do not appear to have a physical or mental impairment that substantially limits one or more major life activity. Therefore, there is no reason to believe that you cannot comply with policies that apply to all BASF employees.

3.      Alternatively, you have claimed that BASF is discriminating against you because you have a disability. This is false. Based on the information that you have provided, you do not appear to have a physical or mental impairment that substantially limits one or more major life activity. Therefore, there is no reason to believe that you cannot comply with policies that apply to all BASF employees.

4.      You have claimed that BASF has failed to demonstrate that you are a "direct threat." In certain circumstances, the "direct threat" doctrine protects an employer's decisions relating to a disabled employee. In your case, you have repeatedly informed BASF that you are not disabled. Moreover, the "direct threat" doctrine applies only in circumstances where an employer makes a decision because of an employee's disability. In your case, BASF's decisions related to your employment are the result of your repeated refusal to follow BASF's policies not because you are disabled.

5.      You have claimed that BASF is attempting to force you to accept accommodations. This is false. BASF is simply asking that you comply with lawful policies that apply to all BASF employees.

The Occupational Health and Safety Act of 1970 requires BASF to provide all of its employees a place of employment which is free from recognized hazards that are likely to cause death or serious physical harm to employees. Keeping our workplace safe is of primary concern to BASF. To that end, BASF's policies have been guided by the recommendations and requirements of federal, state, and local

governments and agencies. Consistent with these recommendations and requirements, BASF has implemented a policy that requires all employees wear cloth face covering or disposable facemask while indoors.

BASF understands that you disagree with some of its policies. The BASF North America Compliance Team thanks you for bringing your concerns to its attention. As we have done with you, the BASF North America Compliance Team is happy to evaluate and discuss any policy that any employee perceives as discriminatory or unfair. As we have explained here and in prior communication, BASF's policies are not discriminatory and are drafted to comply with all applicable federal, state and local laws. Therefore, BASF expects that you will follow its lawful polices.

**Stephen Cafiero**
Manager, Corporate EEO

Phone: +1 973 245-6270, Mobile: +1 973 862-0437, Email: stephen.cafiero@basf.com
Postal Address: BASF Corporation, , 100 Park Avenue, 07932 Florham Park, USA



We create chemistry

BASF Corporation

**Brian Dale Chancey**

| | |
|---|---|
| From: | Brian Dale Chancey |
| Sent: | Tuesday, October 12, 2021 6:21 AM |
| To: | Stephen Cafiero |
| Cc: | Brian Dale Chancey |
| Subject: | RE: Strictly Confidential - Workplace Issue |
| Attachments: | Email from Nancy 9-24-2021.pdf |

## CONFIDENTIAL COMMUNICATION
29 CFR §1630.14(c)(1)

October 12, 2021

Hello Stephen,

I am responding to your October 5, 2021 email in which you made several claims which inaccurately express my position confuse the issues.

You claimed that BASF is following lawful policies and only cited OSHA 1970 guidelines.  Your citation of the OSHA 1970 safety guidelines in relation to demanding that I wear a mask is the affirming action that BASF is operating under a false presumption and regarding me as disabled.  The underlying premise that BASF is making—without any individualized assessment--- is that I am a walking biohazard and am a potential or actual source of COVID-19 and therefore require mitigation measures ('accommodations') in the form of wearing a mask in order to make the workplace safe.

I am challenging the underlying premise that BASF is basing it's discriminatory policy on which is that BASF\is regarding me as 'disabled' with a potential or actual contagious disease.  BASF is also making a 'record' of this 'disability' by classifying me as un-masked and therefore a 'direct threat'.  BASF is also 'coercing and harassing' me to use its accommodation of wearing a mask or it will 'retaliate' against me by firing me.

I do not require this 'accommodation' because I am not disabled with a potential or actual contagious disease.  I have asked BASF to provide the records upon which it is relying to regard me as 'disabled' with a potential or actual contagious disease and it has never produced any record and it must therefore be stipulated at this point that there is no record ('individualized assessment') that BASF is relying upon.  If there is no evidence then the only conclusion that can be drawn is that BASF is discriminating against me for reasons of prejudice and false conclusions.

As for your statements of acting in good faith: I have stated in our interview on 8/25/2021 some of the effects on my life activities both personal and at work which you are now misrepresenting and dismissing. You have chosen to enforce policies when it is to your advantage, and have used those policies to segregate, harass, and threaten me. You have chosen to deny enforcing any medical countermeasures then turn around and attempt to force me to waive my rights to informed consent, and the ADA. You have cited "guidelines" as justifications for your actions while not following the actual laws. You have chosen to blame me for anything that happens while you refuse to address the discrimination you are inflicting upon me. Your actions are clearly not in good faith.

I have made every effort to respond to BASF's requests and also to Notice the company that I am not waiving my rights under the ADA. I am fit for work, ready for work and am not declining work. I have been responsive to every request.

I was sent the email below and the attached notice which states that BASF refuses to stop this discriminatory policy and previous Notices reveal that BASF threatens to retaliate against me and fire me for the disability of being *unmasked and therefore a direct threat* and because it regards me as disabled as a potential or actual source of COVID-19 without any individualized assessment.

1. BASF regards me as disabled by classifying me as a *potential or actual source* of COVID-19. Their affirming action of regarding me as a potential or actual source is that I have been given the coercive, threatening, and intimidating choice to wear a mask or be terminated.

2. BASF regards me as disabled through its classification of me as *un-masked and therefore a direct threat,* and the affirming action of regarding me as "un-masked" is the write-up I received on 8/12/21 and the threat of write-up I received on 9/24/21 on the basis of being un-masked. BASF can label this however it wishes to attempt to avoid this truth, but the classification of my health status as "un-masked" is the reason I will be fired. BASF has used policies and procedures that are intimidating, threatening, coercive, and that interfere with ADA rights, and this is prohibited under the ADA.

I am also sending this supplemental documentation to the EEO to add to my Charge of Discrimination.

Sincerely,

Brian Chancey

---

**From:** Stephen Cafiero <stephen.cafiero@basf.com>
**Sent:** Tuesday, October 5, 2021 9:48 AM
**To:** Brian Dale Chancey <brian.chancey@basf.com>
**Subject:** Strictly Confidential - Workplace Issue

Brian,

BASF has implemented a policy that requires all employees wear cloth face covering or disposable facemask while indoors. Over the last several weeks, BASF has engaged in a good faith dialogue with you in an attempt to address your concerns about this policy. Unfortunately, based on your latest correspondence, it appears that you are persisting in your refusal to follow the policy, which uniformly applies to all BASF employees. We have asked on previous occasions whether you are seeking an accommodation related to this policy due to a disability. In response, you have said no and have denied having a disability that interferes with your ability to perform your essential job functions. I will again address your various claims and assertions below:

1.      You have claimed that BASF is retaliating against you for questioning whether its policies comply with the Americans with Disabilities Act or other federal laws. This is false. BASF has been

2

more than willing to provide you an explanation for its policies as well as legal authority to support the policies. However, you continue to refuse to follow BASF's lawful policies. Any adverse consequences you have or will experience are solely the result of your continued refusal to comply with BASF's lawful policies.

2.      You have claimed that BASF is discriminating against you because of a perceived disability. This is false. BASF does not perceive or regard you as having a disability. Based on the information that you have provided, you have denied that you have a disability and do not appear to have a physical or mental impairment that substantially limits one or more major life activity. Therefore, there is no reason to believe that you cannot comply with policies that apply to all BASF employees.

3.      Alternatively, you have claimed that BASF is discriminating against you because you have a disability. This is false. Based on the information that you have provided, you do not appear to have a physical or mental impairment that substantially limits one or more major life activity. Therefore, there is no reason to believe that you cannot comply with policies that apply to all BASF employees.

4.      You have claimed that BASF has failed to demonstrate that you are a "direct threat." In certain circumstances, the "direct threat" doctrine protects an employer's decisions relating to a disabled employee. In your case, you have repeatedly informed BASF that you are not disabled. Moreover, the "direct threat" doctrine applies only in circumstances where an employer makes a decision because of an employee's disability. In your case, BASF's decisions related to your employment are the result of your repeated refusal to follow BASF's policies not because you are disabled.

5.      You have claimed that BASF is attempting to force you to accept accommodations. This is false. BASF is simply asking that you comply with lawful policies that apply to all BASF employees.

The Occupational Health and Safety Act of 1970 requires BASF to provide all of its employees a place of employment which is free from recognized hazards that are likely to cause death or serious physical harm to employees. Keeping our workplace safe is of primary concern to BASF. To that end, BASF's policies have been guided by the recommendations and requirements of federal, state, and local governments and agencies. Consistent with these recommendations and requirements, BASF has implemented a policy that requires all employees wear cloth face covering or disposable facemask while indoors.

BASF understands that you disagree with some of its policies. The BASF North America Compliance Team thanks you for bringing your concerns to its attention. As we have done with you, the BASF North America Compliance Team is happy to evaluate and discuss any policy that any employee perceives as discriminatory or unfair. As we have explained here and in prior communication, BASF's policies are not discriminatory and are drafted to comply with all applicable federal, state and local laws. Therefore, BASF expects that you will follow its lawful polices.

**Stephen Cafiero**
Manager, Corporate EEO

Phone: +1 973 245-6270, Mobile: +1 973 862-0437, Email: stephen.cafiero@basf.com
Postal Address: BASF Corporation, , 100 Park Avenue, 07932 Florham Park, USA

**Brian Dale Chancey**

| | |
|---|---|
| **From:** | Brian Dale Chancey |
| **Sent:** | Tuesday, October 12, 2021 6:21 AM |
| **To:** | Stephen Cafiero |
| **Cc:** | Brian Dale Chancey |
| **Subject:** | **Confidential** Harassing communications |
| **Attachments:** | Ammonia control building door_2 10-5-2021.jpg; VaxUp status 10-8-2021.pdf |

# CONFIDENTIAL COMMUNICATION
### 29 CFR §1630.14(c)(1)

October 12, 2021

Hello Stephen,

    I stopped by the Ammonia plant on 10/5/2021 and notices a sign taped to the door saying "mask required to enter building". I have attached a photo of this sign. This constitutes harassment and needs to stop. Additionally, I keep receiving emails about BASF wanting vaccine status in their VaxUp system. This is my private medical information and has no relevance to my ability to perform my job. Stop harassing me regarding my medical information. As HR it is your job to stop the harassment, and to stop discriminating against me based on disability. You are continuing to make a record of this disability with your actions. Cease and desist immediately with these unlawful measures.

Sincerely,

Brian Chancey

Mobile: +1 979 2368645, Email: brian.chancey@basf.com
Postal Address: BASF Corporation, , 602 Copper Road, 77541 Freeport, USA



## ■ ■ BASF
### We create chemistry

BASF Corporation

1

**Brian Dale Chancey**

| | |
|---|---|
| **From:** | CorporateCommunications |
| **Sent:** | Friday, October 8, 2021 9:59 AM |
| **Subject:** | Message from the CMT: Update your vaccination status & provide proof in VaxUp ASAP |
| | |
| **Importance:** | High |



Dear colleagues,

**We are asking all vaccinated U.S. employees to provide proof of vaccination in VaxUp** as BASF further evaluates measures to comply with the anticipated Occupational Safety and Health Administration (OSHA) emergency temporary standard referenced in President Biden's COVID-19 Action Plan.

**Already registered?**

Visit VaxUp to verify that you have taken the final step of uploading a photo of your vaccine card.

BASF needs this information to help ensure it complies with the anticipated OSHA rule, which we understand will require employers with 100 or more employees to either have a mandatory vaccination program as allowed by law or a weekly testing program for unvaccinated employees.

- **Why?** An accurate view of our vaccination rates is essential to fulfill any requirements that are issued and helps BASF make decisions about how best to keep our workplaces safe and healthy for all.

- **Is it private?** The process is secure and confidential, and your information will be managed by Corporate Medical in accordance with all medical and data privacy laws.

- **What if I choose not to?** Colleagues who do not provide their status in VaxUp and upload a photo of their vaccine card as proof will not be considered vaccinated when new requirements are implemented.

Thank you for your support as we adapt to these changes. We will inform you about the next steps regarding how BASF will comply with the anticipated emergency temporary standard as soon as we receive further guidance from OSHA.

Best regards,

Crisis Management Team

## Questions? Contact:

- ► Corporate Medical
- ► Medical personnel by site

- ► US-coronavirus-info@basf.com
- ► myHR@basf.com





BASF device ▶
**in.basf.us/vaxup**
Personal device ▶
**basf.us/vaxup**

**Already registered?**

Visit VaxUp to verify that you have taken the final step of uploading a photo of your vaccine card.

We are asking all vaccinated U.S. employees to provide proof of vaccination in VaxUp as BASF further evaluates measu the anticipated Occupational Safety and Health Administration (OSHA) emergency temporary standard referenced in President Action Plan.

BASF needs this information to help ensure it complies with the anticipated OSHA rule, which we understand will require with 100 or more employees to either have a mandatory vaccination program as allowed by law or a weekly testing prog unvaccinated employees,

- **Why?** An accurate view of our vaccination rates is essential to fulfill any requirements that are issued and helps BASF make decisions about how keep our workplaces safe and healthy for all.
- **Is it private?** The process is secure and confidential, and your informatio managed by Corporate Medical in accordance with all medical and data laws.
- **What if I choose not to?** Colleagues who do not provide their status in V upload a photo of their vaccine card as proof will not be considered vacci new requirements are implemented.

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | |

| Texas Workforce Commission, Guadalupe CRD | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (Indicate Mr, Ms, Mrs.) | House Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Mr. Brian Chancey          Houston District Office | 8328634519 | 12/03/69 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 3117 Encino Avenue | Bay City, Tx 77414 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two are named, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| BASF | 20+ | 2489797436 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 602 Copper Road | Freeport, Tx 77541 | |

| Name | No. Employees, Members | Phone No. (Incl. Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| | | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☒ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER (Specify)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: 8/16/2021    Latest:

☒ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

See attached statement.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State or Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.  SIGNATURE OF COMPLAINANT |
| 10/16/2021    *Brian Chancey* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |
| Date    Charging Party Signature | |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1. FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

**2. AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3. PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4. ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5. WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging party and respondent and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

1

2                                                              Brian Chancey

3                                                              3117 Encino Avenue
                                                               Bay City, Texas  77414
                                                               gnman4@yahoo.com
4

5    | Jennifer Ortiz, ADR | CRTIU Supervisor |
     |---|---|
     | Houston District EEOC | Houston District EEOC |
6    | Mickey Leland Building | Mickey Leland Building |
     | 1919 Smith Street, 6th Floor | 1919 Smith Street, 6th Floor |
7    | Houston, TX 77002 | Houston, TX 77002 |
     | Jennifer.Ortiz@eeoc.gov | |
8

9    | Stephen Cafiero, ADA Coordinator | Nancy Grancell, HR |
     |---|---|
     | BASF | BASF |
10   | 100 Park Avenue | 602 Copper Road |
     | Florham Park, NJ 07932 | Freeport, Texas 77541 |
11   | | |
12   | stephen.cafiero@basf.com | nancy.grancell@basf.com |

13
     October 16, 2021
14

15                      **For Houston District Office EEOC**

16   **Charge of Discrimination and Request for Investigation and Mediation**

17
     Re: BASF
18   602 Copper Road
19   Freeport, Texas 77541

20
                          **STATEMENT IN SUPPORT OF COMPLAINT**
21

22       I am making this charge against my employer for its discrimination against me based
23   upon disability.  The EEOC has the authority and legal duty investigate this complaint.

24       My employer regards me as having a disability.
25       My employer has made a record of such disability.
26       My employer has failed to conduct any individualized assessment to determine if I
     am a direct threat to anyone.  My employer has failed to engage in any interactive process
27   with me concerning disability rights or resolutions.

28
                                        - 1 -

Witnesses to Discrimination:

Stephen Cafiero, ADA Coordinator    email: stephen.cafiero@basf.com
Nancy Grancell, HR  nancy.grancell@basf.com
Elizabeth A. Rodriguez elizabeth.rodriguez@basf.com
Jay Hunt jay.hunt@basf.com
Jason Metts  jason.metts@basf.com

     I have asked to speak confidentially with my employer's designated employee or representative that is responsible for resolving matters involving the Americans with Disabilities Act and grievances there under. After several email exchanges with the ADA representative, my employer refuses to acknowledge any wrongdoing.

     My employer has offered various accommodation measures including but not limited to mask-wearing, staying six feet away from others, frequent hand-washing, collection, use and storage of my vital statistics, working in isolation, video-graphic and audio-graphic communications in lieu of face to face communications, and injections of certain types of suspensions which are being called "vaccinations" yet do not prevent infection or transmission of any contagious disease and in fact create more disabilities by altering the normal function of my immune system and other cellular functions.

