Case 3:22-cv-00034   Document 34   Filed on 12/29/22 in TXSD   Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
December 29, 2022
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

## GALVESTON DIVISION

No. 3:22-cv-34

BRIAN CHANCEY, *PLAINTIFF*,

v.

BASF CORPORATION, *DEFENDANT*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Before the court is the defendant BASF Corporation's motion to dismiss Chancey's amended complaint under Rule 12(b)(6). Dkt. 9. The court grants the motion.

## I.   BACKGROUND[1]

This is an employment-discrimination suit arising under the Americans with Disability Act (ADA). Dkt. 6.

The plaintiff, Brian Chancey, has worked for BASF since June 2020.

---

[1] When hearing a motion to dismiss under Rule 12(b)(6), factual allegations in the complaint must be taken as true and construed favorably to the plaintiff. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). The "facts" in this section are taken from the plaintiff's pleadings.

*Id.* at 3. Chancey alleges that on August 10, 2021, BASF began demonstrating by its COVID-19 policies and practices that it regarded him "as having a disability of an impaired immune system and impaired respiratory system, and began responding to [him] as if he had a contagious disease." *Id.* Chancey alleges BASF never conducted an individualized assessment to determine whether he was a direct threat. *Id.*

Chancey states he notified BASF that he was claiming protection under the ADA because BASF was treating him as disabled. *Id.* In response, Chancey alleges, BASF offered a series of accommodations that he declined. *Id.* at 5. BASF "continued without cessation to harass the plaintiff based upon disability by sending him numerous communications coercing him to accept various accommodations or suffer adverse employment actions." *Id.*

Further, Chancey alleges BASF imposed upon him accommodations which included isolation and segregation: demanding he remain 6 feet away from co-workers; refusing him access to the work space, his office, the staff room, and rest rooms; making him work remotely; limiting room occupancy; segregating Chancey to a part of the work space; and implementing first-contact protocols and quarantine without due process. *Id.* at 6. Chancey alleges BASF has classified him as "unvaccinated," is widely sharing this information with other employees without regard to confidentiality, and

encourages employees to harass him with repetitive emails, intimidating interactions, and threats of termination. *Id.*

Chancey alleges BASF requires unvaccinated employees such as him to submit to weekly accommodations such as medical tests at his own expense, enhanced quarantine measures based upon "close contact," and masking. *Id.* BASF also falsely classified Chancey as a "safety hazard" without assessment in a written safety violation and threatened to accuse him of abandoning his job despite BASF preventing him access to the job site. *Id.* at 7.

Chancey alleges that after he accused BASF of discriminating against him under the ADA, his managers and supervisors began to "unceasingly retaliat[e]" against him. *Id.* at 12. Chancey lists the following as adverse employment actions taken against him: BASF created false employment records stating that Chancey was a "safety hazard"; BASF threatened to accuse him of abandoning his job while preventing him access to the job site; he was threatened with termination on several occasions and given deadlines for termination; he was refused access to the job site, his office, the break room, and rest rooms; he was repeatedly coerced by management to undertake accommodations for a "perceived yet undiagnosed disability"; BASF threatened him with incurring extra costs for weekly antigen testing; and BASF's ADA compliance officer refused to mitigate the retaliation or aid

and encourage him in enjoying rights protected under the ADA. *Id.* at 14.

Chancey alleges three causes of action under the ADA: (1) disability discrimination; (2) improper medical exams and inquiries; and (3) retaliation.

BASF has moved to dismiss. Dkt. 9.

## II. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The claim is facially plausible when the well-pleaded facts allow the court to reasonably infer that the defendant is liable for the alleged conduct. *Id.* "The court does not 'strain to find inferences favorable to the plaintiffs' or 'accept conclusory allegations, unwarranted deductions, or legal conclusions.'" *Vanskiver v. City of Seabrook, Tex.*, No. CV H-17-3365, 2018 WL 560231, at *2 (S.D. Tex. Jan. 24, 2018) (quoting *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 361 (5th Cir. 2004)).