     My employer has not merely "offered" such accommodation measures, but threatened me with penalties including those described herein for refusing such accommodations in violation of 29 CFR Part 1630.9(d).

     I have thereby informed my employer that I am a qualified individual with a disability that substantially limits my ability to engage in one or more major life activities.

     I have requested information regarding the risks and benefits of my employers accommodation measures and in response, my employer has retaliated against me by humiliating me in front of others, by reprimanding me and has threatened or intimidated or coerced me with the threat of termination of my employment for refusing such accommodation measures instead of providing me with the information I requested so that I could make an informed decision.

     I have exercised my right to refuse such accommodation measures and proposed instead that I be permitted to perform my employment duties without harassment, retaliation, coercion or intimidation as a result of my exercise of such rights, and my employer has prevented and interfered with this occurring.

     I have not requested reasonable modifications but only that I be permitted to perform my employment duties without harassment, retaliation, coercion or intimidation.

     My employer has instead retaliated against me for exercising my rights under the Americans with Disabilities Act by threatening me with disciplinary measures and penalties

for refusing such accommodation measures, including but not limited to limiting my access to the premises where I work, segregation, isolation, and termination of employment.

Each day my employer permits and encourages other employees, including my supervisor and managers to harass and intimidate me and ask me for medical, health and other personal information that does not pertain to, or is not necessary for, the performance of my employment duties.

I am thereby being denied equal access to the same programs, activities, benefits, jobs or other opportunities for which I am otherwise qualified, while other employees are not. I am being segregated, excluded and relegated to lesser services by my employer based solely upon disability.

Each day my employer collects vital statistics on me and periodically attempts to collect medical information that does not pertain to, or is not necessary for, the performance of my employment duties. I am being segregated by my employer based solely upon disability.

My employer has written and adopted policies that exacerbate my disabilities and create disabilities while also encouraging others to retaliate against me for exercising my rights under the Americans with Disabilities Act.

My employer has failed or refused to fulfill its duty to aid and encourage me in the exercise of my rights which are protected under the Americans with Disabilities Act.

My employer has demonstrated by the actions of its employees and by its own written policies that it intends to continue such violations and failures to comply with the law and violation my rights.

## REQUEST FOR INVESTIGATION AND MEDIATION

By filing this Charge, I am formally requesting an investigation and, if needed, a mediation hearing to resolve these issues. I request that my Charge be entered manually and a hearing be scheduled. I request the CRTIU Supervisor to enter my Charge into the EEOC system personally as I do not find the online portal acceptable or accessible for entering my Charge. I request a written response from the CRTIU Supervisor confirming that my Charge has been filed within 14 business days of receipt of this Notice.

Brian Chancey

Enclosure Copies:

1.) Notice of Employment Discrimination & Harassment Based on Disability

- 3 -

1    2.) EEOC Form

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Brian Chancey
gnman4@yahoo.com

| | |
|---|---|
| Stephen Cafiero, EEO HR<br>BASF<br>100 Park Avenue<br>Florham Park, NJ 07932<br><br>email: stephen.cafiero@basf.com | Texas Workforce Commission<br>Guadalupe CRD<br>101 East 15th Street<br>Austin, TX  78778-0001<br>(888) 452-4778<br><br>email: EEOIntake@twc.state.tx.us |

## CONFIDENTIAL COMMUNICATION
### 29 CFR §1630.14(c)(1)

October 12, 2021

RE: Documenting Ongoing Employment Discrimination and Retaliation

Hello Stephen,

I am responding to your October 5, 2021 email in which you made several claims which inaccurately express my position confuse the issues.

You claimed that BASF is following lawful policies and only cited OSHA 1970 guidelines.  Your citation of the OSHA 1970 safety guidelines in relation to demanding that I wear a mask is the affirming action that BASF is operating under a false presumption and regarding me as disabled.  The underlying premise that BASF is making—without any individualized assessment— is that I am a walking biohazard and am a potential or actual source of COVID-19 and therefore require mitigation measures ('accommodations') in the form of wearing a mask in order to make the workplace safe.

I am challenging the underlying premise that BASF is basing it's discriminatory policy on which is that BASF is regarding me as 'disabled' with a potential or actual contagious disease.  BASF is also making a 'record' of this 'disability' by classifying me as un-masked and therefore a 'direct threat'.   BASF is also 'coercing and harassing' me to use its accommodation of wearing a mask or it will 'retaliate' against me by firing me.

I do not require this 'accommodation' because I am not disabled with a potential or actual contagious disease.  I have asked BASF to provide the records upon which it is relying to regard me as 'disabled' with a potential or actual contagious disease and it has never produced any record and it must therefore be stipulated at this point that there is no record ('individualized assessment') that BASF is relying upon.  If there is no evidence then the only conclusion that can be drawn is that BASF is discriminating against me for reasons of prejudice and false conclusions.

As for your statements of acting in good faith: I have stated in our interview on 8/25/2021 some of the effects on my life activities both personal and at work which you are now misrepresenting and dismissing. You have chosen to enforce policies when it is to your advantage, and have used those policies to segregate, harass, and threaten me. You have chosen to deny enforcing any medical countermeasures then turn around and attempt to force me to waive my rights to informed consent, and the ADA. You have cited "guidelines" as justifications for your actions while not following the actual laws. You have chosen to blame me for anything that happens while you refuse to address the discrimination you are inflicting upon me. Your actions are clearly not in good faith.

I have made every effort to respond to BASF's requests and also to Notice the company that I am not waiving my rights under the ADA. I am fit for work, ready for work and am not declining work. I have been responsive to every request.

I was sent the attached notice which states that BASF refuses to stop this discriminatory policy and previous Notices reveal that BASF threatens to retaliate against me and fire me for the disability of being *unmasked and therefore a direct threat* and because it regards me as disabled as a potential or actual source of COVID-19 without any individualized assessment.

1. BASF regards me as disabled by classifying me as a *potential or actual source* of COVID-19. Their affirming action of regarding me as a potential or actual source is that I have been given the coercive, threatening, and intimidating choice to wear a mask or be terminated.

2. BASF regards me as disabled through its classification of me as *un-masked and therefore a direct threat*, and the affirming action of regarding me as "un-masked" is the write-up I received on 8/12/21 and the threat of write-up I received on 9/24/21 on the basis of being un-masked. BASF can label this however it wishes to attempt to avoid this truth, but the classification of my health status as "un-masked" is the reason I will be fired. BASF has used policies and procedures that are intimidating, threatening, coercive, and that interfere with ADA rights, and this is prohibited under the ADA.

I am also sending this supplemental documentation to the EEO to add to my Charge of Discrimination.

Sincerely,

Brian Chancey

enclosed: Email dated October 5, 2021 from Stephen Cafiero, EEO HR regarding me as infectious, coercing me to wear a mask, denying that it is discriminating against me and refusing to end the policy of discrimination.

Email dated 9/24/2021 from Nancy Grancell threatening me with retaliation and firing on the basis of disability.

A-22b

EEOC Form 161 (11/2020)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Brian Chancey<br>3117 Encino Avenue<br>Bay City, TX 77414 | From: | Houston District Office<br>Mickey Leland Building<br>1919 Smith Street, 7th Floor<br>Houston, TX 77002 |

|  | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |

| EEOC Charge No. | EEOC Representative | Telephone No. |
| 460-2022-00337 | **Lucia Pan,**<br>**Investigator** | **(346) 327-7667** |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: The EEOC will not proceed further with its investigation, and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Lucia Pan    Digitally signed by Lucia Pan
Date: 2021.11.05 14:47:02
-05'00'            For            11-5-21

Enclosures(s)

**Rayford O. Irvin,**
**District Director**                    (Date Issued)

cc:    Steve J. Cafiero
Manager, Corporate EEO
BASF
100 Park Avenue
Florham Park, NJ 07932

TWC Civil Rights Division
101 E. 15ᵗʰ St. Rm. 144T
Austin, TX 78778

Enclosure with EEOC
Form 161 (11/2020)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days of the date you *receive* this Notice**. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *issued* to you** (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 -- *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice *and* within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➤ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.

➤ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

➤ **Only one** major life activity need be substantially limited.

➤ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

➤ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

➤ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**

➤ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

➤ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

➤ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.

➤ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:   Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*   For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

**Brian Dale Chancey**

| | |
|---|---|
| **From:** | Stephen Cafiero |
| **Sent:** | Monday, October 18, 2021 3:28 PM |
| **To:** | Brian Dale Chancey |
| **Subject:** | Response to 10/12/21 Email |

Good afternoon Brian. As you know BASF has implemented a policy that requires all employees wear cloth face covering or disposable facemask while indoors. BASF's policies are drafted to comply with guidance from the Occupational Safety and Health Administration and the Equal Employment Opportunity Commission. The sign you reference was posted on the door to remind all employees/visitors of BASF's policy. It is neither harassing nor directed specifically at you.

In regard to the VaxUp system, "the [equal employment opportunity] laws do not prevent employers from requiring employees to provide documentation or other confirmation of vaccination, this information, like all medical information, must be kept confidential and stored separately from the employee's personnel files under the ADA." U.S. Equal Employment Opportunity Commission, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, K.4 (October 13, 2021) https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws. The VaxUp system is designed to comply with all applicable federal and state laws regarding the collection and protection of employee's confidential medical information.

Over the last several weeks, BASF has engaged in a good faith dialogue with you in an attempt to address your concerns about BASF's policies. Unfortunately, it appears that you continue to persist in your refusal to follow policies that uniformly apply to all BASF employees. We have asked on previous occasions whether you are seeking an accommodation related to this policy due to a disability. In response, you have said no and have denied having a disability that interferes with your ability to perform your essential job functions.

As you know, you had a phone call with Nancy Grancell on September 23, 2021. During that phone call, Ms. Grancell informed you that you were expected to return to work on Monday, September 27, 2021. Ms. Grancell also informed you that you were expected to follow BASF's COVID mitigation policies and procedures.

BASF understands that you disagree with some of its policies. As we have explained here and in prior communications, BASF does not intend its policies to be discriminatory and drafts them to comply with all applicable federal, state and local laws. BASF strives for consistent application of its policies and expects that you will follow its lawful polices.

We look forward to seeing you back in the office on your next scheduled day.


**Stephen Cafiero**
Manager, Corporate EEO

Phone: +1 973 245-6270, Mobile: +1 973 862-0437, Email: stephen.cafiero@basf.com
Postal Address: BASF Corporation, , 100 Park Avenue, 07932 Florham Park, USA



We create chemistry

BASF Corporation

1

**Brian Dale Chancey**

| | |
|---|---|
| **From:** | Brian Dale Chancey |
| **Sent:** | Friday, October 22, 2021 4:02 PM |
| **To:** | Stephen Cafiero |
| **Cc:** | Brian Dale Chancey |
| **Subject:** | **Confidential** Response to 10/18/21 email |
| **Attachments:** | Biden Vaccination letter 9.16.2021.pdf; Snippet from Freeport Beat 10-14-2021.PNG; Tier 2 morning meeting safety moment 10-22-2021.PNG |
| **Signed By:** | brian.chancey@basf.com |

# CONFIDENTIAL COMMUNICATION
## 29 CFR §1630.14(c)(1)

Stephen,

As per my previous communications, I would like to see the medical diagnosis or court order that BASF is relying upon to perceive me as infectious. Without this diagnosis, BASF seems to be assuming that everyone is contagious without any proof. The perception that I am contagious without proof is the problem. None of the mitigation measures apply to me without first having a diagnosis. OSHA and mandates do not apply unless BASF can first produce the medical diagnosis it is relying upon. You have consistently failed to produce any diagnosis or court order showing me as having a contagious disease which is not good faith nor is it compliance with the law.

As for collection of my vital statistics for things that have no job relevance – this is private information and I have no legal requirement to provide it. The ADA prohibits the collection of vital statistics that are not job related. I have performed my job since I started with BASF without a mask or injections therefore you have no basis upon which to claim this information is needed to perform the duties of my job.  BASF can only allege that this is the new "policy" at BASF.  This is not the same thing as claiming that my job description duties list "wear a mask and be injected" as necessary components of the performance of my duties.  You are trying to defend the policy using an incorrect application of the requirements of my position.

BASF's email states that everyone who does not provide their vaccine status by October 22nd will be treated as unvaccinated. This new policy will add a new level of discrimination against me, now based on vaccine status.  As of October 22, 2021 BASF will officially classify me as "unvaccinated" which is discrimination based upon a physical condition.

I have asked you to provide proof of insurance for any risk associated with complying with these measures.  You have failed to do so and thus BASF now effectively "admits" that BASF has no insurable risk and therefore no duty to act.

BASF has cited OSHA 1970 Act as the legal justification for their discriminatory actions.  I will remind you that BASF has failed to produce any evidence of my being an actual or potential "agent" or "hazard"---- which is how the company seems to be interpreting the regulation. Without a determination that I am such an "agent" or "hazard" the regulation does not apply.   Clearly you cannot just assume everyone is a walking bio-hazard, you must have proof.

By admitting to using OSHA you are frankly admitting that you "regard" me as having the "disability" of a potential or actual contagious disease, which is the language of the ADA I have been using to claim my rights.

I want to draw your attention to the attached letter from 24 attorney generals regarding the use of OSHA regulations regarding medical interventions around the pandemic. Here is what they had to say regarding OSHA regulations in this context:

What is more, the COVID-19 virus is not the sort of "substance," "agent," or "hazard" to which the statute refers. OSHA, as its full name suggests, exists to ensure occupational safety. In other words, it deals with work-related hazards, not all hazards one might encounter anywhere in the world. Congress made this clear in empowering OSHA to establish workplace standards not concerning whatever it likes, but rather "employment and places of employment." The findings Congress passed with the law say the bill was motivated by a concern that "personal injuries and illnesses arising out of work situations impose a substantial burden upon . . . interstate commerce." Congress expressly intended to encourage

"employers and employees in their efforts to reduce the number of occupational safety and health hazards at their places of employment. "

When used in the context of a law directed toward occupational safety, the words "substances," "agents," and "hazards" relate to the dangers presented by the job itself-for example, chemicals used at job sites and tools used to carry out tasks-not to dangers existing in the world generally. And indeed, this is consistent with how the Act elsewhere uses these words. One provision, for example, requires the government to prepare a report "listing all toxic substances in industrial usage." Another provision repeatedly imposes duties and powers regarding "substances" and "agents" to which employees are exposed as part of their employment. Still another requires studies regarding "the contamination ofworkers' homes with hazardous chemicals and substances, including infectious agents, transported from the workplaces of such workers." All of these provisions are most naturally focused on dangers occurring at work because of one's work, as opposed to dangers occurring in society generally, including at work.

These statements from 24 attorney generals reiterate the point that BASF has no obligation to act under the Occupational Health and Safety Act of 1970 as you have claimed.

As for disability, you continue to ignore the disabilities that we discussed in our interview on 8/25/2021. I have repeatedly informed you that I seek no accomodations and that I am not required to accept your accomodations under the ADA. All I have asked for is to not be harassed and discriminated against on the job so I can perform my job duties. You have continued to fail to remedy this issue as well.

I have claimed my rights under the ADA and I have pointed out BASF's unlawful policies which you refuse to remedy. I have been at work and onsite per the date specifed by Nancy. I have not and will not follow any unlawful BASF policies including COVID policies which violate my rights under the ADA. I have copied you and Nancy on the EEOC charge of discrimination and any further retaliation/discrimination from BASF will be added to that charge.

Additionally, I have recently received further discriminatory plant communications regarding masking, the soliciting of my medical information, and classifying me as unvaccinated. Stop regarding me as contagious, unvaccinated, and stop trying to force medical interventions on me. Stop the harassing emails immediately.

Thanks,

**Brian Chancey**

Mobile: +1 979 2368645, Email: brian.chancey@basf.com
Postal Address: BASF Corporation, , 602 Copper Road, 77541 Freeport, USA



We create chemistry

BASF Corporation

**Brian Dale Chancey**

| | |
|---|---|
| **From:** | CorporateCommunications |
| **Sent:** | Monday, November 22, 2021 12:47 PM |
| **Subject:** | Message from the CMT: Next steps, OSHA emergency temporary standard |
| **Importance:** | High |



*The following message is to all U.S. employees from the Crisis Management Team, including: Tobias Dratt, Alexander Neumann-Loreck, Peter Eckes, Peter Schuhmacher, Stefan John, Mary Kurian, Kristen Pforr and Mark Patterson.*

**Note: The emergency temporary standard does not apply to sites regulated by the Mine Safety and Health Administration (MSHA).**

Dear colleagues,

BASF is preparing to comply with the Emergency Temporary Standard (ETS) recently issued by the Occupational Safety and Health Administration (OSHA). It requires employers of more than 100 employees to mandate either vaccination or weekly testing.

After a careful review, we have decided that beginning January 4, employees must:

- Provide proof of full vaccination in VaxUp **OR**
- Show weekly proof of a negative COVID-19 test and wear a mask

While we actively support these new requirements, we are also aware that various parties are challenging the ETS in the courts. We are monitoring the situation as we continue planning for implementation at our sites.