Naked assertions and formulaic recitals of the elements of the cause of action will not suffice. *Iqbal*, 556 U.S. at 678. Even if the facts are well-pleaded, the court must still determine plausibility. *Id.* at 679. Where a

party's asserted claim arises out of "statutes under which as a matter of law [the party] d[oes] not have a viable claim," the claim must be dismissed. *Kiper v. BAC Home Loans Servicing, LP*, No. 4:11-CV-3008, 2012 WL 5456105, at *1 (S.D. Tex. Nov. 6, 2012).

### III. ANALYSIS

#### A. Disability Discrimination

The ADA is a federal antidiscrimination statute designed to remove barriers that prevent qualified individuals with disabilities from enjoying the same employment opportunities that are available to individuals without a disability. *See* 42 U.S.C. §§ 12101–12113; *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674–75 (2001); *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 696 (5th Cir. 2014). To state a claim for employment discrimination under Title I of the ADA, the plaintiff must allege that: (1) he has a "disability" or was "regarded as disabled"; (2) he was qualified for the position; and (3) he was subject to an adverse employment action because of his disability. *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 341 (5th Cir. 2019).

The ADA defines a disability as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1); *Delaval v. PTech Drilling*

*Tubulars, L.L.C.*, 824 F.3d 476, 479 n.2 (5th Cir. 2016); 29 C.F.R. § 1630.2(g)(2) (describing these as the "actual disability," "record of," and "regarded as" prongs). To state a viable claim under the "regarded as" prong, a plaintiff must allege "[]he has been subjected to an action prohibited under [the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 230 (5th Cir. 2015) (quoting 42 U.S.C. § 12102(3)(A)).

"This 'whether or not' language was enacted as part of the ADA Amendments Act of 2008 [("ADAAA")]." *Mendoza v. City of Palacios,* 962 F. Supp. 2d 868, 871 (S.D. Tex. 2013). "The ADAAA overrules prior authority 'requiring a plaintiff to show that the employer regarded him or her as being substantially limited in a major life activity.'" *Burton*, 798 F.3d at 230 (quoting *Dube v. Tex. Health & Human Servs. Comm'n,* No. SA–11–CV–354–XR, 2012 WL 2397566, at *3 (W.D. Tex. June 25, 2012)); *see also Neely v. PSEG Texas, Ltd. P'ship,* 735 F.3d 242, 245 (5th Cir.2013).

BASF argues that Chancey fails to satisfy the essential elements of a discrimination claim because he cannot show BASF believed his impairment substantially limited one or more major live activities. Dkt. 9 at 4. However, BASF relies on outdated authority, *Kemp v. Holder*, 610 F.3d 231, 237 (5th

Cir. 2010), in arguing that Chancey is required to show BASF regarded him as substantially limited in a major life activity. Chancey need only plausibly allege his "employer perceived him as having an impairment" and that it discriminated against him on that basis. *Mendoza,* 962 F. Supp. 2d at 871. Chancey has alleged BASF regarded him "as having a disability of an impaired immune system and impaired respiratory system, and began responding to the plaintiff as if he had a contagious disease." Dkt. 6 at 3.

A number of district courts within this circuit have held that similar allegations are insufficient to state a claim under the ADA.[2] So, too, have courts outside of this circuit.[3] "Just because [BASF] followed the relevant

---

[2] *McKnight v. Renasant Bank*, No. 121CV00139GHDDAS, 2022 WL 1342649, at *6 (N.D. Miss. May 3, 2022) (holding a minor case of COVID-19 did not qualify for protection under the ADA because it met the exception for temporary illnesses for which no limitations resulted); *Milteer v. Navarro Cnty., Texas*, No. 3:21-CV-2941-D, 2022 WL 1321555, at *9 (N.D. Tex. May 3, 2022) (holding that plaintiff's age and "health," as pleaded related to COVID-19 pandemic, did not constitute a disability protected under the ADA or Rehabilitation Act); *Alvarado v. ValCap Grp., LLC*, No. 3:21-CV-1830-D, 2022 WL 19686, at *7 (N.D. Tex. Jan. 3, 2022) (holding plaintiff failed to plausibly plead her employer perceived her as disabled merely because of her possible exposure to COVID-19 through a co-worker).