**Important dates to help you prepare for January 4:**

- **Now through Dec. 5:** If already vaccinated, submit proof in VaxUp
- **November 23:** Last day to receive first dose of Moderna
- **November 30:** Last day to receive first dose of Pfizer
- **December 5:** Mask requirement eases for fully vaccinated people*
- **December 21:** Last day to receive first dose of J&J
- **January 4:** Weekly testing begins for unvaccinated people

*At sites and buildings with vaccination rates of 80% or higher

1

Additionally, beginning December 5 vaccinated colleagues do not need to wear masks when seated at desks or workstations in sites or buildings where 80 percent or more of the employee population is vaccinated. More details will be communicated by sites locally. We ask that everyone continue using good judgment with social distancing and other preventive measures and be respectful of each other as this changing environment may be stressful for some colleagues.

Since the pandemic began, our focus has been protecting our people, minimizing impact to our customers and keeping BASF strong for the future. We've encouraged everyone to get vaccinated and have provided time off to do so. We acknowledge this is a personal choice each of us must make, and we thank the more than 10,000 employees who have chosen to be vaccinated.

We believe that implementing these additional measures is the next step in restoring a sense of normalcy while keeping our workplaces healthy and safe for all.

## What's next?

We are currently determining how best to implement weekly testing for those who are unvaccinated. With some variation in state requirements, this may differ at each location. We will keep you updated as more details are confirmed ahead of the anticipated January 4 deadline.

If you are not yet vaccinated, please consider it. The vaccine has been proven safe and effective, and getting vaccinated drastically reduces your risk of severe outcomes from COVID-19. It also saves you time and effort — as getting tested each week will require an investment of both.

We're in this together. Whether by getting vaccinated or by wearing a mask and getting tested, each of us plays an important role in protecting ourselves and the people around us.



**Already vaccinated?**
**Provide proof in VaxUp by**
**December 5**
You must register in VaxUp and provide proof to be considered fully vaccinated when new rules apply.

► BASF device: in.basf.us/vaxup
► Personal device: basf.us/vaxup

Best regards,

Crisis Management Team

**IN.BASF.US/CORONAVIRUS**

2



**Brian Dale Chancey**

| | |
|---|---|
| **From:** | CorporateCommunications |
| **Sent:** | Monday, December 6, 2021 1:17 PM |
| **Subject:** | Message from the CMT: Update on OSHA Temporary Standard (ETS) |
| | |
| **Importance:** | High |



*The following message is to all U.S. employees from the Crisis Management Team, including:*
*Tobias Dratt, Alexander Neumann-Loreck, Peter Eckes, Peter Schuhmacher, Stefan John, Mary Kurian,*
*Kristen Pforr and Mark Patterson.*

# Update: Occupational Safety and Health Administration (OSHA) Emergency Temporary Standard (ETS)

Note: The emergency temporary standard does not apply to sites regulated by the Mine Safety and Health Administration.

Dear colleagues,

Over the past week, we have continued our preparations to comply with the OSHA ETS requiring covered employers with 100 or more employees to mandate either vaccination or regular (e.g. weekly) testing.

As previously communicated, BASF plans to implement a program of testing unvaccinated employees. However, we are also monitoring the ongoing legal challenges to the ETS. As different scenarios arise, we may adjust BASF's approach and will consider all the circumstances and options to protect our people.

**To be clear, we will not implement the testing program for unvaccinated people while a decision on the ETS is still pending in the courts.** As this outcome is unknown, we are continuing to prepare for implementation.

If the ETS is upheld, we will begin implementation on January 4 as planned. At that time, employees must provide proof of full vaccination in **VaxUp** or show weekly proof of a negative COVID-19 test and wear a mask.

**What's new:**

- We developed a **testing and face covering policy** that outlines our expected approach.
- We eased mask requirements for fully vaccinated people, effective Dec. 5. **See details below.**
- Dec. 21 is the deadline to provide proof in **VaxUp** to be considered fully vaccinated by Jan. 4.

**Important dates to help you prepare for January 4:**

- **December 21:** Last day to receive first dose of J&J
- **December 21:** Last day to provide proof in VaxUp to be considered vaccinated on Jan. 4
- **January 4:** Weekly testing begins for unvaccinated people if the ETS is upheld*

*Expect local communications to provide details for your site's implementation.

**For your information:**

- **BASF's anticipated testing and face covering policy**
- **OSHA: Workers' Rights Fact Sheet**
- **OSHA: Penalty for false statements and records**
- **CDC: Key things to know about COVID-19 vaccines**
- **Frequently asked questions about BASF's policy**

We understand this evolving situation has created a sense of uncertainty for all of us. Our commitment is to keep you informed and, as always, to prioritize your health and safety.

Best regards,

Crisis Management Team

2

# BASF's policy: What you need to know

BASF developed its testing and face covering policy in preparation to comply with the OSHA ETS. If the legal challenges are decided and the ETS is upheld, the following applies January 4. To learn more, **read the full policy** or **review the FAQ**.

- **What's happening?** Colleagues who have not provided proof of vaccination in **VaxUp** by Dec. 21 will need to wear a face covering and provide weekly proof of a negative test.

- **How will it work?** The testing process will work differently across our sites based on local needs, with some testing occurring on site. Details will be communicated locally.

- **Who pays for testing?** BASF will cover the cost of testing for 60 days after it implements this requirement and as otherwise required by applicable state law.

- **What if I've already had COVID-19?** Employees do not need to undergo regular testing for 90 days following the date of a positive test or diagnosis by a licensed medical provider.

- **What if I work remotely?** Within 7 days prior to coming on site, unvaccinated remote or hybrid employees must be tested for COVID-19 and provide proof of a negative result.

- **What happens if I don't comply?** Employees who fail to comply with this requirement without an approved exemption will be subject to discipline up to and including termination.

# Current mask requirements for BASF

As of December 5, fully vaccinated colleagues do not need to wear masks when seated at desks or workstations in sites or buildings with a vaccination rate of at least 80% **OR** in counties where community transmission of COVID-19 is low or moderate as determined by the CDC.

- Details about mask requirements will be communicated locally based on your site's vaccination and transmission rates.

- To go without a mask when seated at your workstation, you must provide proof of vaccination in **VaxUp** and follow your site's procedure to receive a sticker.

- With the emergence of the Omicron variant, all colleagues must wear a mask during meetings and in indoor common areas, such as hallways, bathrooms and shared break rooms.

- Please use good judgement with social distancing and other preventive measures and be respectful of each other.

**IN.BASF.US/CORONAVIRUS**

A-26b

**Brian Dale Chancey**

| | |
|---|---|
| **From:** | Christopher Paul Witte |
| **Sent:** | Friday, December 10, 2021 8:52 AM |
| **Cc:** | Freeport-Leadership-Team |
| **Subject:** | **Internal** Freeport OSHA ETS Update |
| **Attachments:** | Updated Mask Guidelines Chart.docx |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Dear Colleagues,

By now, I am sure you have seen the latest CMT message on OSHA's Emergency Temporary Standard (ETS).

First, I want to remind you, this is not a BASF policy. The ETS is a proposed standard issued by OSHA, which covers employers with more than 100 employees. Please note, BASF will not implement the testing program while the ETS is in litigation. While the outcome of the ruling is uncertain, we must continue to prepare as though it will go "live" on Jan 4. It is important we as a site are ready if it passes, it also gives unvaccinated colleagues time to make an informed decision.

For the Freeport Site, if the ETS goes into effect on Jan. 4, fully vaccinated employees must have provided proof in VaxUp by December 21 to be considered fully vaccinated. For unvaccinated employees, BASF will pay for weekly testing for the first 60 days; thereafter, employees are expected to cover the cost of their weekly test.

For weekly testing of unvaccinated employees, the Freeport site will be using a service provider, Quest. Quest provides a take home rapid antigen test with proctoring over a video call. Test kits will be mailed to the homes of unvaccinated employees and testing will be done through Quest.eMed.com. A proctor will walk the employee through the process, verify and authenticate the test. Employees will then receive test results via email within 15 minutes of completing the test. The employee will then email the results to an email address that will be communicated, at a later date. Testing will be required every seven days and does not need to be scheduled. However, we request that employees not wait until the last minute to ensure a smooth testing process. Testing results will also determine access to the site.

For those who have recently tested positive for COVID-19, you are not required to undergo testing for 90 days following the date of the test or diagnosis. You will also be required to provide proof of the diagnosis and of being cleared.

BASF is currently working on an approved exemption process which will be communicated soon. As this is a legal mandate, we must comply. Unvaccinated employees who refuse to be tested without this approved exemption will be subject to discipline up to and including termination of employment.

Regarding masking requirements, the Freeport site will continue with the site masking guidance communicated on October 5, please see attached.

I want to end this note by saying thank you. I know there have been a lot of challenges during this pandemic, but you have met them head on. Daily, I am reminded of the strength of the Freeport family; together, we are a great team. Let's make sure we do not grow complacent as we continue this journey towards normalcy. I know we are all ready for a bit of normalcy.

Chris & The Freeport Site Leadership Team

**Chris Witte**
Sr VP: Freeport Site General Manager

Phone: 979-415-6111 Mobile: 225-978-9619 Fax: 979-415-8482 E-Mail: christopher.witte@basf.com
Postal Address: BASF Corporation, 602 Copper Rd, Freeport, Tx 77541

A-26c

**Brian Dale Chancey**

| | |
|---|---|
| **From:** | CorporateCommunications |
| **Sent:** | Friday, December 17, 2021 8:21 AM |
| **Subject:** | Message from the CMT: Update on OSHA ETS implementation |
| **Importance:** | High |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

**□ ▪ BASF**
We create chemistry

*The following message is to all U.S. employees from the Crisis Management Team, including:*
*Tobias Dratt, Alexander Neumann-Loreck, Peter Eckes, Peter Schuhmacher, Stefan John, Mary Kurian,*
*Kristen Pforr and Mark Patterson.*

# Update: Occupational Safety and Health Administration (OSHA) Emergency Temporary Standard (ETS)

Note: The emergency temporary standard does not apply to sites regulated by the Mine Safety and Health Administration.

Dear colleagues,

As we communicated December 6, we are closely monitoring the ongoing legal challenges to the OSHA ETS that are still pending in the courts. **Given that the outcome remains unknown, we will not implement testing for unvaccinated people on January 4, but will continue preparing for implementation.**

With this delay, we encourage you to consider getting vaccinated as soon as possible to avoid testing requirements if the ETS is upheld. As different scenarios arise, we may adjust our approach and will consider all the circumstances and options to protect our people. We will keep you informed as we learn more and make decisions for BASF.

With the holidays coming up, Dr. Livote spoke with online reporter about how to safely enjoy them this year. **Read the story** for her tips on holiday travel, gatherings and what to expect from the Omicron variant.

We've come a long way in the fight against COVID-19 thanks to vaccines and a wealth of knowledge about how it spreads. Let's keep doing all we can to protect ourselves and each other in the workplace and in our communities.

We wish you a safe and healthy holiday season.

Best regards,


Crisis Management Team

**Reminders:**

- We developed a testing and face covering policy for our expected approach. BASF is not mandating vaccination.

- We eased mask requirements for fully vaccinated people, effective Dec. 5. See below.

- Employees who are vaccinated must provide proof of full vaccination in **VaxUp.**

**For your information:**

- **BASF's anticipated testing and face covering policy**

- **OSHA: Workers' Rights Fact Sheet**

- **OSHA: Penalty for false statements and records**

- **CDC: Key things to know about COVID-19 vaccines**

- **Frequently asked questions about BASF's policy**

# Current mask requirements for BASF

As of December 5, fully vaccinated colleagues do not need to wear masks when seated at desks or workstations in sites or buildings with a vaccination rate of at least 80% **OR** in counties where community transmission of COVID-19 is low or moderate as determined by the CDC.

- Details about mask requirements will be communicated locally based on your site's vaccination and transmission rates.

- To go without a mask when seated at your workstation, you must provide proof of vaccination in **VaxUp** and follow your site's procedure to receive a sticker.

- With the emergence of the Omicron variant, all colleagues must wear a mask during meetings and in indoor common areas, such as hallways, bathrooms and shared break rooms.

- Please use good judgement with social distancing and other preventive measures and be respectful of each other.

IN.BASF.US/CORONAVIRUS

3

**Brian Dale Chancey**

| | |
|---|---|
| **From:** | Tabitha Marie Ray |
| **Sent:** | Thursday, December 30, 2021 3:06 PM |
| **Subject:** | Coronavirus Update #64 |
| **Attachments:** | CD19 Spike Response12_30_2021 - V3.pptx |
| **Categories:** | Green Category |



**COVID-19 Update #64 – Dec. 30, 2021**

Dear Colleagues,

Positive Covid-19 cases have risen significantly in our community and the site. Over the last week, the Brazoria County positivity rate has been consistently over 20 percent; for the Freeport site, we are recording several new positive cases daily. As of December 30, the Freeport site (BASF and contractors) has a total of 57 covid positive cases and 42 colleagues in quarantine.  We expect the numbers to continue to rise.

1

Based on the BASF Medical Tracking Metrics, beginning January 3 through January 14, 2022, the site leadership team has decided to return to a code red status and to follow the corresponding practices.

This means that:

- See attached slide for potential changes to work schedule
- We are waiting on direction from corporate medical on adoption of the new CDC guidelines regarding quarantine durations; once confirmed, we will implement accordingly
- Visitor access is limited to business critical and must be approved by a Director level or above
- Projects already underway with a defined end-time may continue. However, for any new projects or tasks not planned, they must be business or safety critical to the site and approved by a director or above
- Masks are always mandatory unless you are alone in your office or alone outside. Please note that the masking requirements include automobiles.
- Whenever feasible, we ask for all meetings to be held virtually. For meetings that must be in person, please keep limited to a small group of individuals at or below meeting room designated capacities and be vigilant with covid protocols
- While we continue to support our community through financial contributions, to help further protect our community and our site, participation in community events on behalf of BASF will not be permitted at this time
- Off-site travel must be approved by a SLT member.


We know this has been a long journey with many changes and challenges; however, it is important that we continue to be vigilant in our fight against COVID. BASF strongly encourages you to consider getting vaccinated as there is ample data that the effects of the virus on those vaccinated folks, even for the much more contagious strains, are significantly reduced, reducing the time to recovery and the load on our medical facilities. For those vaccinated, if your last dose was more than 6 months ago, we encourage you to get the booster.

As stated earlier, the code red status will be in effect from January 3 through January 14.
If you have any questions, please feel free to reach out to any member of the site leadership team.

BASF Corporation continues to monitor the OSHA ETS.

ALL USER APPROVED BY SITE LEADERSHIP TEAM

**Brian Dale Chancey**

| | |
|---|---|
| **From:** | Tabitha Marie Ray |
| **Sent:** | Friday, December 31, 2021 3:48 PM |
| **Subject:** | Coronavirus Update #64 part 2 - CDC Quarantine Requirements Update |
| **Attachments:** | CD19 Spike Response12_30_2021 - V3.pptx |



## COVID-19 Update #64 part 2 – Dec. 31, 2021

Dear Colleagues,
The Freeport site along with BASF Corporation is adjusting the Covid quarantine requirements to follow the new CDC guidelines. The new quarantine guidelines will go into effect today, December 31, 2021.

Persons who **test Covid positive (regardless of vaccination status)** will follow the Isolation guidelines issued by the CDC:

- Contact Site Medical immediately if you receive a positive result and stay home for 5 days.

- Contact Site Medical on day 5 of isolation to report either being symptom free or if you still have symptoms.

- If experiencing no symptoms, Site Medical will clear for return to work with the following requirements to be strictly adhered to for the next 5 calendar days:

  - *Wear N95 mask at all times while at work. N95 masks will be supplied at the site.*
  - *Monitor for symptoms and report any change to Supervisor and Site Medical immediately.*

Persons ***fully vaccinated who are exposed to someone with Covid*** will follow the **QUARANTINE** guidelines issued by the CDC:

- Wear a N95 mask for 10 calendar days while at work.
- Monitor for symptoms and if symptoms develop contact Supervisor and Site Medical immediately.

Persons **not *fully* vaccinated and those unvaccinated who are exposed to someone with Covid** will follow the ***Isolation*** guidelines listed above.

**Important Notes:**

**1. "*Fully* vaccinated" is defined as:**

- Received a booster (14 days since receiving); or
- Completed the primary series of Pfizer or Moderna vaccine within the last 6 months; or
- Completed the primary series of J&J vaccine within the last 2 months.