[3] *See Champion v. Mannington Mills, Inc.*, 538 F. Supp. 3d 1344, 1348 (M.D. Ga. 2021) (holding plaintiff's brother's COVID-19 infection was not a "disability" within the meaning of the ADA); *Payne v. Woods Servs., Inc.*, 520 F. Supp. 3d 670, 679 (E.D. Pa. 2021) (holding the plaintiff failed to allege any facts regarding his symptoms or impairments as a result of COVID-19 infection that supported contention his employer regarded him as disabled); *Rice v. Guardian Asset Mgmt., Inc.*, No. 3:21-CV-00693-AKK, 2021 WL 4354183, at *3 (N.D. Ala. Aug. 19, 2021)

public health guidance" regarding COVID-19 in its actions towards Chancey "does not mean [it] regarded him as disabled." *Champion*, 538 F. Supp. 3d at 1350. "To hold otherwise would mean that every person in the United States who was (or who may be) sent home" or quarantined from other coworkers for refusing to be vaccinated, or asked to accept other testing and masking requirements, "would be disabled for the purposes of the ADA and every such employer covered by the ADA potentially liable." *Id.* "The [c]ourt soundly and easily rejects this position." *Id.*

Accordingly, Chancey's discrimination claim is dismissed with prejudice.

### B. Unlawful Medical Exams and Inquiries

Section 12112(d)(4)(A) of the ADA provides that "[a] covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or

---

(holding employee failed to meet pleading standard showing employer regarded her as disabled where it was merely following public health protocols concerning COVID-19); *Lewis v. Fla. Default L. Grp., P.L.*, No. 8:10-CV-1182-T-27EAJ, 2011 WL 4527456, at *6 (M.D. Fla. Sept. 16, 2011) (holding the undisputed evidence demonstrated plaintiff diagnosed with H1N1 virus fell into transitory and minor exception to ADA coverage for impairment); *Patrick v. S. Co. Servs.*, 910 F. Supp. 566, 569 (N.D. Ala. 1996) ("The fact that a contagious disease is an impairment does not automatically mean it is a disability.").

inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112. "Section 12112(d)(4)(A) prohibits employers from using medical exams as a pretext to harass employees or to fish for nonwork-related medical issues and the attendant 'unwanted exposure of the employee's disability and the stigma it may carry.'" *Brownfield v. City of Yakima*, 612 F.3d 1140, 1140 (9th Cir. 2010) (citing *EEOC v. Prevo's Fam. Mkt., Inc.*, 135 F.3d 1089, 1094 n. 8 (6th Cir. 1998)).

The provision does not prohibit all medical inquires, but only those "as to whether such employee is an individual with a disability or as to the nature or severity of the disability." *Conroy v. N.Y. State Dep't of Corr. Servs.*, 333 F.3d 88, 94 (2d Cir.2003) (quoting 42 U.S.C. § 12112). When interpreting this provision, the Fifth Circuit looks to the U.S. Equal Employment Opportunity Commission ("EEOC") Enforcement Guidance: Disability-related Inquiries and Medical Examinations of Employees Under the Americans with Disabilities Act (2000), 2000 WL 33407181 ("Enforcement Guidance"). *See Delaval*, 824 F.3d at 482; *Diggs v. Burlington N. & Santa Fe Ry. Co.*, 742 F. App'x 1, 4 (5th Cir. 2018).