**2. *If you are sick stay home and contact your Supervisor and Site Medical for further instructions.***

---

## AS PREVIOUSLY COMMUNICATED Dec. 30, 2021:

Dear Colleagues,

Positive Covid-19 cases have risen significantly in our community and the site. Over the last week, the Brazoria County positivity rate has been consistently over 20 percent; for the Freeport site, we are recording several new positive cases daily. As of December 30, the Freeport site (BASF and contractors) has a total of 57 covid positive cases and 42 colleagues in quarantine. We expect the numbers to continue to rise.

Based on the BASF Medical Tracking Metrics, beginning January 3 through January 14, 2022, the site leadership team has decided to return to a code red status and to follow the corresponding practices.

This means that:
- See attached slide for potential changes to work schedule
- We are waiting on direction from corporate medical on adoption of the new CDC guidelines regarding quarantine durations; once confirmed, we will implement accordingly
- Visitor access is limited to business critical and must be approved by a Director level or above
- Projects already underway with a defined end-time may continue. However, for any new projects or tasks not planned, they must be business or safety critical to the site and approved by a director or above
- Masks are always mandatory unless you are alone in your office or alone outside. Please note that the masking requirements include automobiles.
- Whenever feasible, we ask for all meetings to be held virtually. For meetings that must be in person, please keep limited to a small group of individuals at or below meeting room designated capacities and be vigilant with covid protocols

- While we continue to support our community through financial contributions, to help further protect our community and our site, participation in community events on behalf of BASF will not be permitted at this time
- Off-site travel must be approved by a SLT member.

We know this has been a long journey with many changes and challenges; however, it is important that we continue to be vigilant in our fight against COVID. BASF strongly encourages you to consider getting vaccinated as there is ample data that the effects of the virus on those vaccinated folks, even for the much more contagious strains, are significantly reduced, reducing the time to recovery and the load on our medical facilities. For those vaccinated, if your last dose was more than 6 months ago, we encourage you to get the booster.

As stated earlier, the code red status will be in effect from January 3 through January 14.
If you have any questions, please feel free to reach out to any member of the site leadership team.

BASF Corporation continues to monitor the OSHA ETS.


ALL USER APPROVED BY SITE LEADERSHIP TEAM

3

**Brian Dale Chancey**

| | |
|---|---|
| **From:** | Brian Dale Chancey |
| **Sent:** | Monday, January 3, 2022 9:32 PM |
| **To:** | BASFNAComplianceTeam |
| **Cc:** | Brian Dale Chancey; Stephen Cafiero |
| **Subject:** | OSHA ETS and questions/comments on BASF policies #1 |

Legal:

Here are my comments and questions related to the ETS and the BASF policies –

OSHA ETS "REGULATIONS" UNLAWFUL AND REQUIRE LOSS OF FEDERAL FUNDING AS PENALTY

OSHA "Emergency Temporary Standards" (ETS) violate state and federal laws. OSHA and other federal agencies are subject to the loss of federal funds for violations of Section 504 of the Rehabilitation Act of 1973, the Americans with Disabilities Act (ADA) of 1990 and as amended in 2008, concerning employees state law (long-standing public health policy) requiring judicial review and approval before imposing any medical interventions such as mask-wearing and so-called vaccinations during this emergency use authorization period, and the Food, Drug and Cosmetic Act.

OSHA ETS purportedly imposed upon employers and employees fail to comply with public policy which requires judicial review and approval prior to unilaterally imposing any health control measures upon anyone, for accommodations which include but are not limited to examinations (testing and collection of vital statistics such as body temperature), mask wearing and taking any type of medicine or injection or participating in any clinical trials, specifically regarding employers and employees.

First of all, the most obvious problem with these so-called "emergency temporary standards" is that OSHA has failed to identify any new health or safety hazard that would give rise to the need for such measures. Secondly, these are certainly not temporary as no time limit is set forth therein, and deceptively excludes the fact that the two year old, so-called "pandemic" already has an investment market capitalization in the hundreds of billions of dollars and hundreds of governments around the world have invested their money in long term expectations that this will continue for decades.

Moreover, OSHA has failed to conduct research and gather data to determine the scope of any new public health risk. It is therefore impossible for anyone to be "fully vaccinated" since there is no evidence of any contagious disease from which one could be vaccinated; and, we are still within an emergency use authorization period, so by clinical, scientific and medical standards, there is no vaccine, only epidemiological experiments. Furthermore, a vaccine prevents infection and transmission of a contagious disease and manufacturers of the so-called "vaccine" disclaim all liability for the efficacy of what they claim to be a "vaccine" and openly admit that none of them prevent transmission or infection of the so-called "Covid-19", even if it did exist and even if viruses were ever proven to be contagious pathogens.

OSHA's "Emergency Temporary Standards" or ETS constitute a substantial public health risk in themselves and violate public health policies in all fifty states. These policies are published on the website of the Centers for Disease Prevention and Control, which is also facilitating these same violations and illegal policies. Let's begin with the District of Columbia's very own Second Edition of the District of Columbia Public Health Emergency Law Manual (D.C. PHELM). This is mentioned by title only because once the CDC's website is referenced, the CDC removes the link so it appears that the reference is in error. Then we have the Pennsylvania Public Health Law Bench Book, the New York State Public Health Legal Manual for judges and attorneys and then the Florida Pandemic Influenza Benchguide and then the Texas Control Measures and Public Health Emergencies Bench Book and the list continues. For states that do not have a published public health bench book, the same rules are easy to compile from case law, statutes and regulations. These all contradict

1

OSHA's ETS and related "rules" and each of these bench books express long-standing public policies regarding health control measures that require proof of a public health risk and then judicial oversight and approval as a condition before imposing any intervention on any one person. None of these bench books permit an entire population to be regarded as having a contagious disease all at the same time

OSHA has failed to conduct any meaningful health effects analysis or risk assessment regarding any new public health risks, including but not limited to the so-called "SarsCov2" or "Covid-19" claims.

The OSHA ETS under 29 CFR Part 1910.501(c) gives passing mention to "exemptions" for those with disabilities or medical or religious exemptions under only civil rights laws, but deceptively excludes any reference to any specific legal duty from which one would be exempted and completely fails to mention the standards imposed under the Americans with Disabilities Act. The term is deceptively used to imply that an employer or employee may be "exempt" from some new legal duty but fails to identify that legal duty by citing any valid and enforceable legal duty.

This section also fails to disclose any legal or objective standards or criteria by which such religious or medical exemptions would be granted or exclude an employer or employee from accepting the medical interventions or accommodations described in the ETS. This unfairly and deceptively denies employers and employees the right to a fair and impartial review of such "exemption" because without an adequate and comprehensive disclosure of which criteria would qualify someone's claim of "exemption", such criteria become arbitrary and capricious and any administrative decisions resulting therefrom would be null and void for the same reason.

This section of OSHA's ETS also deceptively fails to disclose the fact that every employer and every employee is being regarded as having a disability by the ETS itself, and that the burden of proving such disability is upon OSHA and anyone attempting to impose these measures upon any employer or employee. This ETS also fails to disclose the criteria for OSHA's burden of proof, or the burden of proof that is imposed upon any government agency or employer for imposing these medical interventions or accommodations upon anyone; to wit:

28 CFR Parts 35.104 and 35.106 for Title II "government" public accommodations and 28 CFR Part 36.105(e)1 and Part 36.203(c)(1) for Title III "private business" public accommodations; establishes that "Nothing in this part shall be construed to require an individual with a disability to accept an accommodation, aid, service, opportunity, or benefit available under this part that such individual chooses not to accept." and the standards under 29 CFR Part 1630.9(d) for employers as defined by Bragdon v. Abbott, 524 U.S. 624 (1998).

Furthermore, the Rehabilitation Act of 1973, specifically section 504 (45 CFR Part 84) prohibits employment discrimination on the basis of disability. Specifically, 45 CFR Part 84.4(b):

"(b) Discriminatory actions prohibited.

    (1) A recipient, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of handicap:

    (i) Deny a qualified handicapped person the opportunity to participate in or benefit from the aid, benefit, or service;

    (ii) Afford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others;

    (iii) Provide a qualified handicapped person with an aid, benefit, or service that is not as effective as that provided to others;

    (iv) Provide different or separate aid, benefits, or services to handicapped persons or to any class of handicapped persons unless such action is necessary to provide qualified handicapped persons with aid, benefits, or services that are as effective as those provided to others;

    (v) Aid or perpetuate discrimination against a qualified handicapped person by providing significant assistance to an agency, organization, or person that discriminates on the basis of handicap in providing any aid, benefit, or service to beneficiaries of the recipients program or activity;

    (vi) Deny a qualified handicapped person the opportunity to participate as a member of planning or advisory boards; or

2

(vii) Otherwise limit a qualified handicapped person in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service."

These ETS deceptively fail to disclose that OSHA, and any agency seeking to impose these measures upon anyone, has the burden of proof to establish that any specific employee is a direct threat under the standard set forth herein: 29 CFR Section 1630.2(r):

29 CFR Section 1630.2(r):

"Direct Threat means a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation. The determination that an individual poses a 'direct threat' shall be based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job. This assessment shall be based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence. In determining whether an individual would pose a direct threat, the factors to be considered include:

(1) The duration of the risk;
(2) The nature and severity of the potential harm;
(3) The likelihood that the potential harm will occur; and
(4) The imminence of the potential harm."

This same standard is verbatim under Titles II and III of the Americans with Disabilities Act, which is the standard by which Section 504 of the Rehabilitation Act of 1973 is measured and by which every other actual law is imposed. See 29 U.S.C. §794(d).

The ETS also deceptively omits the fact that employees are not required to request "reasonable modifications" when faced with any of these medical interventions or accommodations because the burden of proving that the employee must accept and submit to them is squarely upon the employer or government agency seeking to impose them and thereby regarding each employee as having a disability and making a record of such disability by mis-classifying the employee as having a physical and mental impairment.

No OSHA ETS can require employers to impose medical interventions and other health control measures or accommodations upon employees for the following reasons:

Employers have no legal duty of care or insurable risk to protect their employees or those associated with their businesses from a contagious disease that is widely believed to exist by the community, even if one were ever proven to exist.

The OSHA ETS fail to provide, disclose or require documentary evidence of any culture or specimen that would establish or prove the existence of any contagious disease known as "SarsCov2" or "Covid-19" or any other public health risk whatsoever.

OSHA ETS fail to explain why the so-called "vaccine" does not prevent infection or transmission of the intended contagious disease, the very definition of "vaccine". The term "vaccine cannot be associated with a medical intervention that does not meet the traditional and scientific or legal definition of "vaccine". This is false and deceptive, in fact it violates the advertising standards imposed by the Food and Drug Administration (FDA).

OSHA deceptively claims that the FDA has approved a vaccine that is commercially available. Everything that follows is a total fraud and human rights violation.

OSHA ETS fail to provide, disclose or require documentary evidence of the medical necessity of the interventions or accommodations purportedly imposed by its regulations.

OSHA is not indemnified and cannot legally allocate public funds to indemnify employers who comply with these regulations, and employers have no insurance or indemnification for engaging in the following:

A. Imposing medical interventions or accommodations such as mask-wearing and injections, especially during an emergency use authorization period.

B. Imposing medical interventions or accommodations without the competence, insurance, licensing or qualifications to provide informed consent.

C. Imposing medical interventions or accommodations without any medical examination to determine if any intervention or accommodation has any contra-indications.

D. Protecting anyone or indemnifying employees from contracting a contagious disease that is widely believed to exist by the community; especially since it would be impossible to establish "proximate cause" and

3

the employer has no liability under the Doctrine of Assumption of Risk (also open and obvious or comparative fault). This is basic premises liability law.

E. Having financial responsibility for anyone suffering adverse health consequences from submitting to employer's medical interventions or accommodations; especially since it would be impossible to establish "proximate cause" and in this case, the employer is financially liable for engaging in conduct that is both dangerous and negligent.

F. Employees can never be required to participate in clinical trials or epidemiological experiments as a condition of employment. In fact, no one can be required to participate in these without full disclosure and informed consent. This violates 21 CFR Part 50.20 of the Food, Drug and Cosmetic Act under "General requirements for informed consent". There are no applicable exceptions since no public health emergency or imminent threat has ever been identified by any scientific or clinical standard.

G. OSHA ETS violates an employers duty of care for the reasons herein but also for the reason that employers have a duty to aid and encourage those who are regarded as having disabilities. Likewise, OSHA itself violates its own duty to aid and encourage those with disabilities, as OSHA regards everyone as having a disability and has made a record of such disability by mis-classifying the entire population of the United States as having a physical or mental impairment (contagious disease).

These OSHA ETS impose a disability upon every employer and every employee by regarding each as having a disability; such that, every employee is regarded as having a disability simply by the mere fact that OSHA regulations purport to impose medical interventions and accommodations upon each, under the OSHA claim that these unproven interventions and accommodations prevent the spread of a contagious disease for which there is no evidence of its existence. This satisfies the first prong of the ADA.

OSHA ETS require OSHA and employers to make a record of such disability by misclassifying each employee as having a physical or mental impairment that substantially limits one or more major life activities. This satisfies the second prong of the ADA and meets the criteria for stating a prima facie cause of action for injunctive relief under the Federal Rules of Civil Procedure.

The burden of proof to establish that anyone would be subjected to any of OSHA's ETS is upon OSHA and upon any employer seeking to impose these measures to conduct an individualized assessment for each employee and then determine by ADA scientific and medical standards that any such employee is a direct threat. This is not part of the OSHA ETS, but it is a matter of law imposed upon OSHA and anyone else seeking to impose these ETS.

These OSHA ETS fail to comply with the standards of the ADA by requiring an individualized assessment prior to regarding anyone as having a disability and diagnosed as being a direct threat. The standards of the ADA are employed under the Rehabilitation Act.

Regulations fail to require employers to make conspicuous notice to employees as to how or in what manner these medical interventions or accommodations are an essential function of the employee's job or duties of employment.

Section 201(h) of the Food, Drug and Cosmetic Act, along with the FDA's "Final Guidance"1 defines "mask-wearing" when intended for health purposes to be a medical intervention. Regulations conflict with and fail to comply with 21 U.S.C. 360bbb-3(e)(1)(A)(ii) (I-III) of the Food, Drug and Cosmetic Act which requires that employers make the following disclosures or warranties: (I) that the Secretary has authorized the emergency use of the product; and, (II) of the significant known and potential benefits and risks of such use, and of the extent to which such benefits and risks are unknown; and, (III) of the option to accept or refuse administration of the product, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks.

These OSHA "ETS" conflicts with ADA provisions that preclude any employer from imposing any accommodation upon anyone who is regarded as having a disability.

OSHA fails to disclose public health records demonstrating any change in the mortality rates from 2017 to 2018 to 2019 through the year 2020, such that the mortality rate in any population sample never exceeded a standard deviation of zero, the very definition of absolutely no public health emergency. This is public record, check with your chief medical examiner's office and get a copy of the public records.

4

These OSHA regulations violate the law and violate public policy and are null and void for not only these reasons, but the fact that they completely evade legislative review. This is a federal agency that is attempting to impose new legal standards that violate traditional, longstanding public health policies in every state. These ETS exceed OSHA legislative mandate and authority.

Should have said illegal

Since BASF continues to attempt to impose policies on me regardless of being advised on multiple occasions that such policies are unlawful and discriminatory I have the following questions/comments regarding BASFs existing and proposed future policy changes mentioned in the BASF emails on 11/22/2021, 12/6/2021, 12/17/2021, the email from Chris Witte on 12/10/2021 regarding the ETS, and in Coronavirus email #64 on 12/31/2021:

1. On 10/22/2021 I sent an email to Stephen Cafiero again asking for an individualized assessment for the measures BASF is attempting to enforce on me as is required by the ADA. I also provided evidence that BASF had no authority or obligation to impose the mitigation measures it has been attempting based on the code cited by BASF. I never received a reply. I am again notifying you that your recent emails and policies mentioned above continue to discriminate against me under the ADA and are unlawful.

2. As I have already addressed BASFs previously stated reason for attempting to enforce these policies on 10/22/2021, I will ask again, please cite the legal code that obligates BASF to enforce these measures.

3. Please provide the specific purpose (for example, stop transmission, stop infection, etc) for the following countermeasures BASF is mandating:                Should have said illegal
   ◦ Masks
   ◦ Distancing
   ◦ COVID tests
   ◦ Shots ("vaccines")

4. Please provide the link to the FDA approval for the mask BASF is mandating.

5. Please provide the link to the FDA approval for distancing BASF is mandating.

6. Please provide the link to the FDA approval for the COVID test BASF is mandating.

7. Please provide the link to the FDA approval for the shots BASF is mandating.

8. Please cite the legal authority to mandate tests that are not job related and have no public health benefit.

9. Please provide the link to the clinical studies that show the mandated COVID tests can differentiate between the various types of coronaviruses (at least 7 known to infect humans) and can determine if an employee has an active infection versus a previous infection.

10. As mentioned in the previous paragraphs the "jabs" you are attempting to mandate do not meet the legal definition of vaccine as defined in Iowa Code (ARC 4096C) (" a specially prepared antigen administered to a person for the purpose of providing immunity. "), 42 U.S.C. § 300aa – 1 ("the optimal prevention of human diseases"), and 1986 National Childhood Vaccine Injury Act (Public Law 99-660) ("optimal prevention of human infectious diseases through immunization"). Please cite the legal code for the definition of vaccine which you are relying on and cite how you are overriding exisiting legal & medical vaccine definitions.

11. Regardless of the outcome from the OSHA ETS litigation these "jabs" are not vaccines but are instead medical treaments, please cite the legal code that overrides Cruzan v. Director, Missouri Dept. of Health, 497 U.S. 261 (1990) and allows BASF to force employees to take medical treatments against their will.

12. Please provide the specific address and phone number of a location in our area where the "alleged FDA approved" Comirnaty shot is administered.

13. Please provide an unredacted, complete list of ingredients in the Comirnaty shot.

14. Please provide links to the clinical studies showing the long term side effects of the Comirnaty shot.

15. Be advised that BASF policies that force me to choose between medical countermeasures or losing my employment (or other punitive actions) constitutes coercion under 21 CFR sections 50.20/23/24 and is also a violation of the ADA.

Thanks,

**Brian Chancey**

Mobile: +1 979 2368645, Email: brian.chancey@basf.com
Postal Address: BASF Corporation, , 602 Copper Road, 77541 Freeport, USA



We create chemistry

BASF Corporation

**Brian Dale Chancey**

| | |
|---|---|
| **From:** | CorporateCommunications |
| **Sent:** | Tuesday, January 4, 2022 8:15 AM |
| **Subject:** | Message from the CMT: Omicron variant, OSHA ETS implementation |
| **Importance:** | High |
| **Categories:** | Green Category |



*The following message is to all U.S. employees from the Crisis Management Team, including:*
*Tobias Dratt, Alexander Neumann-Loreck, Peter Eckes, Peter Schuhmacher, Stefan John, Mary Kurian,*
*Kristen Pforr and Mark Patterson.*

# BASF to proceed with OSHA ETS implementation; social distancing, masking reinstated for Omicron

Note: The emergency temporary standard does not apply to sites regulated by the Mine Safety and Health Administration.

Dear colleagues,

We hope you and your families had a safe and healthy holiday season.

Our medical team has been monitoring the sharply rising Omicron variant while other colleagues have been preparing to implement the OSHA ETS now that the courts have allowed OSHA to move forward with the testing and mask requirement for unvaccinated people.

Given the significant spread of Omicron across the country, **we are reinstituting masks and social distancing protocols for all effective immediately**. Site specific details will be communicated locally.

## Important dates

- **DECEMBER 17:** U.S. Court of Appeals for the Sixth Circuit dissolved stay of ETS, allowing OSHA to proceed with implementation

- **JANUARY 18:** New deadline to submit your proof of vaccination in VaxUp

- **JANUARY 18:** Last day to receive second dose of Pfizer or Moderna vaccine for full vaccination status by Feb. 1*

1

Vaccination – and now, importantly, getting a booster shot – continues to be the best way to protect yourself against severe illness and hospitalization. If you are sick, regardless of the illness or your vaccination status, please stay home.

**BASF is proceeding with the OSHA ETS requirement** and as of February 1, all employees reporting to a BASF workplace must either have proof of vaccination in VaxUp or provide a weekly negative COVID-19 test and wear a mask.

- **FEBRUARY 1:** Weekly testing begins for unvaccinated people**

*At this time a booster is strongly recommended, but not mandatory to be considered fully vaccinated.

**Expect local communications to provide details for your site's implementation.

If different scenarios arise – with virus spread or with the OSHA ETS – we may adjust BASF's approach and ask for your continued support and flexibility.

Our commitment to keep you informed and prioritize your health and safety never waivers. Thank you for your dedication and good judgement in keeping yourself and others safe.

We wish you a happy new year.

Best regards,

Crisis Management Team

## What to know:

- Proof of vaccination status in VaxUp should be completed by January 18.

- The BASF testing and face covering policy takes effect on February 1.

- BASF is adopting the new CDC guidance shortening quarantine for those who are exposed or test positive.

## Additional information

- BASF's testing and face covering policy

- OSHA: Workers' Rights Fact Sheet

- OSHA: Penalty for false statements and records

- CDC: Key things to know about COVID-19 vaccines



## BASF's testing policy

BASF developed its testing and face covering policy to comply with the OSHA ETS. We have updated the policy to become fully effective on February 1. Read the policy and review the FAQ.

- Colleagues who are not fully vaccinated or have not provided proof in VaxUp are required to provide weekly proof of a negative test and wear a face mask.

- The testing process will work differently across our sites based on local needs, with some testing occurring on site. Details will be communicated locally.

- Employees who have recently had COVID-19 and can provide proof do not need to undergo regular testing for 90 days following the date of a positive test or diagnosis by a licensed medical provider.



## BASF mask requirements

Our face covering requirements have been updated:

- With the highly transmissible Omicron variant bringing a surge in cases across the region, all colleagues must wear a mask when indoors. Group meetings, lunches or other gatherings should be avoided during this time.

- The only time a mask can be removed indoors is when working alone in an office or room. Details are being communicated locally.

- We will revisit these guidelines at the end of January and make adjustments if possible depending on the progression of Omicron.

IN.BASF.US/CORONAVIRUS

A-29

## COMPANY REQUIREMENT

# COVID-19 TESTING AND FACE COVERING

GBW/UE-M
CLN/OH



## Administrative Information

| | |
|---|---|
| **Document** | COMPANY REQUIREMENT |
| **Title** | COVID-19 Testing and Face Covering Requirement |
| **Effective since** | NEW |
| **Accountable Governance Unit (Owner)** | GBW/UE-M & CLN/OH |
| **Author** | Legal, Environmental Health & Safety, and Corporate Medical |
| **Scope** | BASF Corporation and its US Sites and US Subsidiaries. |
| **Approval Body** | Managing Director – BASF Corporation – Tobias Dratt |
| **Target Group** | BASF Corporation Employees |
| **Published** | Company Rule Base |
| **Effective:** | January 3, 2022 |
| **Revision Date:** | January 3, 2025 |

**Table of Contents**

1.   PURPOSE ...................................................................................................................... 4

2.   DEFINITIONS ................................................................................................................. 4

3.   SCOPE ........................................................................................................................... 4

4.   REQUIREMENT .............................................................................................................. 5

5.   RESPONSIBILITIES ...................................................................................................... 10

Covid 19 Testing and Face Covering
Version: 1.0

## 1.    PURPOSE

Vaccination is a vital tool to reduce the presence and severity of COVID-19 cases in the workplace. BASF encourages employees to receive a COVID-19 vaccination to protect themselves and other employees. However, should an employee choose not to be vaccinated, this Requirement's sections on testing and face coverings will apply in accordance with applicable law. This Requirement helps ensure that BASF complies with OSHA's Emergency Temporary Standard on Vaccination and Testing (29 CFR 1910.501).

## 2.    DEFINITIONS

### 2.1.    Employee

An individual who performs services for, and under the direction and control of, BASF.  Such direction and control includes the results to be accomplished and the methods and means by which such results are accomplished.   Neither Contracting firms nor Contractors or Temporary Workers who are characterized by BASF as independent contractors are employees.

### 2.2.    Contractor

A non-employee engaged through a third-party agency for the performance of a specific function.  These individuals:
* Perform services with the general oversight of the company, and
* Generally, do not , but may perform services for third parties at the same time.

### 2.3.    Temporary Worker

A non-employee engaged through an agency for the purpose of temporarily filling a vacant authorized postion, typically for a period of less than 6 months.  The vacant postion must be for a BASF employee and is generally due to illiness, vacation, turnover, termination, etc.

### 2.4    Incident Support Team

The leaders and managers identified in the Crisis Management Plan to coordinate the corporate level support and resources needed to manage an Emergency, incident or potential crisis.

### 2.5    Crisis Management Team

The senior executives identified in the Crisis Management Plan as responsible for directing the corporate level management of a potential crisis.

## 3.    SCOPE

BASF Corporation and its US Sites and US subsidiaries.

Covid 19 Testing and Face Covering
Version: 1.0

Internal

## 4.    REQUIREMENT

### 4.1.    Key Principles

- All employees are encouraged to be fully vaccinated.

- Employees are considered fully vaccinated two weeks after completing primary vaccination with a COVID-19 vaccine with, if applicable, at least the minimum recommended interval between doses.  For example, this includes two weeks after a second dose in a two-dose series, such as the Pfizer or Moderna vaccines, two weeks after a single-dose vaccine, such as Johnson & Johnson's vaccine, or two weeks after the second dose of any combination of two doses of different COVID-19 vaccines as part of one primary vaccination series.

- Employees who are not fully vaccinated will be required to provide proof of weekly COVID-19 testing and wear a face covering at the workplace.

- All employees are required to report their vaccination status and, if vaccinated, provide proof of vaccination via VaxUp, Site Medical (if applicable), or other authorized channels at their site.  *VaxUp is the Company's preferred method to receive this information.* Employees must provide truthful and accurate information about their COVID-19 vaccination status, and, if not fully vaccinated, their testing results. Employees not in compliance with this Requirement will be subject to discipline up to and including termination.

- Employees may be entitled to a reasonable accommodation if they cannot wear a face covering (as otherwise required by this Requirement) because of a disability, or if the provisions in this Requirement for testing or wearing a face covering conflict with a sincerely held religious belief, practice, or observance.  Requests for exceptions and reasonable accommodations must be initiated by contacting myHR.  Employees will be required to submit documentation in support of a request for an accommodation.  All such requests will be handled in accordance with applicable laws, regulations, and BASF's Requirements.

### 4.2.    Vaccination, Testing and Face Coverings

#### 4.2.1.    Vaccination

Any BASF employee that chooses to be vaccinated against COVID-19 must be fully vaccinated no later than February 1, 2022.  Any employee not fully vaccinated by February 1, 2022 will be subject to the regular testing and face covering requirements of the Requirement.  Employees will be considered fully vaccinated two weeks after receiving the requisite number of doses of a COVID-19 vaccine as stated above. An employee will be considered partially vaccinated if they have received only one dose of a two-dose vaccine.

#### 4.2.2.    Testing and Face Coverings

Employees who are not fully vaccinated as of February 1, 2022 will be required to undergo regular COVID-19 testing and wear a face covering when in the workplace. General protocols for testing and face coverings are described in the relevant sections of this Requirement.

### 4.3.    Vaccination Status and Acceptable Forms of Proof of Vaccination

#### 4.3.1.    Proof of Vaccination is Required

All vaccinated employees are required to provide proof of COVID-19 vaccination, regardless of where they received vaccination. Proof of vaccination status can be submitted via the *VaxUp App*, *Site Medical* (if applicable) or other authorized channels at their site (e.g., *Site Security*).

Covid 19 Testing and Face Covering
Version: 1.0

### 4.3.2. Acceptable Forms of Proof

#### 4.3.2.1. Types of Proof: Acceptable proof of vaccination status is:

1. The record of immunization from a health care provider or pharmacy;

2. A copy of the COVID-19 Vaccination Record Card;

3. A copy of medical records documenting the vaccination;

4. A copy of immunization records from a public health, state, or tribal immunization information system; or

5. A copy of any other official documentation that contains the type of vaccine administered, date(s) of administration, and the name of the health care professional(s) or clinic site(s) administering the vaccine(s).

#### 4.3.2.2. Information Included in Proof

Proof of vaccination generally should include the employee's name, the type of vaccine administered, the date(s) of administration, and the name of the health care professional(s) or clinic site(s) that administered the vaccine. In some cases, state immunization records may not include one or more of these data fields, such as clinic site; in those circumstances BASF will still accept the state immunization record as acceptable proof of vaccination.

#### 4.3.2.3. Alternative Proof

If an employee is unable to produce one of these acceptable forms of proof of vaccination, despite attempts to do so (e.g., by trying to contact the vaccine administrator or state health department), the employee can provide a signed and dated statement attesting to their vaccination status (fully vaccinated or partially vaccinated); attesting that they have lost and are otherwise unable to produce one of the other forms of acceptable proof; and including the following language:

> *"I declare (or certify, verify, or state) that this statement about my vaccination status is true and accurate. I understand that knowingly providing false information regarding my vaccination status on this form may subject me to criminal penalties."*

An employee who attests to their vaccination status in this way should to the best of their recollection, include in their attestation the type of vaccine administered, the date(s) of administration, and the name of the health care professional(s) or clinic site(s) administering the vaccine.

### 4.3.3. Due Date to Submit Vaccination Status

All vaccinated employees should provide proof of vaccination to BASF by January 18, 2022 to be considered "vaccinated" under this Requirement. Employees who do not provide proof of vaccination (as specified in this Requirement) will be considered *unvaccinated* under this Requirement. If an employee becomes fully vaccinated after January 18, 2022, they should promptly notify BASF and provide proof of vaccination so that they can be considered "vaccinated" under this Requirement.

Covid 19 Testing and Face Covering
Version: 1.0

**4.4.    Time Off in Connection with COVID-19 Vaccination**

**4.4.1.    Time Off In Connection with Vaccination**
An employee may take up to four hours of duty time per dose to travel to the vaccination site, receive a vaccination, and return to work. This would mean a maximum of eight hours of duty time for employees receiving two doses. Similarly, an employee can take up to four hours of duty time to travel to the vaccination site, receive a *booster vaccination*, and return to work. If an employee spends less time getting the vaccine, only the necessary amount of duty time will be granted. Employees who take longer than four hours to get the vaccine must send their supervisor an email documenting the reason for the additional time (e.g., they may need to travel long distances to get the vaccine). Any additional time requested will be granted, if reasonable, but will not be paid; in that situation, the employee can elect to use accrued leave, e.g., sick leave, to cover the additional time. If an employee is vaccinated outside of their approved duty time they will not be compensated.

**4.4.2.    Recovery Time (If Needed)**
Employees may utilize up to two workdays of sick leave immediately following each dose if they have side effects from the COVID-19 vaccination that prevent them from working.

**4.4.3.    Contacting Supervisor/Manager**

Employees should consult with their supervisor for granting duty time to obtain the COVID-19 vaccine or sick leave to recover from side effects.

**4.5.    Employee Notification of COVID-19 and Removal from the Workplace**

**4.5.1.    Employee Obligations to Notify BASF**

BASF will require employees to promptly notify the BASF Leave Team, Site Medical (if applicable) or their Site COVID contact (if applicable) when they have tested positive for COVID-19 or have been diagnosed with COVID-19 by a licensed healthcare provider. If an Employee is unsure whom to contact, they should contact the BASF Leave Team.

**4.5.2.    Medical Removal from the Workplace**

BASF has implemented a Requirement for keeping COVID-19 positive employees from the workplace. BASF will immediately remove an employee from the workplace if they have received a positive COVID-19 test or have been diagnosed with COVID-19 by a licensed healthcare provider (i.e., immediately send them home or to seek medical care, as appropriate).

**4.5.3.    "Return to Work" Criteria**

- For any employee removed because they are COVID-19 positive, BASF will keep them removed from the workplace until the employee receives a negative result on a COVID-19 nucleic acid amplification test (NAAT) following a positive result on a COVID-19 antigen test if the employee chooses to seek a NAAT test for confirmatory testing; meets the "return to work" criteria in CDC's "Isolation Guidance"; or receives a recommendation to return to work from a licensed healthcare provider.

- BASF generally follows the "return to work" criteria in the CDC "*Isolation Guidance*," as periodically updated by the CDC. See Related Documents for BASF's protocols when returning employees to work purusant to the *CDC's Isolation Guidance*.

  If an employee has severe COVID-19 or an immune disease, BASF will follow the guidance of a licensed healthcare provider regarding return to work.

**4.6.    COVID-19 Testing**

- General Requirement: All employees who are not fully vaccinated will be required to comply with this Requirement for testing.

- Testing Schedule (Regularly within Site / Office): Employees who report to the workplace at least once every seven days:

    (A) must be tested for COVID-19 at least once every seven days; and

    (B) must provide documentation of the most recent COVID-19 test result to the designated site contact or other person designated to receive and maintain testing documentation at their work site no later than the seventh day following the date on which the employee last provided a test result.  Information about the appropriate site contact will be provided locally to employees by the site.

- Testing Schedule (Less Frequently or Only Occassionally within Site / Office):  Any employee who does not report to the workplace during a period of seven or more days (e.g., if they were teleworking for two weeks prior to reporting to the workplace):

    (A) must be tested for COVID-19 within seven days prior to returning to the workplace; and
    (B) must provide documentation of that test result to the person designated to receive and maintain testing documentation at their work site upon return to the workplace.

- Failure to Provide Documentation: If an employee does not provide documentation of a COVID-19 test result as required by this Requirement, they will be removed from the workplace until they provide a test result.

- Recent COVID Illness: Employees who have received a positive COVID-19 test, or who have been diagnosed with COVID-19 by a licensed healthcare provider, are not required to undergo COVID-19 testing for 90 days following the date of their positive test or diagnosis.

- Cost of Testing: BASF will pay for the reasonable cost of COVID-19 testing for the initial sixty (60) days after it implements testing under this Requirement and as otherwise required by law.   Where BASF is not legally required to pay for the cost of testing, BASF will reevaluate whether it will continue to pay for the cost of testing during that initial sixty (60) day period. BASF reserves the right to discontinue the payment for the reasonable cost of COVID-19 testing at any time and for any reason.

- Onsite Testing:  Some BASF sites may offer onsite testing.  Details regarding onsite testing will be communicated and available at the Employee's Site.

4.7.   **Face Coverings**

- General Requirement: BASF will require all employees who are not fully vaccinated to wear a face covering. Employees who are not fully vaccinated must wear face coverings over the nose and mouth when indoors and when occupying a vehicle with another person for work purposes. BASF's face-covering requirements for fully vaccinated employees at BASF sites will be communicated locally by Site Management.

- Attributes of Face Coverings: Face coverings must: (i) completely cover the nose and mouth; (ii) be made with two or more layers of a breathable fabric that is tightly woven (i.e., fabrics that do not let light pass through when held up to a light source); (iii) be secured to the head with ties, ear loops, or elastic bands that go behind the head; (iv) fit snugly over the nose, mouth, and chin with no large gaps on the outside of the face; and (v) be a solid piece of material without slits, exhalation valves, visible holes, punctures, or other openings. Acceptable face coverings include clear face coverings or cloth face coverings with a clear plastic panel that, despite the non-cloth material allowing light to pass through, otherwise meet these criteria and which may be used to facilitate communication with people who are deaf or hard-of-hearing or others who need to see a speaker's mouth or facial expressions to understand speech or sign language respectively.

- Exceptions: The following are exceptions to BASF's requirements for face coverings:

  1. When an employee is alone in a room with floor to ceiling walls and a closed door.
  2. For a limited time, while an employee is eating or drinking at the workplace or for identification purposes in compliance with safety and security requirements.
  3. When an employee is wearing a respirator or facemask.
  4. Where BASF has determined that the use of face coverings is infeasible or creates a greater hazard (e.g., when it is important to see the employee's mouth for reasons related to their job duties, when the work requires the use of the employee's uncovered mouth, or when the use of a face covering presents a risk of serious injury or death to the employee).

4.8.   **Application of Requirement (Work from Home,Outdoors, and MSHA Regulated Sites)**

This COVID-19 Requirement on testing and face covering use applies to all Employees of BASF, except for (1) Employees who do not report to a workplace where other individuals (such as coworkers or customers) are present, (2) Employees while working from home, (3) Employees who work exclusively outdoors, and (4) Employees while working at BASF sites regulated by the Mine Safety and Health Administration (MSHA).

4.9.   **New Hires**

All new Employees are required to comply with the vaccination, testing, and face covering requirements outlined in this Requirement as soon as practicable and as a condition of employment. Potential candidates for employment will be notified of the requirements of this Requirement prior to the start of employment.

4.10.   **Contractors and Temporary Workers**

The responsibility to ensure that Contractors and Temporary Workers comply with vaccination and testing requirements remains with their own employers. However, BASF requires that Contractors and Temporary Workers comply with all applicable mask requirements while on BASF sites.

4.11.   **Confidentiality and Privacy**

All medical information collected from individuals, including vaccination information, test results, and any other information obtained as a result of testing, will be treated in accordance with applicable laws and policies on confidentiality and privacy.

Covid 19 Testing and Face Covering
Version: 1.0

**4.12.**    **Questions**

Please direct any general questions regarding this Requirement to US-coronavirus-info@basf.com. Questions regarding paid time off for vaccination or requests for exemptions should be directed to myHR or (1-800-432-9191)

**4.13.**    **Compliance with Laws**

This Requirement shall be interpreted to comply with all applicable laws and regulations.

# 5.    RESPONSIBILITIES

**5.1.**    **Corporate Legal**

Responsible for administering and interpreting this Requirement together with Site Management, People Services and Corporate Medical.

**5.2.**    **Corporate Medical**

Responsible for administering and interpreting this Requirement together with Site Management, People Services and Corporate Legal.

**5.3.**    **Site Medical**

Responsible for administering this Requirement at their site(s) together with the site Human Resources Representative and Site Management.

**5.4.**    **People Services**

Responsible for administering and interpreting this Requirement together with Site Management, Human Resources within Operating Divisions / Units / Sites, Corporate Medical and Legal.

**5.5.**    **Human Resources within Operating Divisions, Sites and Other Units**

Responsible for administering this Requirement in conjunction with Site Management, People Services, Corporate Medical and Legal.

**5.6**    **Crisis Management Team (CMT)**

Responsible for setting strategy about measures to respond to the COVID-19 pandemic, including key aspects of this Requirement.

**5.7**    **Incident Support Team (IST)**

Responsible for developing approaches to respond to the COVID-19 pandemic, including key aspects of this Requirement.

**5.8**    **Site Management, Leaders of Operating Divisions, and Leaders of Strategic Units**

Responsible for administering and enforcing this Requirement as relates to their respective Sites, Operatinig Divisions, and Units.

# 6.    RELATED DOCUMENT

*CDC "Isolation Guidance" (Applied to BASF)*

**Brian Dale Chancey**

| | |
|---|---|
| **From:** | Zachary Bo Gilliam |
| **Sent:** | Wednesday, January 5, 2022 12:59 PM |
| **To:** | Brian Dale Chancey; Ernie Carrasquillo; Jeffrey Effenberger; Joseph Morgan McAda; Kurt Wayne Blackmar; Nolan Higdon; Todd David Bolting; Walter Gonzalez |
| **Subject:** | Mask Enforcement |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Team,

I've been in meetings with upper brass and they have emphasized how serious they are taking the new Code Red. In particular, they called out issues with adherence to the mask policy.

Some of us (myself included) haven't done a great job of adjusting to the new policy yet. Let's help each other remember to mask up when moving between rooms/buildings, spending time in spaces with others, driving with others, etc. I don't want to have to sit in on any avoidable discipline meetings in my first month on the job.



Let me know if you have any questions.

Thanks,
**Zachary Gilliam, P.E.**
IEC Services Manager, CM/Freeport

Phone: +1 979 415-6288, Mobile: +1-979-373-7806, Fax: +1 979 415-8493, Email: zachary.gilliam@basf.com
Postal Address: BASF Corporation, 910, 602 Copper Road, 77541 Freeport, United States



We create chemistry

BASF Corporation

****** This message is transmitted on 100% recycled electrons. ********

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT B

Guidance for Industry and FDA

Brian Chancey---Affidavit in Support of Amended Complaint

B

# Classification of Products as Drugs and Devices & Additional Product Classification Issues: Guidance for Industry and FDA Staff

## *FINAL GUIDANCE*

*Additional copies are available from:*
*Office of Combination Products*
*Food and Drug Administration*
*WO32, Hub/Mail Room #5129*
*10903 New Hampshire Avenue*
*Silver Spring, MD 20993*
*(Tel) 301-796-8930*
*(Fax) 301-847-8619*
*http://www.fda.gov/CombinationProducts/default.htm.*

For questions regarding this document contact the Office of Combination Products at 301-796-8930 or combination@fda.gov.

**U.S. Department of Health and Human Services**
**Food and Drug Administration**
**Office of Combination Products**
**Office of Special Medical Programs**
**Office of the Commissioner**

**September 2017**

*Contains Nonbinding Recommendations*

# Table of Contents

I.   INTRODUCTION ............................................................................................................. 2

II.   WHAT IS THE PROCESS FOR OBTAINING A FORMAL CLASSIFICATION
DETERMINATION FOR A PRODUCT? ......................................................................... 3

III.   WHAT DOES FDA CONSIDER IN DETERMINING WHETHER TO CLASSIFY A
PRODUCT AS A DRUG OR DEVICE? ........................................................................... 4

    A.   STATUTORY DEFINITIONS .............................................................................................. 5

        *1.   Drug* ........................................................................................................................ 5

        *2.   Device* ..................................................................................................................... 5

    B.   CERTAIN KEY PROVISIONS OF THE DEFINITION OF DEVICE ............................................ 5

        *1.   "Similar or related article" in the definition of device* ......................................... 6

        *2.   "Primary intended purposes" in the definition of device* ...................................... 6

        *3.   "Chemical action" in the definition of device* ...................................................... 7

        *4.   "Within or on the body" in the definition of device* .............................................. 7

        *5.   Illustrative Examples* ............................................................................................. 8

    C.   HOW IS A PRODUCT CLASSIFIED IF IT MEETS THE DEFINITION FOR DRUG (OR FOR BOTH DRUG AND
DEVICE) AND ALSO MEETS THE DEFINITION FOR BIOLOGICAL PRODUCT? ....................... 10

IV.   ADDITIONAL INFORMATION ................................................................................... 11

FREQUENTLY ASKED QUESTIONS ....................................................................... 12

*Contains Nonbinding Recommendations*

# Classification of Products as Drugs & Devices & Additional Product Classification Issues: Guidance for Industry and FDA Staff[1]

> This guidance represents the current thinking of the Food and Drug Administration (FDA or Agency) on this topic. It does not establish any rights for any person and is not binding on FDA or the public. You can use an alternative approach if the approach satisfies the requirements of the applicable statutes and regulations. To discuss an alternative approach, contact the FDA office responsible for this guidance as listed on the title page of this guidance.

## I.   INTRODUCTION[1]

FDA regularly receives questions from medical product sponsors concerning the classification of their products.[2] We believe that efficient, effective regulation is facilitated by providing guidance on issues frequently raised in relation to Requests for Designation (RFDs) and other classification activities. In addition, providing as much clarity and predictability as possible with respect to product classifications should enable informed planning for product development. Accordingly, we have prepared this guidance to make the Agency's current thinking concerning certain product classification issues more readily and widely available.

While issues have arisen relating to whether a product should be classified as a drug, device, biological product, or combination product, most of these issues have related to whether a product should be classified as either a drug or a device.[3] Accordingly, this guidance focuses particularly on cases in which a product[4] may be classified as a drug or device.[5] This guidance also addresses additional issues relating to product classification, including how to obtain classification determinations from FDA for medical products.

This guidance is organized into two substantive sections.

---

[1] This guidance has been prepared by the Office of Combination Products in consultation with the Center for Biologics Evaluation and Research, the Center for Devices and Radiological Health, and the Center for Drug Evaluation and Research.

[2] Please note that "classification" as used in this guidance refers to a product's designation as a drug, device, biological product, or combination product. This is distinct from the use of the term "classification" in reference to the class (Class I, II, or III) of a device as described in section 513(a) of the Federal Food, Drug, and Cosmetic Act (FD&C Act).

[3] This guidance addresses the definitions for the terms drug, device, and biological product in section III. The term "combination product" is defined in 21 CFR 3.2(e). For further information regarding the definition for the term combination product and the regulation of combination products, please visit the webpage for the Office of Combination Products at www.fda.gov/CombinationProducts/default.htm.

[4] The guidance's discussion of the classification of products is also relevant to classification of the constituent parts of a combination product.

[5] This guidance focuses on classification of products for human use. Distinct considerations may apply in determining how to classify a product intended for use in animals.

2

*Contains Nonbinding Recommendations*

Section II offers guidance on the RFD process for obtaining a formal determination of a product's classification.

Section III presents general concepts regarding FDA's decision-making process for classification determinations and addresses issues that may arise in determining whether products should be classified as drugs or devices.[6]

The Agency recommends that sponsors contact the Office of Combination Products (OCP) to confirm the classification of any products they may wish to market if the appropriate classification is unclear or in dispute. Section IV provides contact information for OCP and responses to frequently asked questions.

FDA's guidance documents, including this guidance, do not establish legally enforceable responsibilities. Instead, guidances describe the Agency's current thinking on a topic and should be viewed only as recommendations, unless specific regulatory or statutory requirements are cited. The use of the word "should" in Agency guidances means that something is suggested or recommended, but not required.

## II.   WHAT IS THE PROCESS FOR OBTAINING A FORMAL CLASSIFICATION DETERMINATION FOR A PRODUCT?

If the classification of a product as a drug, device, biological product, or combination product is unclear or in dispute, a sponsor can submit an RFD to OCP in accordance with Part 3 of Title 21 of the Code of Federal Regulations (21 CFR Part 3) to obtain a formal classification determination for the product, as provided for under section 563 of the FD&C Act (21 USC 360bbb-2). Any RFD determined to be incomplete will be returned to the sponsor with a request for the missing information.[7] 21 CFR 3.8(a). Once OCP determines the RFD is complete for filing, the Agency reviews the RFD.

The sponsor recommends a classification in the RFD, and should explain the basis for the recommendation. While the sponsor should justify why it believes the product meets the recommended classification, we generally consider both the information provided in the RFD and other information available to the Agency at that time in making our designation.

Generally, OCP will respond to the sponsor in writing within sixty days of the RFD filing, identifying the classification of the product as a drug, device, biological product, or

---

[6] This section generally focuses on approaches for determining whether a product should be classified as a drug or a device, based on application of the statutory definitions for these terms under sections 201(g) and 201(h) of the FD&C Act (21 USC 321(g) and (h)), respectively. Please note that this document does not focus on the classification of products as biological products regulated under section 351(i) of the Public Health Service Act (PHS Act) (42 USC 262(i)). It also does not address under what circumstances certain human cells, tissues, or cellular or tissue-based products (HCT/Ps), as defined in 21 CFR Part 1271, are regulated solely under section 361 of the PHS Act. For guidance concerning HCT/Ps, please visit http://www.fda.gov/BiologicsBloodVaccines/GuidanceComplianceRegulatoryInformation/Guidances/Tissue/.
[7] See 21 CFR 3.7 for content requirements for RFDs.

3

*Contains Nonbinding Recommendations*

combination product. If the Agency does not provide a written response within sixty days, the sponsor's recommendation respecting the classification of the product is considered to be the final determination. 21 USC 360bbb-2(b) and (c).

RFD determinations pertain only to the product as described in the designation letter, including its proposed use(s) or indication(s) for use. The Agency may modify a determination made under section 563 regarding the classification of a product or the component of FDA that will regulate the product either with the written consent of the sponsor or for public health reasons based on scientific evidence. 21 USC 360bbb-2(b) and (c).[8]

A new determination may be appropriate if there is a change in, for example, a proposed indication for use or in a component of the product, or if the sponsor or Agency becomes aware of additional information that reveals that the means by which the product achieves its primary intended purposes differ from what was originally described in the RFD. For example, if a sponsor wished to change the indication for a product and that new indication would be achieved through a different mechanism than the original indication, a different classification for the new indication might be appropriate.

Please contact OCP if you have questions regarding whether to submit an RFD, what information to provide, or issues to address in an RFD to ensure its completeness and clarity.[9]

## III.   WHAT DOES FDA CONSIDER IN DETERMINING WHETHER TO CLASSIFY A PRODUCT AS A DRUG OR DEVICE?

FDA's determination of whether to classify a product as a drug or device is based on statutory definitions, as set forth in sections 201(g) and 201(h) of the FD&C Act, respectively. We apply these definitions to products, relying on the scientific data that are available to FDA at the time of the classification determination concerning the product for its proposed use(s)/indication(s).[10]

---

[8] The sponsor may request reconsideration of the decision if its classification recommendation is not adopted by the Agency. See 21 CFR 3.8, 10.75. If the sponsor develops or becomes aware of new information that may affect the product's classification, the sponsor may also submit a new RFD seeking a new determination.

[9] More detailed information on the RFD process is provided in OCP's guidance *How to Write a Request for Designation (RFD), available at* http://www.fda.gov/RegulatoryInformation/Guidances/ucm126053.htm. A pre-RFD process is available if a sponsor wishes to obtain a preliminary, non-binding classification determination or to engage in preliminary classification discussions with the Agency before filing a formal RFD. The RFD and pre-RFD processes are also available to sponsors to clarify the Center assignment for medical products, though this issue is beyond the scope of this guidance. More information about the pre-RFD process is available at https://www.fda.gov/downloads/RegulatoryInformation/Guidances/UCM534898.pdf.

[10] If a product type has been classified by regulation, FDA would generally classify the product (including as a constituent part of a combination product) in accordance with the regulation, if the product (or constituent part) falls within the scope of that regulation. If the Agency concludes that it may be appropriate to propose changing a classification established by regulation, FDA would initiate notice and comment rulemaking to do so.[11] The device definition also includes a second exclusionary clause stating that a device "is not dependent upon being metabolized for the achievement of its primary intended purposes." This clause has not been at issue frequently in classification determinations. Accordingly, we do not offer guidance on its construction here. If sponsors have questions regarding the Agency's interpretation of this clause, they may contact OCP.

4

*Contains Nonbinding Recommendations*

Medical product classification determinations often focus substantially on whether a product that meets the definition of drug also meets the statutory definition of device. This section presents the drug and device definitions and discusses how the Agency addresses certain issues that arise when determining whether a product should be classified as a drug or device.

**A.      Statutory Definitions**

**1.      Drug**

Section 201(g) of the FD&C Act (21 USC 321(g)) provides that the term "drug" means:

> (A) articles recognized in the official United States Pharmacopoeia, official Homoeopathic Pharmacopoeia of the United States, or official National Formulary, or any supplement to any of them; and (B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and (C) articles (other than food) intended to affect the structure or any function of the body of man or other animals; and (D) articles intended for use as a component of any articles specified in clause (A), (B), or (C). . . .

**2.      Device**

Section 201(h) of the FD&C Act (21 USC 321(h)) provides that the term "device" means:

> an instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article, including any component, part, or accessory, which is--
> (1) recognized in the official National Formulary, or the United States Pharmacopeia, or any supplement to them,
> (2) intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease, in man or other animals, or
> (3) intended to affect the structure or any function of the body of man or other animals, and
>
> which does not achieve its primary intended purposes through chemical action within or on the body of man or other animals and which is not dependent upon being metabolized for the achievement of its primary intended purposes.

**B.      Certain key provisions of the definition of device**

Conceptually, all FDA-regulated medical products meet the definition of "drug" under section 201(g) of the FD&C Act, due to the broader scope of the drug definition. For a medical product also to meet the more restrictive device definition under section 201(h) of the FD&C Act, it must (i) be "an instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article," and (ii) "*not* achieve its primary intended purposes through *chemical action* within or on the body of man or other animals" and (iii) "*not* [be] dependent upon being *metabolized* for the achievement of its primary intended purposes" (emphasis added).

5

*Contains Nonbinding Recommendations*

The sponsor presumably has the most complete information relevant to how its proposed product achieves its primary intended purpose(s).  Sponsors seeking a classification determination should present all available data and other information potentially relevant to that determination (without regard to whether the data or information supports the sponsor's preferred outcome).  For example, for a sponsor seeking to classify its proposed product as a device, those data should demonstrate that its product meets the definition of a device.

At the classification stage, sponsors would not be expected to have gathered sufficient data to demonstrate that their proposed product meets the applicable marketing authorization standard (e.g., data demonstrating effectiveness).  Therefore, the focus of FDA's classification analysis is on how the product would be expected to achieve its primary intended purposes, assuming it is capable of achieving its primary intended purposes at all.  FDA will use its best scientific judgment to evaluate all available information relevant to the classification determination, including information submitted by the sponsor or available in the literature.

The following discussion presents the Agency's current thinking on certain issues that arise with respect to the statutory definition of device.

### 1.   "Similar or related article" in the definition of device

The first clause of the device definition provides that the term "means an instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or *other similar or related article* . . ." (emphasis added).  The issue of whether a product may be considered a "similar or related article" under this clause can arise, for example, with regard to products in liquid, semi-liquid, gel, gas, or powder form.  In some cases, such products are appropriately considered "similar or related articles," and may be classified as devices, so long as they also satisfy the remainder of the device definition under section 201(h) of the FD&C Act, including the chemical action exclusion discussed in section III.B.3 below.  This could be the case, for example, for gels or powders put on the skin as a barrier, gases used as space fillers, or liquids used to clean either surgical instruments or contact lenses.

### 2.   "Primary intended purposes" in the definition of device

Most often, in determining whether a product meets the device definition, questions arise concerning the exclusionary clause of the definition, which provides that a device is a product "which does not achieve its primary intended purposes through chemical action within or on the body of man or other animals . . . ."[11]  A product that has chemical action could be a device if it does not achieve its primary intended purposes through that chemical action.

---

[11] The device definition also includes a second exclusionary clause stating that a device "is not dependent upon being metabolized for the achievement of its primary intended purposes."  This clause has not been at issue frequently in classification determinations.  Accordingly, we do not offer guidance on its construction here.  If sponsors have questions regarding the Agency's interpretation of this clause, they may contact OCP.

*Contains Nonbinding Recommendations*

For example, if the primary intended purpose of a hip joint replacement implant is to restore movement, and the implant also elicits a foreign body response through chemical action, that response would not be considered a primary intended purpose of the implant. Accordingly, such an implant could be classified as a device despite the chemical action, because such action does not achieve the product's primary intended purpose. Similarly, if the primary intended purpose of an absorbable suture is to rejoin tissue, and the suture is also designed to be resorbed by the body through a combination of chemical action and metabolic activities, such resorption would not be considered a primary intended purpose of the product. Accordingly, such an absorbable suture could be classified as a device despite the chemical action and metabolic activity, because such action or activity does not achieve the product's primary intended purpose.

### 3.    "Chemical action" in the definition of device

FDA frequently receives questions from product sponsors concerning the Agency's interpretation of the term "chemical action." This term must be read in the context of the statutory definition of "device" as a whole. The determination of whether a product meets the device definition does not depend solely on whether the product exhibits "chemical action." In particular, as explained in section III.B.2 and 4, a product that exhibits chemical action will still meet the device definition if the product "does not achieve its primary intended purposes through" that chemical action "within or on the body," and otherwise satisfies the device definition.

Under the Agency's interpretation of the device definition, a product exhibits "chemical action" if it interacts at the molecular level with bodily components (e.g., cells or tissues) to mediate (including promoting or inhibiting) a bodily response, or with foreign entities (e.g., organisms or chemicals) so as to alter that entity's interaction with the body.[12] We note that this type of interaction is consistent with the term "pharmacological action" as that term is generally understood in the medical field. Accordingly, we have used "pharmacological action" as a short-hand throughout the rest of this guidance for ease of explication and recognition. The examples presented in section III.B.5 offer illustration of FDA's interpretation of chemical action.

### 4.    "Within or on the body" in the definition of device

Because a device "does not achieve its primary intended purposes through chemical action *within or on the body* of man or other animals" (emphasis added), a product can be a device even if it achieves its primary intended purposes through chemical action, so long as the chemical action does not occur "within or on the body" (and the product meets the other elements of the definition of device under section 201(h)).

Whether chemical action is occurring "within or on the body" is generally a straightforward matter. If the chemical action is occurring inside the body or on the surface of the body, it is within or on the body. For example, the chemical action of an orally ingested pill

---

[12] For purposes of this interpretation, an interaction at the molecular level occurs through either chemical reaction (i.e., formation or breaking of covalent or ionic bonds), intermolecular forces (e.g., electrostatic interactions), or both. The mere exchange of non-chemical energy (e.g., electromagnetic or thermal energy) between a product and the body would not constitute "chemical action."

*Contains Nonbinding Recommendations*

or tablet of a decongestant would be "within the body," and the chemical action of a spray or cream for treatment of dermatitis when applied to the skin would be "on the body." Similarly, it is generally a straightforward matter to determine that chemical action is not occurring within or on the body. For example, the chemical action of an antimicrobial agent used to clean a surgical instrument before that instrument is used is not occurring within or on the body.

However, the Agency has on occasion considered some situations in which it may be less clear whether chemical action is occurring within or on the body. For example, we have determined that chemical action occurring solely within an extracorporeal device, specifically a kidney hemodialysis machine, is not occurring within or on the body. Similarly, we have determined that the chemical action of a transport solution to preserve a donor organ for transplantation while in an organ transport container is not occurring within or on the body.

### 5. Illustrative Examples

The following examples further illustrate the application of some of the key provisions of the device definition discussed above. Table 1 contains some examples of medical products that achieve their primary intended purposes through chemical action within or on the body. Table 2 contains some examples of medical products that do not achieve their primary intended purposes through chemical action within or on the body.

**Table 1:   Examples of Medical Products that Achieve Their Primary Intended Purposes through Chemical Action within or on the Body**

| Product | Description |
|---|---|
| Aspirin | Aspirin is used for pain relief. Acetylsalicyclic acid (aspirin) contains an acetyl group that has the ability to covalently bind to a serine residue of a cyclooxygenase enzyme (COX-1 or COX-2). This is considered pharmacological action because it inactivates the enzyme and thereby inhibits the synthesis of prostaglandin and thromboxanes, which suppresses the body's inflammatory response for pain relief. |
| Beta Blockers | Beta blockers are used to reduce blood pressure. Cells contain beta receptors that can be stimulated by neurotransmitters such as adrenaline/epinephrine. Beta blockers, like propranolol, bind beta receptors (b1 and b2) and exhibit pharmacological action by inhibiting the activation of the signaling cascade. This blockage causes cardiac cells to reduce the strength of cardiac contractions and heart rate. |
| Magnesium Sulfate | Magnesium sulfate is used as replacement therapy for magnesium deficiency. It acts as a catalyst in enzymatic reactions (a molecular-level interaction). While the chemical or atomic structure of magnesium sulfate is not altered, its participation in enzymatic reactions is considered a pharmacological action because it impacts various cellular and molecular processes. |

8

*Contains Nonbinding Recommendations*

| Polymyxin B Sulfate | Polymyxin B sulfate is an antibiotic that is used to treat bacterial infection. It is composed of a cationic protein surfactant that has fatty acid functional groups. Polymyxin B sulfate acts through intermolecular forces, by binding to components of the bacterial membrane (i.e., the membrane of the foreign entity) and by association/fusion of the fatty acid portion of the molecule with the lipid bilayer via hydrophobic interactions. This binding is a pharmacological action because it disrupts the integrity of the bacterial membrane, which causes organism death, thereby treating the bacterial infection. |
| --- | --- |
| Hydroxocobalamin | Hydroxocobalamin is used as an antidote to cyanide poisoning. The cobalt moiety of hydroxocobalamin exhibits pharmacological action because it chemically reacts with cyanide, a toxic chemical agent, to form cyanocobalamin, a non-toxic compound, and the ability of hydroxocobalamin to interact with cyanide facilitates the removal of the toxic agent in order to inhibit the toxic effects of cyanide on the body. |

**Table 2: Examples of Medical Products That Do Not Achieve Their Primary Intended Purposes through Chemical Action within or on the Body**

| Product | Description |
| --- | --- |
| Abdominal Adhesion Barrier | Inert, biodegradable synthetic polymers can be used to reduce post-operative adhesions with tissues and organs within the abdominal cavity. An implanted physical barrier sheet composed of such polymers would act to reduce adhesion through physical separation of tissue and not through pharmacological action on the surrounding tissue. |
| Polymethylmethacrylate (PMMA) | PMMA is an acrylate polymer that is used as a temporary bone spacer. PMMA is built from methyl methacrylate monomer units, which undergo free radical polymerization in the presence of an initiator compound. The molecules that are part of the polymerization process interact with each other to create a solid mass to fill a bone void physically. The process does not require an interaction between the PMMA and the bone at the molecular level and, therefore is not considered chemical action within or on the body. |
| Topical Surgical Adhesive | Cyanoacrylate is an acrylic resin that is used to approximate skin tissue as an adjunct to a wound closure product. The resin undergoes anionic polymerization in the presence of water. The chemical reaction that occurs between the resin and ions in the water allows it to form into long polymer chains. This type of adhesive can bond to a cut/incision, creating a physically-intact film to aid in keeping skin edges together. While the product binds to tissue, it does not exhibit pharmacological action because that binding does not mediate a bodily response. |

9

*Contains Nonbinding Recommendations*

| Gold Nanoparticles | Nanoparticles composed of gold can be used to treat cancer. When gold nanoparticles are injected into a tumor site and exposed to electromagnetic energy, they absorb the electromagnetic energy and convert it to thermal energy, and this heat is transferred to the surrounding cells or tissue.  The heat transfer, as opposed to a binding interaction with the nanoparticle, causes the cancer cells to die. Therefore, this effect is not achieved through chemical action. |
|---|---|
| Cryosurgery for Wart Removal | Cryogen (liquid gas), such as nitrogen or dimethyl ether, is used to treat common and plantar warts. The liquid gas is extremely cold and freezes the wart, resulting in damage to the topmost layer of cells.  A physiological effect (i.e., cell death) results from heat transfer, not from a binding interaction with the gas.  Therefore, the freezing is not considered chemical action. |
| Dental Amalgam | A resin that fills a cavity in a tooth as part of the treatment of dental caries may bind to the tooth via covalent bonding, or rely in part on intermolecular forces to change from liquid or paste to solid form.  However, this binding and/or state change does not mediate a bodily response, but rather produces a solid mass, to fill the cavity. Therefore, it would not be considered chemical action. |
| Respirator Mask with Antimicrobial Filter | An antimicrobial product impregnated into a filter on a respirator mask to kill microbes that the user might otherwise inhale would exhibit pharmacological action.  However, while the mask is in contact with the user's face, the filter is not.  So, the chemical action occurring on the filter is not occurring within or on the body. |

**C.  How is a product classified if it meets the definition for drug (or for both drug and device) and also meets the definition for biological product?**

As explained in section III.B, products that meet the device definition in 201(h) of the FD&C Act also meet the drug definition in 201(g) of the FD&C Act.  In addition, products that meet the drug definition, or both the drug and device definitions, may also meet the definition of biological product under section 351(i) of the PHS Act (42 USC 262(i)).

Section 351(i) provides that:

The term "biological product" means a virus, therapeutic serum, toxin, antitoxin, vaccine, blood, blood component or derivative, allergenic product, protein (except any chemically synthesized polypeptide),[13] or analogous product, or arsphenamine or derivative of arsphenamine (or any other trivalent organic arsenic compound), applicable to the prevention, treatment, or cure of a disease or condition of human beings.

---

[13] For guidance on FDA's interpretation of the category "protein (except any chemically synthesized polypeptide)" see *Biosimilars: Questions and Answers Regarding Implementation of the Biologics Price Competition and Innovation Act of 2009*, at Q.II.1 (April 2015), *available at* http://www.fda.gov/downloads/Drugs/GuidanceComplianceRegulatoryInformation/Guidances/UCM444661.pdf.

*Contains Nonbinding Recommendations*

Products that meet the drug definition and that also meet the definition of biological product are classified as biological products, and are generally subject to licensure under the PHS Act.[14]  Products that meet the definitions for drug, device, and biological product may also be classified as biological products.  If you have questions regarding whether a product meets the definition of biological product or how this might affect its classification, please contact OCP.

## IV.     ADDITIONAL INFORMATION

For further information on the classification of products as devices, drugs, biological products, or combination products, please refer to the Frequently Asked Questions on the next page, OCP's webpage at https://www.fda.gov/CombinationProducts/default.htm or contact OCP at:

Office of Combination Product
Food and Drug Administration
WO32, Hub/Mail Room #5129
10903 New Hampshire Avenue
Silver Spring, MD 20993

(Tel) 301-796-8930
(Fax) 301301-847-8619
combination@fda.gov

---

[14] Certain biological products have been historically approved under the FD&C Act and may continue to be subject to approval under the FD&C Act until March 23, 2020.  See Section 7002(e) of the Biological Price Competition and Innovation Act of 2009; see also FDA, *Implementation of the "Deemed to be a License" Provision of the Biologics Price Competition and Innovation Act of 2009, available at* https://www.fda.gov/ucm/groups/fdagov-public/@fdagov-drugs-gen/documents/document/ucm490264.pdf.

11

*Contains Nonbinding Recommendations*

## FREQUENTLY ASKED QUESTIONS

1. Can a product be classified as a device if it exhibits "chemical action"?

   Yes, if the product does not achieve its primary intended purposes through chemical action within or on the body and otherwise meets the definition of a device. However, products that meet the device definition may be regulated as drugs or biological products in some cases. See question 2.

2. If a product meets the definition for drug at 21 USC 321(g) and for device at 21 USC 321(h), how is it classified?

   Generally, the product would be classified as a device, unless it falls within a special category (for example, apparatuses used in the preparation of compounded positron emission tomography drugs are classified as drugs, see 21 USC 321(ii)).

3. Can the proposed use or indication of a product affect its classification?

   Yes. Two products with exactly the same composition can be classified differently based on their primary intended purposes. For example, if a vaginal product is intended solely to facilitate ease and comfort during sexual intercourse and it achieves this through lubrication that decreases friction (via mechanical/physical action) and not through chemical action, it is classified as a device. However, the same product can be classified as a drug if it is intended, for instance, to alter pH, control odor, or prevent infection, and does so through chemical action as discussed in III.B.3 above.

4. What should you do if, after reviewing this guidance, you are unsure of how your product is classified?

   You should contact the Office of Combination Products (Combination@FDA.GOV) for feedback. OCP will provide you feedback, including on whether a pre-RFD or an RFD may be appropriate and what information you should provide.

5. Where can you find additional information about product classification?

   Additional information on classification is posted on OCP's webpage at:(https://www.fda.gov/CombinationProducts/AboutCombinationProducts/ucm101496.htm)

   For additional information on how to submit an RFD, see *How to Write a Request for Designation (RFD)* (http://www.fda.gov/RegulatoryInformation/Guidances/ucm126053.htm).

   More information about the pre-RFD process is available at https://www.fda.gov/downloads/RegulatoryInformation/Guidances/UCM534898.pdf .

1
2
3
4
5
6
7
8
9
10
11
12
13                                                              Exhibit C
14                                                      Employment Contract
15                                                and Official Job Descriptions
16
17
18
19
20
21
22
23
24
25
26
27
28



**Freeport Roles & Responsibilities**
**Instrument/Electrical (I/E) Maintenance Engineer**
**(Maintenance)**

**Job Description**

This is a BASF direct position that is discipline specific (Instrument and Electrical less than 600 VAC) and is tactical and daily maintenance focused.  The role collaborates with Production and Maintenance personnel for maintenance and repair activities as well as troubleshooting. Additionally, this role provides technical support for Root Cause Failure Analysis and monitors predictive and preventative maintenance programs to improve reliability.

**Roles and Responsibilities**

- Provide Tier 2 troubleshooting support and recommendations to operating units on equipment repair/ reliability including *emergency work reviews.*
- Participate in Root Cause Failure Analysis and execute corrective actions for complex and/or repetitive problems.
- Assist in recommending training and development options for in-house maintenance resources.
- Provide input into the Maintenance Budget specifically to identify Extraordinary IE Maintenance items that need to be done on a as needed basis.
- Responsible for maintaining accurate function locations in CoBalt/ SAP.  This includes job descriptions/ tasks. This position is responsible for ensuring that the CoBalt/ SAP information is sustainable in the future.
- Responsible for defining and ensuring strategic spare parts are managed and maintained whether they be located in the block or the stores system.
- Reviews and approves IFA package (with production Control Systems Engineer and area IE Specialists) for all area projects for accuracy and constructability prior to construction release.
- Support Control Systems Engineer with project commissioning and startup activities.
- Defines all projects, creates the project in INtools and checks the base items into the project in INtools prior to releasing the project to the Central Design group Ensures as-built markups are picked up prior to checking the project into INtools and ensure all other documentation has been as-built prior to finalizing project
- Ensure automation roadmap (spare parts, service agreements, obsolescence, etc.) and security programs (DCS, SIS, remote access, etc.) are in place
- Ensure effective implementation of low & high voltage PM/PdM programs - Thermography, UPS, grounding, motor circuit analysis, transformer programs, breaker testing, lightning protection, arc flash program management and revalidation
- Ensure development and maintenance of SAP functional locations, bills of materials and preventive maintenance
- Ensure mechanical integrity programs are in place and implemented, including inspection/testing and preventive/predictive maintenance programs (Instrumentation, safety instrumented systems)
- Development and implementation of the instrumentation maintenance program, including D-risk instruments, tank overfill, flare control burner management, etc.
- Ensure development, maintenance and availability of equipment files and up to date drawings, including P&IDs, loop drawings, etc.
- Ensure nuclear gauge operator program is in place and implemented as required

Brian Chancey, you are signed in. | My Account Options                                          🛒 My Job

| Job Search | My Jobpage |

My Submissions  |  My Job Cart  |  My Saved Searches  |  My Referrals

Back to prior page

Job Description

# Instrument and Electrical Maintenance Engineer-2000534

**Description**

At BASF, we create chemistry through the power of connected minds. By balancing economic success with environmental protection an
we are building a more sustainable future through chemistry. As the world's leading chemical company, we help our customers in nearly
current and future needs of society through science and innovation.

We provide a challenging and rewarding work environment with a strong emphasis on process safety, as well as the safety of our emplo
communities we operate in and are always working to form the best team—especially from within, through an emphasis on lifelong learn

And we are constantly striving to become an even better place to work. BASF has been recognized as a 2020 Best Employer for Diversi
us on our journey to create solutions for a sustainable future!

**Instrument and Electrical Maintenance Engineer (2000534) – Freeport, TX**

*Where the Chemistry Happens*

We are seeking a professional like you to be responsible for providing instrument and electrical engineering support to the Freeport Chem
operating areas, as well as providing technical guidance to the I/E/A maintenance group.  You will be required to provide technical suppo
activities and provide design and technical information for maintenance and capital improvements. In addition, you will provide technical
Failure Analyses and troubleshooting of problems, and hold responsibility for maintenance, testing, and documentation of the site's SIS
you will ensure a culture of continuous improvement.

https://basf.taleo.net/careersection/1/jobdetail.ftl

12/13/21, 7:44 AM                                                                          Instrument and Electrical Maintenance Engineer

This is an excellent opportunity for you to demonstrate your solid performance in troubleshooting I/E/A issues as well as recommending changes.  Although not required, education and/or experience with Distributive Control Systems (DCS) will be advantageous in this role.

**Qualifications – NOTE: Not all positions are eligible for cross-regional relocation/work authorization. Cross regional is defined as mover (e.g. Canada to U.S.).**

*Formula for Success*

- Leveraging your education in Electrical Engineering and your related experience in either a chemical/petrochemical or refinery op equipment updates and reliability improvements.
- Demonstrating your knowledge and experience in providing technical guidance, you will provide technical support to Production, Turnaround and other Maintenance staff.
- Applying your sound technical knowledge of instrumentation, electrical, and mechanical equipment, you will lead and participate investigations and RCFA teams.
- Your working knowledge of maintenance activities associated with process equipment such as power distribution systems up to 5 temperature instrumentation, various types of analyzers and sampling systems will be essential as you complete action items ger PHA's, Accident/Incident Investigations and MOC's.
- Your ability to communicate effectively and demonstrate strong interpersonal skills within a diverse environment will serve you we equipment repairs involving on and off-site contract personnel.
- Successfully engaging within the site, you will participate in PHA reviews.
- Contributing effectively with your self-motivated work style and strong leadership ability, you will assist in managing SIS systems documentation and lead SIS functional checks.
- Your knowledge of applicable industry codes (OSHA, NFPA, NEMA, PSM etc.) will be useful as you create, review and edit proce mechanical integrity and operation of equipment.
- Your keen attention to detail will be a valued asset as you ensure development of Critical Equipment list and Critical Spares Inven monitoring and optimizing the stores system by considering site-wide needs.
- Your knowledge of SAP and how it is used to track costs and maintenance history will aid you as you research and communicate maintenance practices to improve asset availability and optimize costs.

*Create Your Own Chemistry: What We Offer You*

Adding value to our customers begins with adding value to you. You@BASF is the suite of benefits, perks, programs and unique opportu support you—the whole you—in all stages of your life and career. With you@BASF, you create your own chemistry.

The total rewards that you receive as a BASF employee go way beyond a paycheck. From competitive health and insurance plans, to ro that include company-matching contributions, to making sure you never stop learning, we believe investing in you is investing in our suc large, global organization, you'll have a chance to grow professionally and personally, expand your network and build a rewarding and d

BASF provides interesting and challenging learning and development opportunities to help you make the most of your talents and your jo

Instrument and Electrical Maintenance Engineer

**This position requires all candidates to either currently possess or obtain and maintain a TWIC (Transportation Worker Identific**
**Card from the U. S. Department of Homeland Security.**

**Primary Location** :  US-TX-Freeport
**Organization** :  N-CMN/PM-Polyamide Value Chain Maint Freeport-63023502
**Job Type** :  Standard
**Shift** :  Day Job
**Travel** :  Yes, 5 % of the Time
**Number of Openings** :  1
**Posting Date** :  Mar 3, 2020
**Unposting Date** :  Apr 17, 2020
**Incentive Plan:** Performance Incentive Comp
**Grade *(For Non-Exempt and Contact Supervisors only)*:** na
**Job Grade *(For EXEMPT positions only)*:** 5.1
**Hiring Manager Name:** Jason Metts
**Human Resources / Staffing:** Spencer Cole
**Relocation Eligible:** Yes

DocuSign Envelope ID: 06C84665-174A-4077-9CD3-CCA39BB270BD



**BASF**

We create chemistry

June 11, 2020

Brian Chancey
3117 Encino Avenue

Bay City, Texas   77414

Dear Brian:

On behalf of BASF Corporation, I am pleased to confirm our verbal offer of employment.  You will be employed as a (n) Instrument and Electrical Maintenance Engineer at our 1E01-Freeport-BASF Corporation location, reporting to Jason D Metts.  You will be paid an annual salary of $110,000.00, paid on a semi-monthly basis, subject to review during the normal salary review cycle.

You will be eligible to participate in the BASF Performance Incentive Compensation (PIC) Award Plan.  The actual award will be modified by the following factors:

- Your individual target award,
- Your individual performance,
- Performance of the BASF Group for the Performance Year, and
- Performance of others within your Business Group or Unit.

Your target award is 15% of your October 1, 2020 base salary.  Please note that the actual award payout will vary based on both company and individual performance.

Based on current practice, your PIC for 2020 will be payable at or near the end of the first quarter of 2021.  Should participation be less than a full year, the award will be pro-rated.  All awards under the PIC Award Plan are made subject to the terms of the Plan.

Based on your prior related experience, you will receive 13.333 hours of vacation for each full month of service, beginning the first of the month following employment, to a maximum of 160 hours of vacation per year.  You will continue to be eligible for 160 hours of vacation per year until the calendar year in which you will complete your 20 year(s) of employment.  At the beginning of such year, you will be eligible for 200 hours of vacation per year based on current policy.

Should you accept this offer, you will be able to participate in a variety of BASF benefit plans including a Retirement Savings Plan (RSP); medical, dental and life insurance; and long-term disability. A summary of these plans is enclosed. As a new BASF employee, you will receive a separate Welcome Kit from the BASF Employee Service Center which will include instructions for how to enroll in your benefits, as well as other important information such as how to access three important Web sites -- myHRkiosk (to manage your paycheck and personal HR data), Businessolver (to manage your health and insurance) and Fidelity NetBenefits (to manage your retirement benefits).

This offer and continued employment at BASF are contingent upon your:

1. Submitting to and passing a background check,
2. Having and maintaining eligibility to lawfully work in the United States,

DocuSign Envelope ID: 06C84665-174A-4077-9CD3-CCA39BB270BD

3. Signing of the Employee's Invention and Confidentiality Agreement,
4. Passing a post-offer pre-employment physical, which includes drug screening, and
5. Successfully obtaining and maintaining a TWIC (Transportation Worker Identification Certification) Card from the U.S. Department of Homeland Security.   http://www.tsa.gov/stakeholders/transportation-worker-identification-credential-twic

Please contact Corporate Health Resources (CHR) within 24 hours of accepting this offer to schedule your post-offer pre-employment physical.  CHR's telephone number is 1-800-867-0933, ext. 2820.  This post-offer pre-employment physical must be conducted within five (5) business days of the date of acceptance.

BASF is an at-will employer.  Accordingly, you understand and agree that your employment can be terminated at any time and for any reason, with or without cause, at the sole discretion of either BASF or yourself, for whatever reason that BASF or yourself may determine.  Your signature below does not change this at-will relationship.

Once you have made your decision about this offer of employment you need to do the following:

1. Sign the endorsement provided below and return this letter of employment within five business days of the receipt of this letter.  The return of this letter, with your signature affixed, shall serve as your acceptance of employment under the terms specified.
2. Review the enclosed Employee's Invention and Confidentiality Agreement prior to accepting this offer of employment.  You are to bring this form with you on your first day of employment, as it needs to be signed in the presence of a BASF employee.
3. Complete Section 1 of the Electronic Form I-9 upon your acceptance of this job offer, but no later than your first day of employment.  The electronic Form I-9 can be found here https://basf.i9servicecenter.com.  You will need to provide your Social Security number to comply with E-Verify.  On your first day you will need to bring original documentation to verify your eligibility to work in the U.S.  To comply with Federal law, BASF participates in **E-Verify**. All newly-hired employees are queried through this electronic system established by the Department of Homeland Security (DHS) and the Social Security Administration (SSA) to verify their identity and employment eligibility.

I would like to extend my personal welcome to you at this time.  We look forward to you joining our team and sharing in the continued growth and success of our business.  In the meantime, if I may be of any further assistance to you, please do not hesitate to call me.
Sincerely,

DocuSign Envelope ID: 06C84665-174A-4077-9CD3-CCA39BB270BD

Spencer Cole
Sr. Talent Acquisitions Advisor


ENDORSEMENT:

I hereby accept employment based on the conditions described in the offer letter.

[Applicable to employees working in New York:  I further acknowledge that this letter provides written notice of my pay rate and designated pay day and FLSA exemption status in accordance with New York Labor law Section 195(1)].

DocuSigned by:

*Brian Chancey*

A8FB6A23A1C24CE

| | |
|---|---|
| Signature | Date |

13/6/2020 | 17:34 CEST

Enclosures

cc:  Jason D Metts
     Spencer Cole


**BASF Corporation**
602 Copper Road
Freeport, TX  77541
Tel: (979) 415-6100

www.basf.com/usa

DocuSign Envelope ID: 06C84665-174A-4077-9CD3-CCA39BB270BD

## **Post-Offer Inquiry Regarding Criminal Convictions Consent Form**

BASF requires that the following information be completed <u>after</u> an applicant has accepted an offer of employment.

***Please complete this form in its entirety, and return with your signed offer letter.***

| Have you ever been convicted of a felony which has not been expunged, sealed or pardoned by a court?<br><br>    No | If Yes, nature and disposition of each case. Include date and location (county/state). |
|---|---|
| Have you ever been convicted of any crime related to the job for which you have applied that has not been expunged, sealed or pardoned by a court?<br>    No | If Yes, nature and disposition of each case. Include date and location (county/state). |

I certify the foregoing information to be complete and correct in all respects. I understand that if any part of it is found to be incomplete or incorrect, it will be sufficient grounds for refusal to employ me, or, if I am employed, for disciplinary action including termination of that employment.

I authorize BASF Corporation to conduct any investigation it deems necessary in connection with this information. I acknowledge that with my consent, BASF Corporation will run a background check <u>following</u> any offer of employment. I release for liability any and all persons or entities who may, in response to inquiry by BASF Corporation, furnish accurate information pertaining to my personal and/or employment history, and BASF Corporation in its use of such information.

If employed by BASF Corporation, I agree to abide by all company rules and regulations. I understand that no agent, employee, representative or official of BASF Corporation is authorized to make any verbal promises concerning employment or conditions thereof except as confirmed in writing by the Company/Division Human Resources Department.

I further understand that any offer of employment is contingent upon successful completion of a background check (to be completed <u>after</u> any offer of employment), the results of a physical examination, which shall include testing for substance abuse, and my signing an employee invention and secrecy agreement.

13/6/2020 | 17:34 CEST

DocuSigned by:

*Brian Chancey*

A8FB6A23A1C24CE...

Date

Signature

(Electronic Version Rev 03/14)

Brian Chancey, Plaintiff *in Propria Persona*
3117 Encino Avenue
Bay City, Texas  77414
832-863-4519
*gnman4@yahoo.com*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF TEXAS

United States Post Office and Courthouse; 601 Rosenberg, Room 411; Galveston

BRIAN CHANCEY

     PLAINTIFF

v.                                                              CASE NO.  3:22-cv-00034

BASF

     DEFENDANT

_____/

### CERTIFICATE OF SERVICE

    I, Brian Chancey, hereby certify that a true and correct copy of the foregoing was duly served upon the defendant's registered agent CT CORPORATION SYSTEM at the address of 1999 Bryan St., Suite 900 Dallas, TX 75201 via FedEx on this <u>21</u> day of February, 2022.

By: ___FedEx #270115773035 _____

Brian Chancey

- I -

United States Post Office and Courthouse
601 Rosenberg, Room 411
Galveston, TX 77550


Court Clerk:

The attached complaint is intended to entirely replace the previous one for case 3:22-cv-00034. I have also attached a certificate of service for the revised complaint sent to the defendant's registered agent. If you have any questions please contact me at,

Brian Chancey
832-863-4519
gnman4@yahoo.com



ORIGIN ID:UMBA  (979) 245-7000
BRIAN D CHANCEY

2901 7TH ST

BAY CITY, TX 77414
UNITED STATES US

SHIP DATE: 02MAR22
ACTWGT: 1.60 LB
CAD: 250476584/WSXI36

BILL SENDER

TO
**UNITED STATES POST OFFICE AND COURT
601 ROSENBERG ST STE 411**

**GALVESTON TX 77550**

000000000000000          REF: BRIAN D CHANCEY
INV: PKG ID: 175977
PO:                      DEPT:

**FedEx**
Express
**E**

TRK#   2704 0185 9426
0201

THU - 03 MAR 10:30A
PRIORITY OVERNIGHT

**43 GLSA**

**77550**
TX-US **IAH**