Under the Enforcement Guidance, the first step is to determine whether an employer's question is a "disability-related inquiry" or whether the test or procedure is a "medical examination." 2000 WL 33407181, at *2.

A "disability-related inquiry" "is a question (or series of questions) that is likely to elicit information about a disability." *Id.* at *3. A "medical examination" is "a procedure or test that seeks information about an individual's physical or mental impairments or health." *Id.*

In this case, Chancey has not alleged that BASF undertook any action that meets the definitions of a disability-related inquiry or medical examination. All BASF actions, as alleged by the plaintiff, are consistent with recent EEOC guidance specifically related to the COVID-19 pandemic. *See What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO*, EEOC (Mar. 14, 2022).[4]

Simply put, Chancey's amended complaint fails to identify any action allegedly taken by BASF that constitutes a disability-related inquiry or medical examination. Indeed, everything BASF is alleged to have done is expressly authorized by the EEOC. Accordingly, Chancey's unlawful medical exams or inquiries cause of action must be dismissed.

**C. Retaliation**

To allege a plausible claim of retaliation under the ADA, a plaintiff must contend that (1) he participated in an activity protected under the

---

[4] *Available at* https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (last visited July 2, 2022).

statute; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse action. *Feist v. La., Dep't of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). To prove the second element—an adverse employment action—a plaintiff must demonstrate that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Dehart v. Baker Hughes Oilfield Operations, Inc.*, 214 F. App'x 437, 442 (5th Cir. 2007) (per curiam).

In his amended complaint, Chancey lists the following alleged "adverse actions:"

> [D]efendant created false employment records stating that plaintiff was "a safety hazard" without assessment via a written safety violation warning; defendant threatened to accuse plaintiff of "abandoning his job" while preventing him access to the job site; plaintiff was threatened with termination on several occasions and given deadlines for termination such as January 4, 2022 and February 1, 2022; plaintiff was refused access to job site, his office, the break room and rest rooms; plaintiff was repeatedly coerced by management to undertake accommodations for a perceived, yet undiagnosed disability; defendant continued to harass plaintiff despite plaintiff claiming protected opposition status by filing an EEOC Charge; defendant threatened plaintiff with incurring extra costs for weekly "antigen testing" at his own expense that other employees did not incur; and defendant's ADA compliance officer refused to mitigate the retaliation or aid and encourage the plaintiff in enjoying rights protected under the ADA.

Dkt. 6 at 14.

Chancey's allegations, if proven, are nothing more than petty slights or minor annoyances that do not rise to the level of an adverse employment action. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("We speak of *material* adversity because we believe it is important to separate significant from trivial harms."); *see also King v. Louisiana*, 294 F. App'x 77, 85 (5th Cir. 2008) (holding that "allegations of unpleasant work meetings, verbal reprimands, improper work requests and unfair treatment do not constitute adverse employment actions as . . . retaliation"); *Grice v. FMC Techs., Inc.*, 216 F. App'x 401, 407 (5th Cir. 2007) (holding that allegedly falsified reprimands are considered "trivial" and not materially adverse in the retaliation context); *DeHart*, 214 F. App'x at 442 (holding that a written disciplinary warning for insubordination and being argumentative would not have "dissuaded a reasonable worker from making or supporting a charge of discrimination").

Moreover, as is evident by the hundreds of pages of records attached to Chancey's pleadings, none of the above actions actually dissuaded him from submitting to BASF management repeated objections to BASF's COVID-19 policies or filing a charge of

discrimination. *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68. Simply put, Chancey's alleged adverse employment actions, if proven, amount to nothing more than trivial slights that cannot support a retaliation claim under the ADA. Therefore, his retaliation claim must be dismissed.

* * *

For the reasons stated above, BASF's motion to dismiss is granted. Dkt. 9. Chancey's claims are dismissed with prejudice.

Final judgment to issue separately.

Signed on Galveston Island this 29th day of December, 2022.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE